IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RONDA A. PLEDGER, SANDRA BRITT, JENNIFER L. PRIMM, ALEX BROOKS, JR., AND EDWARD COMER BUCK, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 1:15-cv-04444-MHC |
| RELIANCE TRUST COMPANY, INSPERITY, INC., INSPERITY HOLDINGS, INC., INSPERITY RETIREMENT SERVICES, L.P., INSPERITY RETIREMENT PLAN COMMITTEE, and JOHN DOES 1-20, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE INSPERITY DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

I.     Insperity, Inc. ............................................................................................ 3

II.    The Insperity 401(k) Plan ........................................................................ 4

III.   Insperity Retirement Services, L.P. ......................................................... 8

IV.   Reliance Trust Company ........................................................................... 8

PLAINTIFFS' ALLEGATIONS ....................................................................... 10

STANDARD OF REVIEW ............................................................................... 11

ARGUMENT .................................................................................................... 12

I.     The Amended Complaint Fails To State A Claim Against Any Of The
Insperity Defendants For A Breach Of Fiduciary Duty Regarding The
Plan's Recordkeeping Services And Fees ............................................... 12

     A.    Plaintiffs' Claim Regarding The Initial Selection Of The Plan's
Recordkeeper Is Not Timely ....................................................... 12

     B.    Plaintiffs' Claim Regarding The Retention Or Compensation Of
The Plan's Recordkeeper Fails Against Insperity And Retirement
Services ........................................................................................ 13

     C.    Plaintiffs Do Not State A Plausible Claim That Retirement
Services Received Unreasonable Or Excessive Fees For
Recordkeeping Services................................................................ 14

II.    The Amended Complaint Fails To Allege Facts Sufficient To Establish
       That Certain Insperity Defendants Are Fiduciaries Of The Plan ......................17

       A.    Insperity Is Not A Fiduciary........................................................18

       B.    Retirement Services Is Not A Fiduciary ....................................19

III.   The Amended Complaint Fails To State A Claim Against Any Of The
       Insperity Defendants For Breach of Fiduciary Duty Regarding The
       Plan's Investment Options ........................................................................20

IV.    The Amended Complaint Fails To State A Claim Against Holdings For
       Breach Of The Duty To Monitor Or For Co-Fiduciary Liability......................23

V.     The Amended Complaint Fails To State A Claim Against Any Of The
       Insperity Defendants For Prohibited Transactions................................................24

       A.    Count VII Fails Against The Insperity Defendants ................................24

       B.    Count VI Fails Against The Insperity Defendants..................................25

VI.    The Amended Complaint Fails To State A Claim For "Equitable Relief" .......28

VII.   The "Shotgun" Style Amended Complaint Fails To Give Any Of The
       Defendants Adequate Notice Of The Claims Against Them ............................29

CONCLUSION ............................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................11, 12, 24

*Baker v. Big Star Div. of the Grand Union Co.*,
  893 F.2d 288 (11th Cir. 1989) ...............................................................20

*Baxter v. C.A. Muer Corp.*,
  941 F.2d 451 (6th Cir. 1991) .................................................................20

*Beckwith v. Bellsouth Telecomms., Inc.*,
  146 F. App'x 368 (11th Cir. 2005)..........................................................30

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................12, 23

*Bell v. Anthem*,
  No. 15-cv-2062-TWP-DML (S.D. Ind.)(Dec. 28, 2015)....................................2

*Braden v. Wal–Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) .................................................................27

*Confer v. Custom Eng'g Co.*,
  952 F.2d 34 (3d Cir. 1991) ...................................................................20

*Cotton v. Mass. Mut. Life Ins. Co.*,
  402 F.3d 1267 (11th Cir. 2005) .......................................................17, 18

*DiFelice v. U.S. Airways, Inc.*,
  397 F. Supp. 2d. 758 (E.D. Va. 2005) ......................................................19

*Fifth Third Bancorp v. Dudenhoeffer*,
  134 S.Ct. 2459 (2014)............................................................................3

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
  500 F.3d 1276 (11th Cir. 2007) ...............................................................4

*Fuller v. SunTrust Banks, Inc.*,
  2012 WL 1432306 (N.D. Ga. Mar. 20, 2012) ...................................................27

*Griffin Indus., Inc. v. Irvin*,
  496 F.3d 1189 (11th Cir. 2007) ...........................................................................12

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009) ..........................................................................9, 16

*Howard v. Parisian, Inc.*,
  807 F.2d 1560 (11th Cir. 1987). ........................................................................20

*In re Nokia ERISA Litig.*,
  No. 10 CV 03306, 2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011)......................23

*In re SunTrust Banks, Inc. ERISA Litig.*,
  749 F. Supp. 2d 1365 (N.D. Ga. 2010)...............................................................19

*Kenney v. State St. Corp.*,
  694 F. Supp. 2d 67, 79 (D. Mass. 2010)............................................................23

*Lanfear v. Home Depot Inc.*,
  718 F. Supp. 2d 1364 (N.D. Ga. 2010)...............................................................24

*Leber v. Citigroup, Inc.*,
  No. 07 Civ. 9329, 2010 WL 935442 (S.D.N.Y. Mar. 16, 2010).......................27

*Mehling v. N.Y. Life Ins. Co.*,
  163 F. Supp. 2d 502 (E.D. Pa. 2001)..................................................................27

*Moon v. BWX Techs., Inc.*,
  577 F. App'x 224 (4th Cir. 2014) .......................................................................20

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) ...........................................................................4

*Pegram v. Herdich*,
  530 U.S. 211 (2000)............................................................................................17

*Pohl v. Nat'l Benefits Consultants, Inc.*,
  956 F.2d 126 (7th Cir. 1992) ..............................................................................20

*Renfro v. Unisys Corp.*,
   671 F.3d 314 (3d Cir. 2011) ............................................................16

*Roberts v. Wells Fargo Bank, N.A.*,
   No. 4:12–cv–200, 2013 WL 1233268 (S.D. Ga. Mar. 27, 2013) ......................26

*Rochow v. Life Ins. Co. of N. Am.*,
   780 F.3d 364 (6th Cir. 2015) ............................................................28

*Romero v. Nokia, Inc.*,
   No. C 12-6260 PJH, 2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) .................23

*Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*,
   546 F. App'x 846 (11th Cir. 2013) .......................................................5

*Smith v. BB&T Corp.*,
   No. 1:15-cv-841 (M.D.N.C.) (Oct. 8, 2015)..........................................2

*Tookes v. Metro. Life Ins. Co.*,
   No. CIV.A.1:04CV1957-RWS, 2006 WL 870313 (N.D. Ga. Mar.
   31, 2006) ............................................................................21

*U.S. v. Bestfoods*,
   524 U.S. 51 (1998)....................................................................26

*Wagner v. Stiefel Labs., Inc.*,
   No. 1:12–CV–3234–MHC, 2015 WL 4557686 (N.D. Ga. June 18,
   2015 ) ...............................................................................19

*Weiland v. Palm Beach Cty. Sheriff's Office*,
   792 F.3d 1313 (11th Cir. 2015) ........................................................30

*White v. Chevron*,
   No. 16-cv-793(N.D. Cal.) (Feb. 17, 2016) ...........................................2

*Woods v. S. Co.*,
   396 F. Supp. 2d 1351 (N.D. Ga. 2005)...............................................19

**STATUTES**

26 U.S.C. § 401 ...................................................................................................6

26 U.S.C. § 410 ...................................................................................................6

26 U.S.C. § 413 ...................................................................................................7

26 U.S.C. § 414 ...................................................................................................7

26 U.S.C. § 416 ...................................................................................................6

ERISA § 3, 29 U.S.C. § 1002 ................................................4, 5, 18, 19, 25

ERISA § 402, 29 U.S.C. § 1102 ..........................................................18

ERISA § 405, 29 U.S.C. § 1105 ........................................8, 19, 21, 24

ERISA § 406, 29 U.S.C. § 1106 ......................................24, 25, 26, 27

ERISA § 408, 29 U.S.C. § 1108 ..........................................26, 27, 28

ERISA § 413, 29 U.S.C. § 1113 ...............................................13

ERISA § 502, 29 U.S.C. § 1132 ......................................17, 28, 29

**OTHER AUTHORITIES**

26 C.F.R. § 1.401(a)(4)-2 ...................................................................6

26 C.F.R. § 1.401(a)(4)-1 ...................................................................6

26 C.F.R. § 1.413-2 .............................................................................6

26 C.F.R. § 1.416-1 .............................................................................7

29 C.F.R. § 2509.75-8 .......................................................................19

Rev. Proc. 2002-21 .....................................................................5, 6, 8

Rev. Proc. 2003-86 ............................................................................5

## <u>INTRODUCTION</u>

Plaintiffs' claims are common to more than a dozen cases brought by Plaintiffs' counsel against large employers that sponsor retirement plans, and at first glance, they seem cut from the same pattern. In essence, Plaintiffs claim they paid too much in fees and, with the benefit of hindsight, earned too little on investments in their retirement plan. They also claim that Defendants breached a fiduciary duty of loyalty, and committed "prohibited transactions," because an affiliate of Insperity, Inc. ("Insperity") kept the plan's records and some of the plan's investments were affiliated with Reliance Trust Company ("Reliance").

But this case is different. A closer look at each of the Defendants, and the specific plan at issue, reveals a number of fundamental and fatal flaws with Plaintiffs' allegations, even after Plaintiffs filed an Amended Complaint in response to the Defendants' original motions to dismiss. The documents Plaintiffs cite in their Amended Complaint still belie their allegations, and they make the claims asserted against the Insperity Defendants[1] implausible.

First and foremost, Plaintiffs refuse to acknowledge the significance of what Insperity is – one of the nation's largest "professional employer organizations"

---

[1] The "Insperity Defendants" include Insperity, Inc., Insperity Holdings, Inc., Insperity Retirement Services, L.P. and the purported "Insperity Retirement Plan Committee."

("PEO"). Because Insperity is a PEO, the Insperity 401(k) Plan (the "Plan") is necessarily and fundamentally different than the other large, single employer 401(k) plans that form the basis of the fee and investment comparisons upon which Plaintiffs' counsel base the claims in this case and their other recent lawsuits.[2] Specifically, the Plan must be administered as though it is a collection of thousands of small, individual plans which necessarily increases the cost of administration.

Second, Plaintiffs ignore what the Plan documents reveal about the nature of the "fees" charged for recordkeeping. Because an affiliate of Insperity – Insperity Retirement Services, L.P. ("Retirement Services") – keeps the Plan's records, an independent third-party fiduciary (Reliance) was hired to review and approve *only* the reimbursement of actual expenses that are legally permissible under ERISA, with no "overhead" or "profit" included. These facts appear on the face of the Plan documents which the Court can and should consider here, and they make Plaintiffs' conclusory allegations and assumptions to the contrary implausible.

Third, Plaintiffs still fail to identify and sue the right parties. Admittedly, Insperity Holdings, Inc. ("Holdings") is the Plan's sponsor and a fiduciary of the Plan, and Reliance is the Plan's discretionary trustee. However, the other corporate Insperity

---

[2] *See, e.g., Smith v. BB&T Corp.*, No. 1:15-cv-841 (M.D.N.C.) (Oct. 8, 2015); *Bell v. Anthem*, No. 15-cv-2062-TWP-DML (S.D. Ind.)(Dec. 28, 2015); *White v. Chevron,* No. 16-cv-793(N.D. Cal.)(Feb. 17, 2016).

Defendants named by Plaintiffs – Insperity and Retirement Services – have no fiduciary status or function; indeed, Insperity itself has absolutely no role with the Plan. Plaintiffs' conclusory assertions to the contrary are again belied by the Plan documents.

Fourth, Plaintiffs still make no effort to connect the proper defendant with the specific alleged wrongdoing at issue, but instead lump most or all five "Defendants" together in virtually all of the Counts.  More specifically, they accuse Reliance of wrongdoing in which only Holdings could engage (*e.g.*, selecting and retaining Retirement Services as the Plan's recordkeeper), and they accuse the Insperity Defendants of wrongdoing in which only Reliance could engage (*e.g.*, approving and paying the recordkeeping expenses of Retirement Services and selecting and retaining the Plan's investments).  This type of "shotgun pleading" has been condemned by the Eleventh Circuit, and is alone fatal to Plaintiffs' Amended Complaint.

The Supreme Court recently instructed district courts to carefully scrutinize ERISA complaints to separate the "plausible sheep from the meritless goats."  *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459, 2470-71 (2014).  This implausible, meritless goat should be dismissed.

## FACTUAL BACKGROUND

### I.    Insperity, Inc.

Insperity is a publicly traded company headquartered in Kingwood, Texas.  (Am.

Comp. ¶ 19.)[3]  As a PEO,[4] Insperity provides off-site full-service human resources and business solutions to small- and medium- sized businesses (5 to 5,000 employees) throughout the United States.  (*Id.* at ¶¶ 19, 28.)[5]  To do so, Insperity enters into a contract with its client-employers (a "client service agreement") whereby Insperity assumes a co-employer/employee relationship with the employees of the client company.  (*Id.* at ¶¶ 9, 30-32.)  As of December 2014, Insperity had an average of 136,764 "worksite employees" per month.[6]

## II.   The Insperity 401(k) Plan

As one of its many products and services, Insperity offers its client-employers and correspondingly their eligible "worksite employees" the option to participate in the Insperity 401(k) Plan (the "Plan"), a defined contribution, individual account, pension benefit plan under ERISA, 29 U.S.C. § 1002(2)(A) and § 1002(34).  (Am. Comp. ¶¶ 6-

---

[3] *See* Ex. 1, Insperity, Inc. Form 10-K (2014) referenced in ¶ 29 of the Amended Complaint.  A district court may look outside of the complaint and attachments thereto when "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."  *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citations omitted).  Further, it is well-established that a court may take into account documents filed with the SEC when assessing a motion to dismiss.  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

[4] Insperity provides its PEO services through wholly-owned subsidiaries that are duly licensed under applicable state PEO laws.

[5] *See* Ex. 1, at p. 2.

[6] *Id.* at p. 3.

8.)[7]  Client-employers enter into an "election agreement" with Holdings to permit worksite employees to participate in the Plan.  (*Id.* at ¶ 9.)  Holdings, a wholly-owned subsidiary of Insperity, sponsors the Plan, and is a "fiduciary" responsible for the administration of the Plan.  (*Id.* at ¶¶ 21-22.)

As Plaintiffs recognize, "the Plan is one of the country's largest 401(k) plans." (*Id.* at ¶ 12; *see also* ¶ 2.)  However, the Plan is not like other 401(k) plans of its size. While the Plan is technically classified as a "single employer plan" (*id.* at ¶¶ 10, 80),[8] it has thousands of client-employers with participating worksite employees.  Moreover, it is operated and administered consistent with the requirements for a "Multiple Employer Retirement Plan" as established in Internal Revenue Service ("IRS") Revenue Procedure 2002-21, under which each individual client-employer must be "treated as" a *separate* employer for many purposes.[9]

---

[7] *See* Ex. 2, Insperity 401(k) Plan (amended and restated effective January 1, 2014), referenced throughout the Amended Complaint.  Courts routinely consider plan and plan-related documents in ERISA cases.  *See, e.g., Sanctuary Surgical Ctr., Inc. v. Aetna Inc.*, 546 F. App'x 846, 852-53 (11th Cir. 2013).

[8] A "single employer plan" is "a plan which is not a multiemployer plan." 29 U.S.C. § 1002(41).  A "multiemployer plan" is a plan maintained pursuant to collective bargaining agreements with more than one employer. 29 U.S.C. § 1002(37)(A)(ii). Because the Plan is not a multiemployer plan, it is a "single employer plan."

[9] *See* Ex. 3, Insperity 401(k) Plan Form 5500 (2014), referenced in ¶¶ 10, 104, and 147 of the Amended Complaint; *see also* Ex. 4, IRS Rev. Proc. 2002-21 (May 13, 2002) and Ex. 5, Rev. Proc. 2003-86 (December 15, 2003).  For purposes of this Motion, the Plan may be referred to as a "multiple employer plan."

Administration of and recordkeeping for "multiple employer plans" – like this Plan – involve significant additional effort and expense compared to a traditional, single-employer 401(k) plan.  As required by Revenue Procedure 2002-21, the Plan's recordkeeper must collect records from client employers and create and maintain additional records that allow it to perform numerous complex mathematical "tests" for each of the thousands of individual client-employers on an annual basis, including, *inter alia*: (1) the actual deferral percentage test under 26 U.S.C. § 401(k)(3);[10] (2) the average contribution percentage test under 26 U.S.C. § 401(m)(2);[11] (3) the "general test for nondiscrimination in amount of contributions" under 26 C.F.R. 1.401(a)(4)-2(c);[12] and (4) the test for "minimum coverage requirements" under 26 U.S.C. § 410(b).[13]   In addition, the Plan's administrator and recordkeeper must annually determine whether the Plan is "top-heavy" under 26 U.S.C. § 416 on a client-by-client basis, and if so, engage in communications with the client-employer and provide

---

[10] *See* Erin Turley et al., Multiple Employer Plans – Opportunities and Challenges: Qualified Retirement Plans, Benefit Practitioners' Strategy Guide, BPRC (Jan. 18, 2012) at p. 6, http://www.jdsupra.com/legalnews/multiple-employer-plans-opportunities-a-028761/.

[11] *See* Turley, at 6.

[12] *See* Turley, at 4; *see also* Ex. 4, Rev. Proc. 2002-21, 2002-1 C.B. 911, § 3.05 and 26 C.F.R. § 1.401(a)(4)-1(c)(4).

[13] *See* Turley, at 3; *see also* 26 C.F.R. § 1.413-2(a)(3(ii).

additional contributions just to the employees of that individual client employer.[14]

Similarly, employees must be classified as "highly compensated" or "non-highly

compensated" under 26 U.S.C. § 414(q) separately for each of the thousands of

individual client-employers.[15]  Moreover, deductibility of contributions for income tax

purposes must be determined for each of the thousands of individual client-employers.

26 U.S.C. § 413(c)(6)(A).  Performing all of these tests involves collection of detailed

data[16] on all of the employees of the individual client-employers in and outside the Plan

and client-employer specific data.   Accordingly, collecting data and performing

extensive IRS-required tests and analyses related to thousands of individual client-

employers whose worksite employees participate in the Plan, hundreds of which move

into and out of the Plan each year, make administration and recordkeeping for this Plan

extremely complicated and, of course, significantly more expensive.   Plaintiffs'

Amended Complaint ignores all of this, making its claims, and comparisons to other

plans, facially implausible.

---

[14] *See* 26 CFR § 1.416-1, G-2; *see also* I.R.M. 7.11.7.3(1)(B). If an employee is employed, either at the same time or different times, by more than one employer in the Plan, then the accelerated vesting and additional contributions would apply only to the portion of that employee's account that is attributable to the top-heavy employer. *Id.*

[15] *See* Turley, at 4. Such classification requires that compensation be tracked separately for each employer with which the employee is employed.

[16] This data includes age, years of service, current contributions (including in other plans), accumulated balances (including in other plans), compensation, hours worked, bargaining status, and similar demographic data.

### III.   **Insperity Retirement Services, L.P.**

Prior to the issuance of Revenue Procedure 2002-21 by the IRS, a third-party service provider performed the recordkeeping and administrative services for the Plan. (Am. Comp. ¶ 42.)   However, because the IRS now requires that the Plan must be administered as though it is a collection of thousands of small, individual plans (with each client treated as a separate employer), a separate company, Retirement Services, was established and selected by Holdings to provide recordkeeping and administrative services for this unusual "multiple employer plan." (*Id.* at ¶¶ 38-39, 75-76.)

### IV.   **Reliance Trust Company**

Pursuant to Section 405 of ERISA, 29 U.S.C. § 1105(c), and Section 10.3 of the Plan,[17] Holdings "may delegate, by written instrument, all or any part of its responsibilities under the Plan." (*Id.* at ¶ 23.)   Because Holdings decided to use an affiliated entity to provide recordkeeping and administrative services to the Plan, Holdings delegated responsibility for reviewing and approving the Plan expenses to an experienced, professional, *independent* fiduciary – Reliance.[18]   Reliance assumed full fiduciary responsibility for reviewing and approving all Plan expenses, including those

---

[17] *See* Ex. 2, Plan § 10.3, at pp. 48-49.
[18] *See* Ex. 6, Trust Agreement, § 3.4, referenced in ¶¶ 18, 57, 59 and 77 of the Amended Complaint.

incurred by Retirement Services in performing its services. (*Id.*) The Plan documents clearly provide that only *actual* expenses may be reimbursed and no "profit margin" or "overhead" can be charged on services rendered by Retirement Services to the Plan.[19]

Although "revenue sharing" – a portion of the expense ratio currently withheld from the investment assets by asset managers and shared with the Plan's service providers – is the *means* of obtaining the funds necessary to pay the Plan's recordkeeping expenses, it is not the *measure* of those expenses. Despite the Insperity Defendants' initial motion to dismiss, Plaintiffs' Amended Complaint blithely repeats the original Complaint's conclusory allegations to the contrary. Notably, as set forth in the Plan documents, these expenses do not include any "profit" or "overhead."[20]

In addition, as Plaintiffs readily acknowledge, Holdings also "delegated its fiduciary responsibility to hold, manage and control the assets of the Plan" to Reliance, including responsibility for the "selection, retention and monitoring of the Plan investment options." (Am. Comp. 23.)[21] Despite Plaintiffs' naked assertions to the

---

[19] *See* Ex. 7, Reliance's Procedure Manual for Payment or Reimbursement of Plan Expenses, at pp. 1-8; at p. 6 (reimbursement for expenses incurred in administering the plan cannot exceed the "direct expenses" incurred); at p. 6 (no "profit margin" can be charged to the plan). *See Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009) (allowing consideration of an estimated 900 pages of ERISA plan documents).
[20] *Id.*
[21] *See* Ex. 6, Trust Agreement, § 3.2 at p. 5 ("Trustee shall perform discretionary investment services for the Plan. Such services shall include the following: (a)

contrary (*id.*), by delegating these duties to Reliance, Holdings no longer retained any fiduciary responsibility for these functions, as the Plan explicitly prohibits any such fiduciary responsibility to be "shared" by more than one fiduciary.[22]

## PLAINTIFFS' ALLEGATIONS

Plaintiffs have filed this putative class action against five defendants: (1) Reliance, (2) Insperity, (3) Holdings, (4) Retirement Services, and (5) the purported "Insperity Retirement Plan Committee."[23] Without distinguishing between the different Defendants and/or their respective roles, Plaintiffs allege that "all" five of the Defendants breached ERISA's fiduciary duties of prudence and loyalty by selecting and retaining Retirement Services as the Plan's recordkeeper and paying it "excessive recordkeeping compensation" for the services provided.  (Am. Comp. ¶¶ 175-180.)

---

researching, selecting, monitoring and replacing Investment Funds; and (b) providing quarterly investment performance analyses and reports to the Plan Sponsor."); § 4.1(a) at p. 7 ("The Trustee shall serve as discretionary trustee and have all authority and responsibility for the management and control of the Trust Fund.")

[22] *See* Ex. 2, Plan § 10.4, at p. 49.

[23] Plaintiffs allege that "the Plan is advised by a committee that consists of certain officers and members of management of Insperity Holdings, Inc." (Am. Comp. ¶ 24) and refer to these individuals throughout the Amended Complaint as the "Insperity Retirement Plan Committee."   Plaintiffs do not – and cannot – cite to any provision in the Plan regarding the formation or function of this purported "committee."   *See generally*, Ex. 2, Plan.  As a practical matter, however, certain individuals necessarily act on behalf of Holdings, the named fiduciary of the Plan.  The term "Holdings" as used herein encompasses those individuals who act on its behalf, and whom the Plaintiffs mistakenly refer to as the "Insperity Retirement Plan Committee."

Plaintiffs also allege that nearly all[24] of the Defendants breached ERISA's fiduciary duties of prudence and loyalty by: (1) selecting and retaining certain Reliance-proprietary investments (Am. Comp. ¶¶ 169-174); (2) selecting investment options that charged "high" management fees relative to other investment options available in the market and underperformed comparable investments and/or market indices (*Id.* at ¶¶ 181-189); and (3) offering a money-market fund instead of a stable value fund (*Id.* at ¶¶ 190-196).    Plaintiffs also claim "all" Defendants engaged in "prohibited transactions" under ERISA by causing the Plan to use certain Reliance-proprietary investments and Retirement Services as the Plan's recordkeeper.  (*Id.* at ¶¶ 204-217.)

In addition to these direct claims, Plaintiffs allege that Holdings failed to adequately monitor the fiduciary it appointed (Reliance) (*id.* at ¶¶ 197-203), and certain other Insperity Defendants (Insperity and Retirement Services) are liable for equitable relief for causing the Plan to invest in Reliance Trust-proprietary investments and using Retirement Services as the Plan's recordkeeper (*id.* at ¶¶ 218-226).

## STANDARD OF REVIEW

Plaintiffs are required to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

---

[24]    Counts I, III and IV are asserted against Reliance, Insperity, Holdings and the Committee *only*, and not Retirement Services.

*v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Moreover, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

## ARGUMENT

I.   **The Amended Complaint Fails To State A Claim Against Any Of The Insperity Defendants For A Breach Of Fiduciary Duty Regarding The Plan's Recordkeeping Services And Fees**

In Count II, Plaintiffs generally allege that "all" five Defendants breached their fiduciary duties to the Plan by: (a) failing to "engage in a prudent and loyal process for the selection and retention of the Plan's recordkeeper," and (b) paying unreasonable and excessive fees to Retirement Services.  (Am. Comp. ¶ 178.)  Each of these allegations is addressed below, in turn.

### A.   **Plaintiffs' Claim Regarding The Initial Selection Of The Plan's Recordkeeper Is Not Timely**

As a preliminary matter, Plaintiffs' claim regarding the initial "selection" of the Plan's recordkeeper is long since time-barred.  Under ERISA, a plaintiff must file suit within the shorter of either: (1) six years after the "date of the last action which

constituted a part of the breach or violation," or (2) three years from the date that the plaintiff had "actual knowledge" of the breach.  29 U.S.C. § 1113.  Here, Plaintiffs concede that Retirement Services was selected as the Plan's recordkeeper in or around October 1, 2003.  (Am. Comp. ¶¶ 26, 38-39.)  As such, Plaintiffs' claim regarding the initial "selection" of Retirement Services – a decision made more than a decade ago – is barred by ERISA's six-year statute of limitations.  Indeed, all claims based on alleged fiduciary actions or omissions prior to December 22, 2009 (six years before Plaintiffs filed the Complaint on December 22, 2015) are untimely, and should be dismissed.

### B.     Plaintiffs' Claim Regarding The Retention Or Compensation Of The Plan's Recordkeeper Fails Against Insperity And Retirement Services

To the extent Plaintiffs allege a breach of fiduciary duty with respect to the ongoing "retention" and "compensation" of Retirement Services as the Plan's recordkeeper during the period at issue, this allegation fundamentally fails as a matter of law as alleged against Insperity and Retirement Services.  In particular, Plaintiffs explicitly allege that, when delegating certain fiduciary responsibilities to Reliance, *Holdings* "retained for itself the remainder of its fiduciary authority and responsibilities, including as to the selection, retention and compensation of administrative service providers."  (Am. Comp. ¶ 23; *see also id.* at ¶ 75 ("Insperity Holdings, Inc. is responsible for selecting and retaining a recordkeeper for the Plan.").)   Though

Plaintiffs baldly assert that Insperity "hired" and "retained" Retirement Services (*see, id*. ¶¶ 2, 75, 76), such allegations are wholly inconsistent with their allegations in paragraph 23 assigning such a fiduciary duty to Holdings.  Plaintiffs offer no additional factual allegations that either Insperity or Retirement Services played any role in the retention or compensation of Retirement Services as the Plan's recordkeeper.  (*See, e.g., id*. at ¶¶ 75-85, 175-180.)  Indeed, Retirement Services obviously cannot control its *own* selection, retention or compensation.[25]

### C.   Plaintiffs Do Not State A Plausible Claim That Retirement Services Received Unreasonable Or Excessive Fees For Recordkeeping Services

The *gravamen* of Count II is that Retirement Services received "uncapped, asset-based revenue sharing" and, as the amount of assets grew, all five Defendants allowed Retirement Services to receive "excessive recordkeeping compensation."  (Am. Comp. ¶ 178; *accord* ¶¶ 2, 56, 78, 85, 208, 212, 213, 214.)  Again, however, these allegations are based entirely upon Plaintiffs' fundamental misunderstanding that Retirement Services receives *any* "fees" or "profit" for services rendered.  It does not.[26]  Retirement

---

[25] Furthermore, for the reasons set forth in Argument, Section II, *infra* at p.17, neither Insperity nor Retirement Services is a fiduciary to the Plan and, therefore, cannot be liable for any breach of fiduciary duty in any event.

[26] Indeed, Plaintiffs do not, and cannot, provide any factual basis for their bald, unsupported, conclusory assertion that the Plan is the "most profitable" recordkeeping client of Retirement Services.  (*See* Am. Comp. ¶ 42.)

-14-

Services only receives reimbursement for actual, legally permissible expenses, all of which are individually reviewed and approved by an independent fiduciary, Reliance.[27]

Further, Plaintiffs allege that, based on the number of participants in the Plan (50,000) and their understanding of the "market rates" for recordkeeping services, a "reasonable recordkeeping fee" would be $30 per participant. (Am. Comp. ¶ 80.) But this allegation is implausible, and indeed erroneous on its face, because Plaintiffs ignore the nature and structure of this unique, and highly complex, plan and thus the "market" available to service it. For example, Plaintiffs baldly assert that the "market for recordkeeping is highly competitive," and there are "numerous vendors in the marketplace who are capable of providing a high level of service to jumbo 401(k) plans . . . and will readily respond to a request for proposal." (*Id.* at ¶ 45.) While that may be true for a similarly-sized, traditional, single employer 401(k) plan, Plaintiffs proffer no allegations that the per participant fee they assume is reasonable would be available to a plan like this one – a single employer plan administered as a multiple employer plan that the IRS *requires* be administered as a collection of thousands of small, individual plans. *See* Introduction, Section II, *supra*, at p. 4; *see also* Exs. 3, 4 and 5.

Plaintiffs also erroneously suggest that recordkeeping fees may only be charged on a "flat-fee per participant" basis (as opposed to a percentage-of-assets basis) and the

---

[27]    *See* Introduction, Section IV, *supra*, at p. 8; *see also* Ex. 7, at pp. 1-8.

failure to do so is *per se* unreasonable.  (Am. Comp. ¶¶ 178, 47.)  No court, the U.S. Department of Labor, and/or the IRS have ever required this approach.  In contrast, other Circuits have affirmed that a percentage-of-assets fee arrangement "violates no statute or regulation."  *See Hecker v. Deere & Co.*, 556 F.3d 575, 585 (7th Cir. 2009); *Renfro v. Unisys Corp.*, 671 F.3d 314, 327-28 (3d Cir. 2011) (affirming dismissal of claim that participants "should have paid per-participant fees rather than fees based on a percentage of assets in the plan.").

Moreover, Plaintiffs base this claim on their misguided assumption that single-employer plans with a large number of participants can "take advantage of economies of scale" and "negotiate a much lower per participant fee for recordkeeping services." (Am. Comp. ¶ 46.)   Again, however, this allegation is based on the fundamental misconceptions that the Plan is: (1) paying recordkeeping fees (as opposed to only reimbursing actual expenses that are legally permissible under ERISA), and (2) comparable to a traditional, single employer plan (not a "multiple employer plan"). Logically, with regard to the comparison of expenses or fees between a traditional single employer plan and a multiple employer plan, the inverse is true.[28]   A plan like the one at issue here that: (1) is *required* by the IRS to be operated like a collection of

---

[28] Indeed, Plaintiffs acknowledge that the cost of providing recordkeeping services to smaller, individual plans is greater than for larger plans.  (Am. Comp. ¶ 46.)

thousands of small, individual plans,[29] and (2) has hundreds of client employers and worksite employee participants moving in and out each year,[30] is obviously far *more* expensive to administer and recordkeep than a traditional, single employer 401(k) plan. Plaintiffs' multiple erroneous assumptions make their claim regarding the reimbursement Retirement Services receives for providing recordkeeping and other administrative services utterly implausible. Thus, Count II fails as a matter of law.

## II.  The Amended Complaint Fails To Allege Facts Sufficient To Establish That Certain Insperity Defendants Are Fiduciaries Of The Plan

It is well-established that in order "[t]o establish liability for a breach of fiduciary duty under any of the provisions of ERISA § 502(a), a plaintiff must first show that the defendant is in fact a fiduciary with respect to the plan." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277 (11th Cir. 2005).   Indeed, "in every case charging breach of ERISA fiduciary duty" the "threshold question" is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdich*, 530 U.S. 211, 226 (2000).[31]  Because neither

---

[29] *See* Exs. 4 and 5.

[30] During 2014 alone, $129,304,468 in assets were transferred into this Plan from 212 other unaffiliated, qualified plans.  Additionally, $257,156,508 in assets were spun off to 148 other, unaffiliated plans.  *See* Ex. 3, Financial Statement, at p. 15.

[31] Under ERISA, a person can only become a fiduciary one of two ways: (1) by being a "named fiduciary" in the plan instrument; or (2) "to the extent" he exercises discretionary control over the plan or the management of its assets, renders investment

of the entities is a fiduciary of the Plan, the claims alleged against Insperity (Counts I-IV) and Retirement Services (Count II) fundamentally fail as a matter of law.

## A.   Insperity Is Not A Fiduciary

Plaintiffs acknowledge that Insperity is not the sponsor, administrator or named "fiduciary" of the Plan.  (*See* Am. Comp. ¶¶ 22-23 (noting that Holdings is the sponsor, administrator and named fiduciary of the Plan).)  Nor do Plaintiffs allege any facts that Insperity itself exercises any control or authority over the management of the Plan or the Plan's assets.  (*See generally,* Am. Comp.)  Rather, Plaintiffs summarily allege that Insperity is a fiduciary because it "exercised discretionary authority or discretionary control respecting the management of the Plan or management or disposition of its assets, and had discretionary authority or discretionary responsibility in the administration of the Plan."  (*Id.* at ¶ 25.)  Merely reciting portions of the statutory language defining an ERISA fiduciary, without facts to support such conclusory allegations, is insufficient to allege fiduciary status.  *Cotton*, 402 F.3d at 1277-78.

Indeed, Plaintiffs do not allege Insperity itself, or any of its officers, had any role with respect to the Plan.  Rather, Plaintiffs attempt to pin fiduciary liability on Insperity under an "agency" theory by alleging that Insperity obtained authority and control over

---

advice for a fee, or has any discretionary authority or responsibility over plan administration.  29 U.S.C. §§ 1102(a)(2) and 1002(21)(A).

the Plan through the actions of the officers and members of management of its subsidiary, Holdings.  (Am. Comp. ¶¶ 20, 25, 27.)  Imposing liability under an agency theory, however, would undermine the basic ERISA fiduciary principle that limits fiduciary status only "to the extent" a person carries out one of the functions set forth in ERISA § 3(21)(A).  *See* 29 C.F.R. § 2509.75-8 Q&A FR-16.  Courts have rejected the application of common law agency principles in the ERISA context because the statute already includes a provision under which a person, if he otherwise qualifies as a fiduciary, can be liable as a co-fiduciary for the breaches of his delegates.[32]  Because it is not a fiduciary of the Plan, Counts I-IV must be dismissed as to Insperity.

### B.    Retirement Services Is Not A Fiduciary

Likewise, Plaintiffs acknowledge that Retirement Services is not the sponsor, administrator or named "fiduciary" of the Plan.  (*See* Am. Comp. ¶¶ 22, 26.)  And Plaintiffs do not allege that Retirement Services itself exercises any control or authority over the management of the Plan or the Plan's assets.  (*See generally,* Am. Comp.)

---

[32] *See Wagner v. Stiefel Labs., Inc.*, No. 1:12–CV–3234–MHC, 2015 WL 4557686, *24 (N.D. Ga. June 18, 2015 )(Cohen, J.) ("there is no *respondeat superior* liability for the alleged fiduciary breaches under ERISA.") citing *Woods v. S. Co.*, 396 F. Supp. 2d 1351, 1370 (N.D. Ga. 2005); *In re SunTrust Banks, Inc. ERISA Litig.*, 749 F. Supp. 2d 1365, 1372-73 (N.D. Ga. 2010); *see also DiFelice v. U.S. Airways, Inc.*, 397 F. Supp. 2d 758, 780 (E.D. Va. 2005) ("Because ERISA § 405(c) [29 U.S.C. § 1105(c)] directly addresses the liability of a fiduciary for the breaches of its delegates, it has therefore supplanted traditional agency principles in this specific context.").

-19-

Rather, as Plaintiffs concede, Retirement Services merely serves as "the Plan recordkeeper providing in-house administrative and recordkeeping services." (*Id.* at ¶ 26.)[33]  However, it is well-established that an entity simply performing recordkeeping and other ministerial-type functions is not a fiduciary and has no fiduciary obligation governed by ERISA.  *See Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 290 (11th Cir. 1989) citing *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1564 (11th Cir. 1987).[34]  Because it is not a fiduciary of the Plan, Count II must be dismissed as to Retirement Services.

### III.  The Amended Complaint Fails To State A Claim Against Any Of The Insperity Defendants For Breach of Fiduciary Duty Regarding The Plan's Investment Options

Counts I, III and IV – alleged against Reliance, Insperity, Holdings and the "Committee" – relate to the "selection" and "retention" of specific investment options in the Plan.  Specifically, Plaintiffs claim that these four Defendants breached ERISA's fiduciary duties of prudence and loyalty by "selecting" and "retaining" certain Reliance-proprietary investments (Count I), "selecting" and "retaining" investment options with high expenses relative to other investment options,  (Count III), and "maintaining" a

---

[33] *See* Ex. 1, at p. 7 (identifying services Retirement Services provides to the Plan).

[34] 29 C.F.R. § 2509.75-8 D-2; *see also Moon v. BWX Techs., Inc.,* 577 F. App'x 224, 231 (4th Cir. 2014); *Pohl v. Nat'l Benefits Consultants, Inc.*, 956 F.2d 126, 129 (7th Cir. 1992); *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991); *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 39 (3d Cir. 1991).

money market fund and failing to "offer" a stable value fund (Count IV).

The Insperity Defendants do not dispute that Holdings is the sponsor, and a named fiduciary, of the Plan.  (*Id.* at ¶ 22.)  However, ERISA specifically allows a "named fiduciary" to delegate its fiduciary responsibility of managing and controlling plan assets if the plan document allows.  29 U.S.C. § 1105(c).  In doing so, the individual or entity no longer has any fiduciary responsibilities and is not liable for the acts or omissions of the person or entity to whom the fiduciary responsibilities were delegated.  *Id.* at § 1105(c)(2); *Tookes v. Metro. Life Ins. Co.*, No. CIV.A.1:04CV1957-RWS, 2006 WL 870313, at *9-10 (N.D. Ga. Mar. 31, 2006).

Pursuant to Section 10.3 of the Plan, Holdings "delegated its fiduciary responsibility to hold, manage and control the assets of the Plan to Reliance, which includes the selection, retention and monitoring of the Plan investment options."  (Am. Comp. ¶ 23; *see also* ¶ 199.)  And, as Plaintiffs' concede throughout their Amended Complaint, *Reliance* is the fiduciary responsible for the *selection*, *retention* and *monitoring* of the investment options made available to Plan participants.[35]

---

[35] *See, e.g.,* Am. Comp. ¶ 2 ("Reliance Trust acted to benefit itself by selecting and retaining high-cost and poorly performing investments for the Plan"); ¶ 18 (Reliance "functions as the Plan's discretionary trustee to 'hold, manage and control the assets of the Plan,' including the selection, retention and monitoring of investment options made available to participants"); ¶ 57 (Holdings "retained Reliance [] as discretionary trustee to hold, manage, and control the assets of the Plan and to be responsible for selecting,

Plaintiffs fail to plead any specific factual basis for concluding that Holdings "retained" any responsibility for selection or retention of investment options in the Plan. Plaintiffs simply allege, in conclusory fashion, that Holdings "exercises discretionary authority or discretionary control respecting the management of the Plan, exercises authority or control respecting management or disposition of Plan assets, or has discretionary authority or discretionary responsibility in the administration of the Plan." (*Id.* at ¶ 22.)  But the only factual basis for that claim appears to be that Holdings is the "named fiduciary" of the Plan.  (*Id.*)  Plaintiffs do not allege any specific *facts* to support the notion that Holdings played any role with respect to the investment options in the Plan, after it delegated such responsibility to Reliance.[36]  In contrast, the Plan expressly prohibits fiduciaries from sharing such responsibility.[37]  Therefore, Counts I, III and IV

---

retaining, and monitoring the investment options available to participants"); ¶ 58 ("as the delegated fiduciary responsible for Plan investment selections, Reliance [] selected the investment funds for the Plan."); *id.* ("Reliance [] selected and retained its own high-cost and poorly performing Reliance [] investments"); ¶ 60 ("Reliance [] is required to . . . engaged in a rigorous investment selection and monitoring process."); ¶ 62 ("Reliance [] added the funds to the Plan…"); ¶ 65 ("Reliance [] decided to include the newly-created proprietary funds"); ¶ 73 ("Reliance []'s . . . selection of its own target date funds. . ."); ¶ 91 ("Reliance [] selected…"); ¶ 100 ("Reliance [] added a series of its own proprietary target-date funds to the Plan"); ¶ 135 ("Reliance [] added its own in-house proprietary stable value fund").

[36] Indeed, such an allegation would be inconsistent with Count V, in which Plaintiffs seek to hold Holdings liable for a failure to adequately *monitor* Reliance.  (Am. Compl. ¶¶ 197-203.)

[37] *See* Ex. 2, Plan § 10.4, at p. 49.

must be dismissed as to Holdings.[38]

## IV.  The Amended Complaint Fails To State A Claim Against Holdings For Breach Of The Duty To Monitor Or For Co-Fiduciary Liability

Recognizing that Holdings delegated its fiduciary responsibility for selection and retention of the Plan's investment options to Reliance, with Count V, Plaintiffs allege in conclusory fashion that Holdings failed to adequately "monitor" Reliance "to ensure that any delegated tasks were being performed prudently and loyally."  (Am. Comp. ¶ 201.)  However, Plaintiffs' failure to monitor claim is entirely dependent upon their underlying allegations that Reliance breached its fiduciary duties.  Plaintiffs do not allege any *specific* facts regarding the monitoring process or how it was deficient.[39] Accordingly, Plaintiffs have failed to provide the requisite factual allegations necessary to "nudge [] their claims across the line from conceivable to plausible," (*Twombly*, 550 U.S. at 570), and their monitoring claim against Holdings must be dismissed.[40]

To the extent Plaintiffs' Amended Complaint alleges that Reliance breached its fiduciary duties to the Plan, Plaintiffs have not adequately pled a claim against Holdings

---

[38] Neither Insperity nor Retirement Services are fiduciaries of the Plan and, therefore, cannot be liable for any such breach of fiduciary duty alleged in Counts I, III and IV. *See* Argument, Section II *supra* at p. 17.

[39] *See, e.g., Romero v. Nokia, Inc.*, No. C 12-6260 PJH, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013); *In re Nokia ERISA Litig.*, No. 10 CV 03306, 2011 WL 7310321, at *5 (S.D.N.Y. Sept. 6, 2011) *aff'd* 528 F. App'x 52 (2d Cir. 2013).

[40] *Kenney v. State St. Corp.*, 694 F. Supp. 2d 67, 79 (D. Mass. 2010).

for any co-fiduciary liability under ERISA § 405(a), 29 U.S.C. § 1105(a).[41]  Plaintiffs allege no facts in support of their "co-fiduciary" liability theory; instead, they merely recite the applicable statutory language.  (*See* Am. Comp. ¶¶ 174, 180, 189, 196.)  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient to state a claim.  *Iqbal*, 556 U.S. at 678.

Further, should the Court dismiss Counts I-IV, Plaintiffs' derivative duty to monitor claim (Count V) and co-fiduciary liability allegations (*See* Am. Comp. ¶¶ 174, 180, 189, 196) necessarily fail as a matter of law.  *Lanfear v. Home Depot Inc.*, 718 F. Supp. 2d 1364, 1381-82 (N.D. Ga. 2010) *aff'd*, 679 F.3d 1267 (11th Cir. 2012).

## V.   The Amended Complaint Fails To State A Claim Against Any Of The Insperity Defendants For Prohibited Transactions

Counts VI and VII allege that "all" Defendants engaged in certain prohibited transactions in violation of ERISA § 406(a), 29 U.S.C. § 1106(a) and ERISA § 406(b), 29 U.S.C. § 1106(b) by causing the Plan to use Retirement Services as the Plan's recordkeeper and Reliance-proprietary investments.  (Am. Comp. ¶¶ 204-217.)

### A.   Count VII Fails Against The Insperity Defendants

With respect to Count VII, Section 406(b) of ERISA relates solely to transactions

---

[41] Insperity and Retirement Services are not fiduciaries of the Plan and, thus, cannot be liable for any purported breach as a co-fiduciary.  *See* Argument, Section II, *supra*, at p. 17.

between a plan and a *fiduciary*. Neither Insperity nor Retirement Services[42] are fiduciaries of the Plan.  *See* Introduction, Section II, *supra*, at p. 17.  Though Holdings is a fiduciary of the Plan, Plaintiffs do not (and cannot) allege *any* transaction took place between the Plan and Holdings, nor do they allege Holdings received any revenue.  (*Id.* at ¶ 217.)  Therefore, Count VII fails as a matter of law against all of the Insperity Defendants.

### B.   Count VI Fails Against The Insperity Defendants

With respect to Count VI, Section 406(a) of ERISA relates solely to transactions between a plan and a *party-in-interest*.[43]  As with Count VII, Plaintiffs do not (and cannot) allege that *any* transaction took place between the Plan and Holdings, or that Holdings received any revenue.  (*Id.* at ¶ 209.)   Nor do they allege *any* transaction directly took place between the Plan and Insperity.  Rather, Plaintiffs apparently contend that Insperity should be a party to this count because it is the ultimate parent

---

[42] The Insperity Defendants do not dispute that Retirement Services is a service provider to the Plan and, therefore, a "party-in-interest" to the Plan. 29 U.S.C. § 1002(14)(B). To the extent Plaintiffs allege that a transaction occurred between the Plan and Retirement Services, such a claim properly belongs in Count VI.

[43]     For the reasons discussed in Argument, Section III, *supra* at p. 20, Reliance had sole fiduciary responsibility for the selection of the Plan's investment options.  To the extent Plaintiffs allege that a prohibited transaction occurred because Reliance caused the Plan to use Reliance-proprietary investments, such a transaction would be between the Plan and a *fiduciary* and, therefore, is properly alleged against Reliance in Count VII.

corporation and, therefore, any revenues received by its subsidiary (Retirement Services) indirectly benefitted Insperity.  (*See, e.g., id.* at ¶¶ 208, 52, 55, 56, 78, 79.)  There is simply no legal basis to pierce the corporate veil in this regard,[44] and the Amended Complaint contains no facts to support such a theory.  Thus, Count VI must be dismissed as to Holdings and Insperity.

To the extent Plaintiffs allege in Count VI that Retirement Services is a "party-in-interest" to the Plan, and a prohibited transaction occurred because Defendants caused the Plan to use Retirement Services as the Plan's recordkeeper, Plaintiffs have failed to state a claim.  The express language of the statute conditions the existence of a prohibited transaction on the non-applicability of a statutory or administrative exemption under ERISA § 408, 29 U.S.C. § 1108.  *See* 29 U.S.C. § 1106(a) ("Except as provided in section 1108 . . .").  Consistent with the statutory framework, courts have concluded that, in order to state a plausible claim, a plaintiff must allege facts establishing not only that: (1) a transaction described in ERISA § 406, 29 U.S.C. §

---

[44] *See, e.g., U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries.") (citation omitted); *see also Roberts v. Wells Fargo Bank, N.A.*, No. 4:12–cv–200, 2013 WL 1233268, at *8 (S.D. Ga. Mar. 27, 2013) (noting that a parent corporation "undoubtedly" profits from its ownership of a subsidiary (assuming the subsidiary itself turns a profit), but mere profit derived from ownership of a subsidiary is insufficient to pierce the corporate veil.)

1106, has occurred, but also (2) that the transaction did not fall within an applicable statutory or administrative exemption under ERISA § 408, 29 U.S.C. § 1108.[45]

Here, there are a series of exemptions applicable to Plaintiffs' prohibited transaction claims, including ERISA § 408(b)(2), which provides that:

> The prohibitions provided in section 1106 shall not apply to . . . Contracting or making reasonable arrangements with a party in interest for . . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.

29 U.S.C. § 1108(b)(2).  Plaintiffs fail to plausibly allege that reimbursement of Retirement Services' actual expenses does not meet this statutory standard.  Plaintiffs do not allege that the recordkeeping and administrative services provided by Retirement Services were unnecessary; in fact, Plaintiffs admit that recordkeeping services are "necessary for every defined contribution plan." (Am. Comp. ¶ 45.)  And as explained above, the only "compensation" Retirement Services received for its services was reimbursement of its actual expenses (that Reliance approved, with no profit element), which is legally permissible under ERISA.  The conclusory allegations that this

---

[45] *See, e.g. Leber v. Citigroup, Inc.*, No 07 Civ. 9329, 2010 WL 935442, at *10 (S.D.N.Y. Mar. 16, 2010); *Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001); *but see Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 600 (8th Cir. 2009).  The Insperity Defendants are not aware of any Eleventh Circuit authority directly addressing this issue.  In *Fuller v. SunTrust Banks, Inc.*, 2012 WL 1432306, at *6 (N.D. Ga. Mar. 20, 2012), the district court declined to dismiss the complaint on the basis of an available exemption, but did so only after pointing to allegations in the complaint that plausibly challenged compliance with the exemption.  *Id.* at *6.

compensation was "unreasonable" are based on erroneous comparisons and, thus, fail to state a plausible claim.

Similarly, ERISA § 408(c)(2), 29 U.S.C. § 1108(c)(2), provides that the prohibited transaction rules should not be "construed to prohibit any fiduciary from . . . receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan," except as otherwise identified within ERISA § 408(c), 29 U.S.C. § 1108(c). Again, Plaintiffs do not allege a plausible factual basis that the relevant exemptions do not apply and, therefore, Plaintiffs' prohibited transaction claims must be dismissed.

## VI. The Amended Complaint Fails To State A Claim For "Equitable Relief"

In Count VIII (Am. Comp. ¶¶ 218-226), Plaintiffs seek "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), from Insperity and Retirement Services, based upon the same underlying fiduciary breach claims that they assert in Counts I-IV related to the Plan's use of "Reliance-managed investments" (¶ 221) and "proprietary Insperity recordkeeping services," (¶ 222) and the prohibited transaction claims they assert in Counts VI and VII (*id.* at ¶¶ 223-24). However, in seeking equitable relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs may not simply "repackage" the claims they have already asserted under other provisions of ERISA. *See, e.g., Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015).

Count VIII should be dismissed because Plaintiffs do not identify an injury for which Counts I-IV and VI-VII do not already provide an adequate remedy.[46]

## VII.   The "Shotgun" Style Amended Complaint Fails To Give Any Of The Defendants Adequate Notice Of The Claims Against Them

Despite the fact that Defendants admonished Plaintiffs for the "shotgun" style pleading of their original Complaint, their Amended Complaint fares no better.[47] Although Plaintiffs removed "Retirement Services" as a named defendant from Counts I, III and IV, nearly all of the counts in the Amended Complaint are still asserted against four, if not "all" five "Defendants." And these Counts are still replete with blanket allegations that all of the "Defendants" engaged in certain conduct, making no distinction among the specific Defendants named in each particular count.  (*See, e.g.,* Am. Comp. ¶¶ 171-72, 176-78, 182-87, 192-94, 206, 208.)  Likewise, with respect to the various Insperity Defendants, Plaintiffs repeatedly lump all four Insperity Defendants together and refer to them generally, and collectively, as the "Insperity entities."[48]  In doing so, Plaintiffs obscure the requirement that each of the four distinct Insperity Defendants must be given notice of the specific conduct at issue.

---

[46] Furthermore, Plaintiffs' § 502(a)(3) claim fundamentally fails as a matter of law because Insperity and Retirement Services did not receive any "fees" paid from Plan assets.  Retirement Services simply received reimbursement for actual expenses.  (*See* Ex. 7, at pp. 1-8.)

[47] *See* ECF No. 29-1, at pp. 28-29.

[48] *See, e.g.,* Am. Comp. ¶¶ 2, 27, 91, 149, 154, 212.

Moreover, by failing to properly differentiate among the various five Defendants, Plaintiffs' Amended Complaint is internally inconsistent.   For example, Plaintiffs specifically allege that *Holdings* retained sole fiduciary responsibility for the selection, retention and compensation of administrative service providers, but then accuse all "Defendants" of wrongdoing with respect to the process for selection and retention of Retirement Services as the Plan's recordkeeper.   (*Compare* Am. Comp. ¶¶ 23, 75 *with* ¶ 178.)   And, Plaintiffs accuse all of the Insperity Defendants of wrongdoing with respect to the "selection" and "retention" of the Plan's investment options (Counts I, III and IV), even though Plaintiffs repeatedly concede that duty was expressly delegated to Reliance.   *See* n. 35, *supra*.   Indeed, Plaintiffs' Amended Complaint remains the classic "shotgun" style of pleading that has been condemned repeatedly by the Eleventh Circuit, and it should be dismissed on that basis alone.   *See, e.g., Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015); *Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005).

## <u>CONCLUSION</u>

For the foregoing reasons, the Insperity Defendants respectfully request that the Court dismiss all claims asserted against them in Plaintiffs' Amended Complaint with prejudice.

Dated: May 16, 2016                    Respectfully submitted,

**ALSTON & BIRD LLP**
By: */s/ H. Douglas Hinson*
H. Douglas Hinson
Georgia Bar No. 356790
doug.hinson@alston.com
Emily S. Costin (*pro hac vice*)
emily.costin@alston.com
The Atlantic Building
950 F Street, NW
Washington, DC 20004-1404
Telephone: (202) 239-3300
Fax: (202) 239-3333

and

Patrick Connors DiCarlo
Georgia Bar No. 220339
pat.dicarlo@alston.com
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

*Counsel for Defendants Insperity, Inc., Insperity Holdings, Inc., Insperity Retirement Services, L.P. and the Insperity Retirement Plan Committee*

-31-

## CERTIFICATE OF SERVICE AND TYPE-SIZE COMPLIANCE

Pursuant to Local Rule 5.1C, N.D. Ga. and Standing Order No. 04-01, the foregoing pleading is prepared in Times New Roman font, 14 point, and was filed using the CM/ECF system, which will automatically provide notice to the following attorneys of record by electronic means:

Bradley S. Wolff
SWIFT CURRIE McGHEE & HEIRS, LLP
1355 Peachtree St., NE, Suite 300
Atlanta, GA 30309-3231

Jerome Schlichter
Michael Wolff
Troy Doles
Kurt Struckhoff
Heather Lea
SCHLICHTER BOGARD & DENTON, LLP
100 South Fourth Street
St. Louis, MO 63012

*Counsel for Plaintiffs*

William Bard Brockman
BRYAN CAVE, LLP
One Atlantic Center, 14th Floor
1201 West Peachtree St, N.W.
Atlanta, GA 30309-3488

Brian D. Boyle
Shannon M. Barrett
O'MELVENY & MYERS
1625 Eye Street, NW
Washington, DC 20006-4001

*Counsel for Defendant Reliance Trust Company*

*/s/ H. Douglas Hinson*
H. Douglas Hinson