IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RONDA A. PLEDGER, *et al.*,

     *Plaintiffs*,

v.

RELIANCE TRUST COMPANY, *et al.*,

     *Defendants*.

Civil Action No.
1:15-cv-04444-MHC

**MEMORANDUM IN OPPOSITION TO INSPERITY DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT [DOC. 41]**

# CONTENTS

Authorities................................................................................................................ ii

Introduction ............................................................................................................1

    I.    Standard of Review. ...................................................................................2

    II.   ERISA standards. .......................................................................................3

Background ..............................................................................................................6

Argument ...............................................................................................................10

    I.    Count II plausibly alleges a fiduciary breach based on the Plan's excessive recordkeeping and administrative fees. .....................................10

    II.   The Insperity entities are all proper defendants. ......................................18

        A.  Insperity Inc. is a fiduciary. ..............................................................20

        B.  Insperity Retirement Services is a fiduciary. .....................................22

        C.  Insperity Inc. and Insperity Retirement Services are subject to equitable relief under Count VIII even if they are not fiduciaries. .......23

        D.  Counts I, III, IV, & V state claims against Insperity Holdings.............23

    III.  Counts VI and VII state prohibited transaction claims.............................25

    IV.  The amended complaint is not a "shotgun" pleading. ...............................29

Conclusion .............................................................................................................30

# AUTHORITIES

## Cases

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,*
  77 F.3d 364 (11th Cir. 1996) ................................................................29

*Braden v. Wal-Mart Stores, Inc.,*
  588 F.3d 585 (8th Cir. 2009) ........................................... 3, 14, 18, 27

*Brotherston v. Putnam Invs., LLC,*
  No. 15-13825, 2016 U.S.Dist.LEXIS 50849 (D.Mass. Apr. 6, 2016) .................5

*Bryant v. Avado Brands, Inc.,*
  187 F.3d 1271 (11th Cir. 1999) ...........................................................15

*Bryant v. Rich,*
  530 F.3d 1368 (11th Cir. 2008) ...........................................................12

*Chaparro v. Carnival Corp.,*
  693 F.3d 1333 (11th Cir. 2012) ......................................................2, 18

*CIGNA Corp. v. Amara,*
  563 U.S. 421 (2011)..............................................................................15

*Cotton v. Mass. Mut. Life Ins. Co.,*
  402 F.3d 1267 (11th Cir. 2005) ...........................................................22

*Deak v. Masters, Mates & Pilots Pension Plan,*
  821 F.2d 572 (11th Cir. 1987) ...............................................................4

*Donovan v. Cunningham,*
  716 F.2d 1455 (5th Cir. 1983) .............................................................27

*Donovan v. Mercer,*
  747 F.2d 304 (5th Cir. 1984) ...............................................................20

*Elmore v. Cone Mills Corp.,*
  23 F.3d 855 (4th Cir. 1994) .................................................................27

*Fish v. Greatbanc Trust Co.,*
  749 F.3d 671 (7th Cir. 2014) ...............................................................27

*Fuller v. Suntrust Banks, Inc.,*
  744 F.3d 685 (11th Cir. 2014) .......................................................3, 15

*Fuller v. Suntrust Banks, Inc.*,
   No. 11-784, 2012 U.S.Dist.LEXIS 56602 (N.D.Ga. Mar. 20, 2012) ........... 27, 28

*George v. Kraft Foods Global, Inc.*,
   641 F.3d 786 (7th Cir. 2011) ............................................................. 10, 11, 18

*Goldenberg v. Indel, Inc.*,
   741 F.Supp.2d 618 (D.N.J. 2010) ......................................................27

*Hamilton v. Carell*,
   243 F.3d 992 (6th Cir. 2001) ...............................................................26

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*,
   530 U.S. 238 (2000)................................................................ 5, 6, 26

*Hecker v. Deere & Co*,
   556 F.3d 575 (7th Cir. 2009) ................................................................15

*Herman v. S.C. Nat'l Bank*,
   140 F.3d 1413 (11th Cir. 1998) .............................................................6

*Howard v. Shay*,
   100 F.3d 1484 (9th Cir. 1996) .............................................................27

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ...............................................................22

*Hunt v. Hawthorne Assocs.*,
   119 F.3d 888 (11th Cir. 1997) ...................................................... 20, 21

*In re Cardinal Health ERISA Litig.*,
   424 F.Supp.2d 1002 (S.D.Ohio 2006) ....................................................22

*Jacobs v. Tempur-Pedic Int'l, Inc.*,
   626 F.3d 1327 (11th Cir. 2010) ............................................................2

*Kling v. Fid. Mgmt. Trust Co.*,
   323 F.Supp.2d 132 (D.Mass. 2004) .......................................................22

*Krueger v. Ameriprise Fin., Inc.*,
   No. 11-2781, 2012 U.S.Dist.LEXIS 166191 (D.Minn. Nov. 20, 2012)..............28

*Kruger v. Novant Health, Inc.*,
   131 F.Supp.3d 470 (M.D.N.C. 2015) .................................... 1, 11, 12, 15, 18, 25

*Leber v. Citigroup, Inc.*,
   No. 07-9329, 2010 U.S.Dist.LEXIS 25097 (S.D.N.Y. Mar. 16, 2010) .............27

*Lowen v. Tower Asset Mgmt.*,
829 F.2d 1209 (2d Cir. 1987) ..................................................... 26, 27

*Mass. Mut. Life Ins. Co. v. Russell*,
473 U.S. 134 (1985) .........................................................................6

*Mehling v. N.Y. Life Ins. Co.*,
163 F.Supp.2d 502 (E.D.Pa. 2001) ...............................................27

*Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*,
781 F.3d 1245 (11th Cir. 2015) ..................................................2, 18

*Pegram v. Herdrich*,
530 U.S. 211 (2000) .........................................................................4

*Rankin v. Rots*,
278 F.Supp.2d 853 (E.D.Mich. 2003) ...........................................19

*Reich v. Lancaster*,
55 F.3d 1034 (5th Cir. 1995) ..........................................................26

*Shirk v. Fifth Third Bancorp*,
No. 05-49, 2008 U.S.Dist.LEXIS 108089 (S.D.Ohio Sep. 26, 2008) ................28

*Silva v. Metro. Life Ins. Co.*,
762 F.3d 711 (8th Cir. 2014) ..........................................................23

*Stargel v. Suntrust Banks, Inc.*,
791 F.3d 1309 (11th Cir. 2015) ...................................................3, 5

*Tatum v. RJR Pension Inv. Comm.*,
761 F.3d 346 (4th Cir. 2014) ...........................................................5

*Tibble v. Edison Int'l*,
135 S.Ct. 1823 (2015) ............................................................ 5, 6, 16

*Tussey v. ABB, Inc.*,
746 F.3d 327 (8th Cir. 2014) .................................. 1, 5, 10, 11, 17, 18

*United States v. Jennings*,
599 F.3d 1241 (11th Cir. 2010) ........................................................7

*Valley Fin., Inc. v. United States*,
629 F.2d 162 (D.C. Cir. 1982) ................................................... 26, 27

*Varity Corp. v. Howe*,
516 U.S. 489 (1996) .......................................................................23

iv

*Weiland v. Palm Beach Cty. Sheriff's Office*,
   792 F.3d 1313 (11th Cir. 2015) ................................... 29, 30

*Woods v. S. Co.*,
   396 F.Supp.2d 1351 (N.D.Ga. 2005) ........................... 19, 20, 21, 22

**Statutes**

26 U.S.C. §401(k) ...........................................................................6

29 U.S.C. §1002(14)(A) ................................................................26

29 U.S.C. §1002(16)(B) .................................................................7

29 U.S.C. §1002(21)(A) ................................................ 7, 20, 21, 22, 25

29 U.S.C. §1002(21)(A)(i) ..........................................................3, 21

29 U.S.C. §1002(21)(A)(iii) ...........................................................3

29 U.S.C. §1002(34) .......................................................................6

29 U.S.C. §1102(a) ................................................................ 3, 8, 15

29 U.S.C. §1103(c)(1) ................................................................4, 16

29 U.S.C. §1104(a)(1)(A) ...........................................................4, 16

29 U.S.C. §1104(a)(1)(B) ...............................................................4

29 U.S.C. §1104(a)(1)(D) .............................................................15

29 U.S.C. §1105(a) ................................................... 21, 23, 24, 25

29 U.S.C. §1105(c)(2) .................................................................8, 24

29 U.S.C. §1105(c)(2)(A) .............................................................24

29 U.S.C. §1105(c)(2)(B) .............................................................24

29 U.S.C. §1106...........................................................................5, 27

29 U.S.C. §1106(a) .......................................................................26

29 U.S.C. §1106(b) ................................................................. 26, 28

29 U.S.C. §1106(b)(1) ..................................................................29

29 U.S.C. §1106(b)(2) ..................................................................29

29 U.S.C. §1106(b)(3) ..................................................................27

29 U.S.C. §1108...........................................................................27

29 U.S.C. §1108(b)(2)...........................................................28

29 U.S.C. §1108(c)(2)...........................................................28

29 U.S.C. §1109(a) .........................................................5, 10

29 U.S.C. §1110(a) ..............................................................25

29 U.S.C. §1132(a)(3)..................................................... 10, 23

29 U.S.C. §1132(a)(3)(B) .......................................................6

**Rules**

Fed.R.Civ.P. 12(b)(6)...................................... 12, 15, 25

Fed.R.Civ.P. 12(e).............................................................29

Fed.R.Civ.P. 8(a)(2) ............................................................2

Fed.R.Civ.P. 8(a)(3) ..........................................................23

Fed.R.Civ.P. 8(d)(2) ..........................................................23

Fed.R.Civ.P. 8(d)(3) ..........................................................24

Fed.R.Evid. 201(b)..............................................................15

**Other**

Erin Turley et al., Multiple Employer Plans – Opportunities and Challenges: Qualified Retirement Plans, Benefit Practitioners' Strategy Guide, BPRC (Jan. 18, 2012).............................................................12

H. Douglas Hinson, et al., *Fiduciary Investment Litig.: Latest on Employer Stock,* Dudenhoeffer*, 401(k) Fee Cases Including Claims to Reduce Fees and Excessive Plan Fees*, Am. Conference Inst., 12th Nat'l Forum on ERISA Litig. (June 27, 2016) ..............................................26

Robert Steyer, "DC Record Keeper Assets Climb to All-Time High," *Pensions & Investments* (Mar. 4, 2013).............................14

U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* (Aug. 2013) .................6

# INTRODUCTION

Plaintiffs' 137-page, 227-paragraph amended complaint sets forth detailed facts showing that Defendants managed the $2 billion Insperity 401(k) Plan to enrich itself at the expense of the Plan and its participants, in breach of ERISA's fiduciary duties of loyalty and prudence. Plaintiffs specifically describe the ways Defendants breached ERISA's stringent fiduciary standards, including numerous comparisons showing the Plan's grossly excessive fees and underperforming investments compared to prudently and loyally managed plans, and how the Plan suffered losses as a result. Courts have consistently found similar detailed allegations sufficient to state a claim, and have found fiduciaries liable for breaching their duties when the allegations are proved at trial.[1]

Insperity[2] does not seriously dispute that the allegations state plausible claims for breach of fiduciary duties. Instead, it merely disputes the facts, contending that

---

[1] *See, e.g.*, *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014)(affirming judgment that employer breached fiduciary duties based on "significant allegations of wrongdoing," including that the employer used plan revenues to enrich itself and the plan's recordkeeper "at the Plan's expense"); *Kruger v. Novant Health, Inc.*, 131 F.Supp.3d 470, 477–79 (M.D.N.C. 2015)( plaintiffs stated plausible claims "that the fiduciaries were utilizing imprudently expensive investment options to the detriment of the plan" and failed to prudently "monitor the sudden spike in recordkeeping fees").

[2] "Insperity" includes Defendants Insperity Inc., Insperity Holdings Inc., Insperity Retirement Services L.P., and the Insperity Retirement Plan Committee. Amended Complaint (AC), ¶¶19, 21, 24, 26 (Doc. 37).

the Plan is more complex and costs more to administer than Plaintiffs allege and contending that it received only reimbursement of expenses and not fees or profits. These factual disputes cannot be resolved at the pleading stage. Insperity also erroneously contends that Plaintiffs must plead specifically which Insperity entity took what specific actions at what specific times to prove each of them was a fiduciary at all times for all such actions, an impossible standard, given that those facts are hidden from Plan participants. Insperity provides no basis for dismissing the amended complaint and the Court should deny its motion.

## I.     Standard of Review.

To satisfy the "simplified pleading standard" of Federal Rule of Civil Procedure 8(a)(2), "the complaint need only 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015)(citations omitted). A claim is plausible if it provides "'enough fact to raise a reasonable expectation that discovery will reveal evidence'" of liability. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012)(per curiam).

Assessing the sufficiency of a complaint is "a context-specific task[.]" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1333 (11th Cir. 2010)(citation omitted). In the "practical context of ERISA litigation," how fiduciaries made plan decisions

and which fiduciaries took what actions "tend systemically to be in the sole possession of defendants." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). "No matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Id*. "If plaintiffs cannot state a claim without pleading" facts in the sole possession of the defendants, "the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." *Id.*; *see also id*. at 597 n.8, 602. Therefore, a fiduciary breach claim is plausible if the Court may "infer from what is alleged that the process was flawed" and "tainted by failure of effort, competence, or loyalty." *Id.* at 596.

## II.    ERISA standards.

"ERISA's fiduciary duties are 'the highest known to law.'" *Fuller v. Suntrust Banks, Inc.*, 744 F.3d 685, 695 (11th Cir. 2014).[3] A fiduciary is either the entity named as such in the plan documents (29 U.S.C. §1102(a)) or any entity that has or exercises discretionary authority, control, or responsibility over the administration of the plan or exercises any authority or control over plan assets (29 U.S.C. §1002(21)(A)(i) and (iii)).

The duty of loyalty requires fiduciaries to discharge their duties "*solely* in the

---

[3] Abrogated on other grounds as noted in *Stargel v. Suntrust Banks, Inc.*, 791 F.3d 1309, 1311 (11th Cir. 2015)(per curiam).

interest of the participants and beneficiaries and for the *exclusive* purpose of providing benefits to participants and their beneficiaries and defraying *reasonable* expenses of administering the plan." 29 U.S.C. §1104(a)(1)(A)(emphasis added); 29 U.S.C. §1103(c)(1). Fiduciary decisions "must be made with an eye single to the interest of the participants and beneficiaries." *Deak v. Masters, Mates & Pilots Pension Plan*, 821 F.2d 572, 580 (11th Cir. 1987)(quotation marks and citation omitted). While ERISA allows an employer and its corporate officers to serve as plan fiduciaries, ERISA requires "that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Corporate officers must "avoid placing themselves in a position where their acts as officers or directors of their corporation will prevent their functioning with the complete loyalty to participants demanded of them as Trustees of a pension plan." *Deak*, 821 F.2d at 581(quotation marks and citation omitted).

The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. §1104(a)(1)(B). Whether conduct is prudent depends upon a "totality-of-the-circumstances"

inquiry. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 360 (4th Cir. 2014).

Given the "inevitably fact intensive" nature of these inquiries (*Tussey*, 746 F.3d at

336), "dismissal is often inappropriate" before the record can be developed

(*Brotherston v. Putnam Invs., LLC*, No. 15-13825, 2016 U.S.Dist.LEXIS 50849,

*3 (D.Mass. Apr. 6, 2016)(citing cases)).[4] In addition to these general fiduciary

duties, certain transactions involving a plan are prohibited *per se*, regardless of

whether the plan suffers any damage. 29 U.S.C. §1106; *Harris Trust & Sav. Bank

v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241−42 (2000).

Fiduciary duties are ongoing, meaning fiduciaries must continuously monitor

plan investments and service providers and correct imprudent investments or

service arrangements no matter how long they have been in the plan. *Tibble v.

Edison Int'l*, 135 S.Ct. 1823, 1829 (2015); *Stargel*, 791 F.3d at 1311. Under 29

U.S.C. §1109(a), a breaching fiduciary is

> personally liable to make good to such plan any losses to the plan
> resulting from each such breach, and to restore to such plan any
> profits of such fiduciary which have been made through use of assets
> of the plan by the fiduciary, and shall be subject to such other
> equitable or remedial relief as the court may deem appropriate,

---

[4] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S.Ct. 2459 (2014), does not impose a
heightened pleading standard in ERISA fiduciary breach cases, contrary to
Insperity's suggestion. That case concerned employer stock ownership in a plan,
which receives special treatment under ERISA, and how to resolve the conflict
between ERISA and securities laws in a claim that corporate executives should
have removed the stock from the plan based on inside information. *Id*. at 2471–73.

including removal of such fiduciary.

Any plan participant may bring a civil action in a representative capacity to pursue these remedies on behalf of the plan. 29 U.S.C. §1132(a)(2); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). Section 1132(a)(3) authorizes "appropriate equitable relief" against a non-fiduciary who participates in a prohibited transaction. 29 U.S.C. §1132(a)(3)(B); *Harris*, 530 U.S. at 244–45, 250–53; *Herman v. S.C. Nat'l Bank*, 140 F.3d 1413, 1422 (11th Cir. 1998).

## BACKGROUND

Plaintiffs are participants in the Insperity 401(k) Plan, an individual account, defined contribution retirement plan under ERISA. AC ¶¶6–17; 29 U.S.C. §1002(34).[5] In such plans, participants receive only the value of their individual account upon retirement, which depends on contributions, investment gains and losses, and the fees deducted from the account. AC ¶43; *Tibble*, 135 S.Ct. at 1826. High fees can "significantly reduce the value of an account in a defined-contribution plan." *Tibble*, 135 S.Ct. at 1826.[6] The Plan is one of the largest 401(k) plans in the United States, with over $2 billion and 50,000 participants. AC ¶12.

---

[5] Because such plans qualify for special tax treatment under 26 U.S.C. §401(k), they often are called 401(k) plans.

[6] A 1% difference in fees over 35 years reduces a participant's account balance at retirement by 28%. U.S. Dep't of Labor, *A Look at 401(k) Plan Fees* 1–2 (Aug. 2013), http://www.dol.gov/ebsa/pdf/401kfeesemployee.pdf.

Insperity Inc. is a "professional employer organization" (PEO) that provides "human resources and business solutions" to "small and medium-sized businesses." AC ¶19; Doc. 41-2 at 5.[7] "PEOs operate by hiring the client employer's employees and then leasing them back to the client—so that the client's employees become the employees of the PEO." *United States v. Jennings*, 599 F.3d 1241, 1245 (11th Cir. 2010). Insperity provides employee benefits to client employees through Insperity-sponsored plans such as the Plan. AC ¶31. Insperity bills certain Plan-related fees directly to its clients and deducts other fees directly from employee investments in the Plan. *Id*. ¶82. In marketing the Plan to clients, Insperity admits that it is the "plan sponsor" and "assumes all" "fiduciary obligations." *Id*. ¶33; *see* 29 U.S.C. §1002(16)(B), §1002(21)(A). In annual reports filed with the Department of Labor (Form 5500), Insperity states that the Plan is a "single-employer plan." AC ¶¶10, 80; Doc. 41-7 at 2.

Insperity Holdings Inc. and Insperity Retirement Services L.P. are wholly-owned subsidiaries of Insperity Inc. AC ¶¶21, 26.[8] Insperity Holdings is the "named fiduciary" in the Plan document responsible for the control, management, and administration of the Plan. AC ¶22; Doc. 41-3 at 9 (§§2.4, 2.12); Doc. 41-5 at

---

[7] All "Doc." page number citations refer to the page numbers shown on the ECF header. All ECF documents are hyperlinked.

[8] Insperity Holdings is the sole general partner of Insperity Retirement Services. 2016 Annual Rep., State of Fla., http://tinyurl.com/RS16FL.

15 (§10.2); *see* 29 U.S.C. §1102(a). Insperity Holdings hired Defendant Reliance Trust Company to perform certain investment-related duties, but remained responsible for monitoring Reliance Trust (29 U.S.C. §1105(c)(2)) and remained responsible for the selection, retention, and compensation of the Plan's recordkeeper (AC ¶¶23, 57). Insperity Retirement Services has been the Plan's recordkeeper since October 1, 2003. *Id.* ¶26.

Insperity has consistently stated in the Form 5500 that "the Plan is advised by a committee that consists of certain officers and members of management" of Insperity Holdings (what Plaintiffs call the Insperity Retirement Plan Committee). *Id.* ¶24; Doc. 41-7 at 64; Doc. 43-8 at 64; Doc. 43-9 at 65; Doc. 43-10 at 62. Insperity now claims that there is no "committee," just "individuals" who act on behalf of Insperity Holdings, although Insperity does not identify them. Doc. 41-1 at 17 n.23.

The three Insperity entities are interrelated. All six executive officers of Insperity Inc. hold the *same* positions at Insperity Holdings, which is the sole general partner of Insperity Retirement Services.[9] The CEO and President are

---

[9] *Compare* Doc. 41-2 at 35, *with* Ex. 1 (2016 Annual Rep., State of Fla., http://tinyurl.com/HI16FL); *see also* Doc. 41-2 at 137–39 (Douglas S. Sharp is CFO and Treasurer of Insperity Inc., Insperity Holdings, Insperity Retirement Services and *14 other* subsidiaries); *id.* at 35 (Richard Rawson is President of Insperity Inc. and "most of its subsidiaries."); Doc. 41-6 at 21 (Rawson signed Plan

Insperity Inc. board members, and the CEO is its chairman.[10] Insperity Inc. acted through these officers. AC ¶¶20, 25.

   Plaintiffs allege Defendants breached their fiduciary duties by selecting and retaining Plan service providers and investments that benefited Insperity and Reliance Trust at the expense of participants, resulting in the Plan being charged excessive fees for recordkeeping and administration, and including in the Plan disloyal and imprudent investment options that charged excessive fees and underperformed prudent alternatives that were available to the Plan. The amended complaint alleges the Plan fiduciaries disloyally and imprudently: used Reliance's proprietary "Insperity Horizon" target date funds in the Plan (AC ¶¶61–74, Count I), imposed excessive recordkeeping and administrative fees (*id*. ¶¶75–85, Count II), imposed excessive investment management fees (*id*. ¶¶86–127, 137–44, Count III), and provided a minimal-return money market fund, and then replaced it with an untested and excessively expensive stable value fund (*id*. ¶¶128–136, Count IV). Related to those counts, the amended complaint alleges failure to monitor fiduciaries (Counts V), prohibited transactions (Count VI–VII), and the right to other equitable relief under 29 U.S.C. §1132(a)(3) (Count VIII).

document as President of Insperity Holdings); Doc. 41-10 at 23–24.
   [10] Insperity Inc. Proxy Statement, Schedule 14A at 7, 10 (May 6, 2015), https://www.sec.gov/Archives/edgar/data/1000753/000100075315000036/docume nt_def14ax2015.htm.

Plaintiffs, seeking to represent a class of all Plan participants and beneficiaries, seek to recover the Plan's losses caused by the alleged misconduct (as well as the fiduciaries' profits) and to obtain other appropriate relief. *Id*. ¶¶164–68, pp. 129–30; 29 U.S.C. §1109(a), §1132(a)(2), §1132(a)(3).

## ARGUMENT

### I. Count II plausibly alleges a fiduciary breach based on the Plan's excessive recordkeeping and administrative fees.

Out of the four fiduciary breach counts, Insperity challenges the plausibility only of Count II. That Count amply states a claim.

Recordkeeping is a commodity service for defined contribution plans, with pricing typically based on the number of participants in a plan. AC ¶¶45–47. Prudent fiduciaries put recordkeeping services out to competitive bidding on a regular basis to ensure their plan's administrative expenses are reasonable. *Id*. ¶51; *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 798–800 (7th Cir. 2011). They also monitor the amount of any asset-based revenue sharing payments— particularly as plan assets increase—to ensure that the total compensation is reasonable for the services provided, and obtain rebates to the plan of any excessive amounts. AC ¶¶48–50, 54. "[F]ailing to monitor and control recordkeeping fees and ... paying excessive revenue sharing from Plan assets" is a recognized breach of duty, especially where that benefits the employer. *Tussey*,

746 F.3d at 336; *see also George*, 641 F.3d at 798–800.

Insperity did not put Plan recordkeeping services out for competitive bidding or monitor the amount of recordkeeping fees. Insperity created its recordkeeping subsidiary to boost its own finances, then effectively hired itself to be the Plan's recordkeeper and used Plan assets to seed its nascent business, retaining that role for the last 13 years without competition. AC ¶¶ 37–39, 41–42, 75–76. Insperity failed to negotiate *on behalf of the Plan* the compensation paid to its subsidiary, failed to monitor the amount of asset-based revenue sharing its subsidiary received, particularly as Plan assets *nearly tripled* between 2009 and 2014, and failed to obtain rebates to the Plan of excessive compensation. *Id.* ¶¶78–79, 83. Consequently, the Plan has grossly overpaid relative to reasonable market rates for administrative services. Based on the Plan's features and the nature of the administrative services provided by the recordkeeper of this 50,000 participant plan, a reasonable administrative fee would have been $30 per participant per year. *Id.* ¶80. The Plan's fees were between *$119–$142* per participant from 2009 through 2014—*four to five times* higher than market rates. *Id.* ¶81. Courts have repeatedly found similar allegations sufficient to state a claim. *Tussey*, 746 F.3d at 336; *George*, 641 F.3d at 798–800; *Kruger*, 131 F.Supp.3d at 479.

Insperity only disputes the truth of Plaintiffs' allegations, something that

cannot be resolved under Rule 12(b)(6). *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th

Cir. 2008);[11] *Kruger*, 131 F.Supp.3d at 479 (whether fees were actually excessive

for the plan's level of service was "a question of fact and not one that can be

resolved on the pleadings"). Insperity provides no authority for its assertions that

the administration of its Plan (or any PEO plan) is so significantly different from

other defined contribution plans that the cost of recordkeeping a PEO plan is

significantly greater than for other defined contribution plans.[12] *Cf.* Doc. 41-1 at 8–

9, 14, 22. Plaintiffs contend there is no significant difference. AC ¶¶9–10, 80.

Insperity simply disagrees with Plaintiffs' assessment of the nature of those

services and their market cost, but that cannot be resolved on the pleadings.

*Bryant*, 530 F.3d at 1376; *Kruger*, 131 F.Supp.3d at 479 (issues regarding the

nature of "the services provided" were "the types of facts warranting discovery").

Further, Insperity charged its clients a $500 "Annual Base Recordkeeping"

---

[11] *Bryant* describes the instances in which a court can decide factual issues on a motion to dismiss, none of which apply to this case.

[12] The one article it cites says nothing about PEO plans being more expensive to administer. *See* Doc. 41-1 at 13 n.10. As to costs, it says only that multiple employer plans (MEPs) "can provide significant cost savings." Erin Turley et al., Multiple Employer Plans – Opportunities and Challenges: Qualified Retirement Plans, Benefit Practitioners' Strategy Guide, BPRC (Jan. 18, 2012) at 1, 10; *see also id*. at 6 (MEPs "provide administrative and cost savings efficiencies as well"). While Insperity now claims, without authority, the Plan is a "multiple employer plan" (Doc. 41-1 at 12 n.9), it reported to DOL in the Plan's Form 5500 that the Plan is a "single-employer plan," and did *not* check the "multiple-employer plan" box (AC ¶¶10, 80; Doc. 41-7 at 2; Doc. 43-8 at 2; Doc. 43-9 at 2; Doc. 43-10 at 2).

charge and a $30 per participant "Annual Participant Service Fee" outside of what it was taking in recordkeeping fees from Plan investments. AC ¶81. Insperity does not explain (much less prove) why that additional, client-specific fee did not cover any additional cost from administering this Plan, much less explain how that cost could be *four to five times* greater than market rates for other defined contribution plans ($119–$142 per participant).

Insperity does not dispute that it failed to obtain competitive bids for the Plan's recordkeeping business, but disputes whether a competitive bid would have resulted in the per-participant rate that Plaintiffs contend the Plan could have gotten. Doc. 41-1 at 22. The exact price that could have been obtained through a bidding process is ultimately beside the point (and necessarily hypothetical). The very *process* of competitive bidding allows a fiduciary to determine the available market rates and to assess whether the plan's fee levels are competitive. AC ¶44; *see George*, 641 F.3d at 800 (noting testimony of defendant's consultant that without "a bid from another service provider—it 'could not comment on the competitiveness of [the recordkeeper's] fee amount for the services provided.'"). Insperity's claim that *no one* would have bid for this Plan's recordkeeping at the rates Plaintiffs allege is sheer speculation, because Insperity failed to get competitive bids for 13 years (for the very reason of keeping this business for

itself). AC ¶¶39, 76. There is no question but that there are many companies that provide recordkeeping for plans of similar size as this Plan in terms of assets and number of participants, companies that administer *millions* of participant accounts representing *hundreds of billions* in assets.[13] These recordkeepers have economies of scale and sophisticated technology that would allow them to service the Plan much more efficiently than Insperity and at a much lower cost.[14] A prudent fiduciary acting in the interests of participants instead of its own finances would at least consider such outside service providers. Plaintiffs' allegation that Insperity failed to do so is sufficient to create a plausible inference that its process was "tainted by failure of effort, competence, or loyalty." *Braden*, 588 F.3d at 596.

Insperity's assertion that it received only "reimbursement" of costs but no "fees" or "profits" is based on an unauthenticated document it claims is a "procedure manual," apparently from 2004 (Doc. 41-11).[15] The Court cannot

---

[13] *See, e.g.*, Robert Steyer, "DC Record Keeper Assets Climb to All-Time High," *Pensions & Investments* (Mar. 4, 2013), http://www.pionline.com/article/20130304/PRINT/303049993/dc-record-keeper-assets-climb-to-all-time-high.

[14] This is true even accepting Insperity's exaggerated claims about the Plan's complexity; indeed, the advantages of hiring a sophisticated recordkeeper are likely even more pronounced in the context of a more complex plan.

[15] Insperity's claim that it does not receive any "fees" is contradicted by the Trust Agreement, which specifically provides for the payment of "expenses *and fees*," including for "*the Plan Sponsor*" and "*its ERISA affiliates*[.]" Doc. 41-10 at 9 (§3.4)(emphasis added); *cf*. Doc. 41-1 at 9, 21, 36 n.46.

consider that document under Rule 12(b)(6). *Fuller*, 744 F.3d at 696 (courts may

consider only those documents that plaintiff "refers to … in its complaint," that are

"central to [her] claim," and whose "authenticity … is not challenged"); *Bryant v.*

*Avado Brands, Inc*., 187 F.3d 1271, 1280 (11th Cir. 1999)(court may consider

documents subject to judicial notice under Fed.R.Evid. 201(b)).[16] Plaintiffs

challenge the authenticity of the document, they do not refer to it in the complaint,

and it is not central to their claims, or even apparently relevant to this case.

Insperity does not even suggest it is subject to judicial notice under Rule 201(b).[17]

Insperity's assertion that the purported "procedure manual" is a "Plan

document" lacks any evidentiary or legal basis. *Cf*. Doc. 41-1 at 9, 16. The

"procedure manual" does not even refer to the Plan. A "plan document" is the

"written instrument" under which a plan is "established and maintained." *See* 29

U.S.C. §1102(a); *see also* §1104(a)(1)(D)(fiduciary must follow "the documents

and instruments governing the plan insofar as" consistent with ERISA). Even a

"summary plan description" that must be furnished to participants under §1022(a)

is not a "plan document." *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011). The

---

[16] *See also Kruger*, 131 F.Supp.3d at 480 n.10 (declining to consider contract and
other documents purportedly showing services provider's compensation and duties
in context of motion to dismiss similar ERISA fiduciary breach claim).

[17] Insperity's reliance on *Hecker v. Deere & Co*, 556 F.3d 575, 582–83 (7th Cir.
2009), is misplaced because the documents at issue there were referred to in the
complaint or SEC filings.

"procedure manual" is none of those things. Furthermore, there is no evidence that Insperity or Reliance Trust actually followed this "procedure manual" for the last 12 years.

Even assuming Insperity and Reliance Trust followed the manual in some fashion, that would not prove that only expenses were reimbursed or that those expenses constituted reasonable expenses of administering the Plan. 29 U.S.C. §1104(a)(1)(A); 29 U.S.C. §1103(c)(1). In light of the exorbitant amounts paid to Insperity from the Plan (AC ¶¶81, 84) and Insperity's failure to put these services out for competitive bidding, it is reasonable to infer that Defendants allowed "reimbursement" of inflated and unreasonable amounts to benefit Insperity. Indeed, the purported "Reimbursement Request Form[s]" show that Reliance allowed an *officer of Insperity* to determine whether the expenses were "reasonable" and "necessary." Doc. 41-11 at 25. Thus, Reliance Trust's supposed "review and approv[al]" is just a rubber stamp. *Cf.* Doc. 41-1 at 9, 15, 22, 34. [18]

Moreover, Reliance Trust is not truly an "independent" fiduciary as Insperity asserts. Insperity hired Reliance Trust and could fire it at any time. Doc. 41-10 at 17 (§7.1). Insperity pays Reliance Trust substantial asset-based fees from the Plan.

---

[18] Regardless of the date that Insperity first hired Insperity Retirement Services as recordkeeper, Insperity had an ongoing duty not to continue paying excessive recordkeeping fees. *Tibble*, 135 S.Ct. at 1829. Contrary to Insperity's suggestion, there is no basis for dismissing any "selection" claim. *Cf.* Doc. 41-1 at 19–20.

AC ¶¶59–60. Insperity allows Reliance Trust to put many of its proprietary investment funds in the Plan. *Id*. ¶¶58, 91. Reliance Trust thus faced significant repercussions if it was too restrictive with Insperity's approved "reimbursements," and would have been loath to jeopardize its lucrative arrangement with the Plan by scrutinizing Insperity's fees too closely.

Plaintiffs do not claim that "recordkeeping fees may only be charged on a 'flat-fee per participant' basis (as opposed to a percentage-of-assets basis) and the failure to do so is *per se* unreasonable." *Cf.* Doc. 41-1 at 22–23. Recordkeeping fees should be *negotiated* and *priced* based on the number of participants in the Plan rather than asset size, because the cost of recordkeeping depends on the number of accounts and has nothing to do with the amount of assets. AC ¶¶46–47. How the negotiated fee is allocated to Plan participants is a distinct issue. They may be charged per capita or by account values. But if a fiduciary charges recordkeeping fees as a percentage of assets, the fiduciary must monitor the fees and rein in excessive compensation that would result from an increase in asset levels without a commensurate increase in recordkeeping services. *Tussey*, 746 F.3d at 336 (while asset-based "revenue sharing" was an acceptable practice, fiduciaries breached their duties by "failing to monitor and control" the excessive amount of recordkeeping fees). Otherwise, as plan assets increase—here tripling

from 2009 through 2014—yet recordkeeping services do not, asset-based compensation can become excessive (or even more excessive). AC ¶¶47, 83; *Kruger*, 131 F.Supp.3d at 479 (plaintiffs stated a plausible claim based on "failure to monitor the sudden spike in recordkeeping fees" as assets grew).

Plaintiffs allegations give Insperity "fair notice of what the plaintiff's claim is and the grounds upon which it rests" (*Palm Beach*, 781 F.3d at 1260) and provides "'enough fact to raise a reasonable expectation that discovery will reveal evidence'" of liability (*Chaparro*, 693 F.3d at 1337). They plausibly show that Insperity breached its duty by failing to monitor and control asset-based recordkeeping fees. *Tussey*, 746 F.3d at 336; *George*, 641 F.3d at 798–800.

## II.     The Insperity entities are all proper defendants.

Insperity does not challenge the sufficiency of the allegations to state claims on the other Counts. Instead, it merely contends that Plaintiffs have not sufficiently pleaded that its various entities are fiduciaries as to those Counts. Insperity erroneously contends Plaintiffs must specify exactly how each Insperity company acted as a fiduciary as to each count. That is an impossible standard, because those facts are hidden from Plaintiffs. *Braden*, 588 F.3d at 595–96, 602; *Kruger*, 131 F.Supp.3d at 477.

> [T]he manner in which each defendant, which are in the universe of possible decision makers, operated is for now something of a black box. To expect a

> plaintiff to be able to turn on the light and point to the particular individuals who exercised decision making authority is simply too much to require at this stage of the case.

*Rankin v. Rots*, 278 F.Supp.2d 853, 879 (E.D.Mich. 2003).

In light of ERISA plaintiffs' limited access to such facts and "the flexible and fact-intensive concept of a 'functional fiduciary' under ERISA," most courts, including this one, refuse to dismiss ERISA claims "based on the absence of exacting factual averments respecting the existence of Defendants' fiduciary status or the outer contours of their fiduciary capacities." *Woods v. S. Co.*, 396 F.Supp.2d 1351, 1365 (N.D.Ga. 2005)(collecting cases).[19] The Court in *Woods* was "unable to find any support for the proposition that a meaningful distinction can be drawn between a 'corporation' and the directors through whom it must act." *Id.* at 1373. Insperity does not provide that support. In light of the significant overlap among the officers and board members who act on behalf of the three Insperity entities, these individuals each have a multitude of hats. Determining whether Insperity Inc. board members/Insperity Holdings officers such as CEO Sarvadi and President

---

[19] *See also In re Regions Morgan Keegan ERISA Litig.*, 692 F.Supp.2d 944, 964 (W.D.Tenn. 2010)("Fiduciary status is 'a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss.'"); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2009 U.S.Dist.LEXIS 105987, *10 (S.D.Ill. Nov. 14, 2009)("[O]rdinarily the question of fiduciary status is factual and not appropriate for resolution on the pleadings."); *Tussey v. ABB, Inc.*, No. 06-4305, 2008 U.S.Dist.LEXIS 9806, *21 (W.D.Mo. Feb. 11, 2008)("Determining Fidelity Trust's actual role in administering … the Plan is not possible at this stage.").

Rawson wore only their Insperity Holdings fiduciary hat when making Plan decisions and completely removed their corporate Insperity Inc./Retirement Services hats requires a developed record. At this stage, Plaintiffs' allegations raise a plausible inference that they failed to do so. AC ¶¶20, 25.

ERISA broadly defines "fiduciary" to include those who exercise "functional … control and authority over the plan[.]" *Hunt v. Hawthorne Assocs.*, 119 F.3d 888, 892 n.2 (11th Cir. 1997); 29 U.S.C. §1002(21)(A). That broad definition must be "construed liberally, consistent with ERISA's policies and objectives[.]" *Woods*, 396 F.Supp.2d at 1364 (citation omitted); *Donovan v. Mercer*, 747 F.2d 304, 308 (5th Cir. 1984). Plaintiffs plausibly allege that each Insperity company was a functional fiduciary as to each Count in which it is named.

## A.      Insperity Inc. is a fiduciary.

In order to attract clients, Insperity Inc. admits that it "assumes all" "fiduciary obligations" related to the Plan. AC ¶33. Insperity Inc. hired and retained its subsidiary to be Plan recordkeeper. *Id*. ¶¶2, 75–76. Insperity does not dispute that retaining a plan service provider is a fiduciary act, but claims that the allegation is "wholly inconsistent" with Plaintiffs' allegations that Insperity Holdings had such authority under the terms of the Plan. Doc. 41-1 a 20–21. The designation of a "named fiduciary" does not preclude additional entities from acting as "functional

fiduciaries" under §1002(21)(A). *Hunt*, 119 F.3d at 892 n.2; *Woods*, 396 F.Supp.2d at 1364. And ERISA's co-fiduciary liability provisions contemplate that multiple fiduciaries may jointly "participate" in the same fiduciary conduct. 29 U.S.C. §1105(a). Insperity Inc.'s role in retaining its subsidiary as the Plan's recordkeeper is an exercise of "discretionary authority or discretionary control respecting management" of the Plan within the meaning of §1002(21)(A)(i).

Insperity Inc. also acted as a fiduciary as to the investment-related breaches. Allowing funds with the Insperity brand to be included in the Plan—"*Insperity Horizon Risk-Managed Funds*"— required Insperity's involvement. While approving the use of the "Insperity" name could arguably be a "corporate" decision, it was necessarily intertwined with a decision that the funds should be included in the Plan (albeit not a reasoned one, AC ¶¶62–65), which was a fiduciary decision. It is reasonable to infer from Plaintiffs' allegations that Insperity Inc. approved the funds because of the revenue sharing payments that would flow to it. *Id*. ¶172; *see also id*. ¶¶58, 91. These facts plausibly show that Insperity Inc. exercised "authority or control respecting management or disposition of [Plan] assets," §1002(21)(A).[20]

---

[20] Plaintiffs' allegations of specific conduct that indisputably involves fiduciary functions (selection of plan service providers and investments), distinguishes this case from *Cotton v. Massachusetts Mutual Life Insurance Co.*, 402 F.3d 1267

Plaintiffs do not rely solely on an "agency" or "*respondeat superior*" theory for Insperity Inc.'s liability, although that is certainly a viable theory of liability.[21] Plaintiffs also allege that Insperity Inc. acted through its *own* officers, "including those acting as Plan fiduciary committee members" (AC ¶¶20, 25), and the public record shows that these groups are the same. This plausibly shows that Insperity Inc. exercised *direct* control over the Plan.

## B. Insperity Retirement Services is a fiduciary.

Plaintiffs' allegations that the "Insperity entities" and Reliance Trust engaged in a scheme resulting in the Plan using higher-cost share class funds that paid more in revenue sharing to Insperity Retirement Services (AC ¶¶58, 91), raises a plausible inference that Insperity Retirement Services participated in the process of selecting those funds, thereby exercising control over the amount of its own compensation and the management of the Plan. 29 U.S.C. §1002(21)(A); *cf.* Doc.

---

(11th Cir. 2005), where the plaintiff only alleged that "Mass Mutual falls within the statutory definition," without any facts showing that it acted as a fiduciary. *Id.* at 1277–78.

[21] Most courts accept *respondeat superior* under ERISA. *In re Cardinal Health ERISA Litig.*, 424 F.Supp.2d 1002, 1049 (S.D.Ohio 2006). *Respondeat superior* liability is viable unless the statute evinces an express contrary intent to reject, and ERISA does not. *Kling v. Fid. Mgmt. Trust Co.*, 323 F.Supp.2d 132, 145–47 (D.Mass. 2004); *see also Howell v. Motorola, Inc.*, 633 F.3d 552, 563 (7th Cir. 2011)(reserving decision on issue while noting Supreme Court holding that "[t]he federal common law of agency supplies the governing principles in ERISA cases"). And in *Woods*, the Court ultimately did not dismiss the corporation. 396 F.Supp.2d at 1373.

41-1 at 21, 26–27. At a minimum, Plaintiffs plausibly allege Insperity Retirement

Services' liability under §1105(a) for participating, enabling, or failing to rectify its

co-fiduciaries' breaches as to its recordkeeping fees. AC ¶180.

### C. Insperity Inc. and Insperity Retirement Services are subject to equitable relief under Count VIII even if they are not fiduciaries.

Count VIII seeks "equitable relief" under §1132(a)(3) against Insperity Inc.

and Insperity Retirement Services "to the extent" the unlawful fees are not

recovered from the other fiduciary Defendants based on the §1132(a)(2) claims.

AC ¶¶219, 226. It is not an improper "repackaging" of Counts I–VII, but an

alternative theory of liability, which Rule 8(a)(3) and 8(d)(2) expressly allow. *See*

*Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726–28 (8th Cir. 2014). Although no

relief under §1132(a)(3) can be provided if adequate relief is provided under

§1132(a)(2) (*Varity Corp. v. Howe*, 516 U.S. 489, 512, 515 (1996)), whether

§1132(a)(2) relief is in fact available cannot be determined at the pleading stage

(*Silva*, 762 F.3d at 727). Therefore, plaintiffs may plead a §1132(a)(3) claim as an

alternative theory of recovery. *Id.* at 726–28. If Plaintiffs fully recover under

§1132(a)(2), the Court "need not reach" the §1132(a)(3) claim. *See id*. at 728.

However, that does not merit dismissal of the §1132(a)(3) claim at this stage.

### D. Counts I, III, IV, & V state claims against Insperity Holdings.

Insperity Holdings argues that all investment-related claims (Counts I, III, IV)

should be dismissed against it, because it delegated its investment duties to Reliance Trust. Doc. 41-1 at 28–30. Although a named fiduciary is not *per se* liable for the acts or omissions of its delegee (29 U.S.C. §1105(c)(2)), that fiduciary *is* liable if it disloyally or imprudently makes or continues the delegation or if it knowingly participates in, enables, or fails to remedy the delegee's breach (29 U.S.C. §1105(a), (c)(2)(A)–(B)). Plaintiffs allege that Insperity Holdings both failed to loyally and prudently determine whether to continue the delegation to Reliance Trust and also acted as a co-fiduciary through knowing participation in and failure to remedy the investment-related breaches.[22]

Plaintiffs specifically allege that Insperity Holdings: conspired with Reliance Trust to include its proprietary investments in the Plan in exchange for Reliance Trust selecting higher-cost share classes that would pay more to Insperity entities (AC ¶91); worked with Reliance Trust to select and retain excessive cost investments in the Plan and favor Insperity's corporate plan by using lower-cost funds (*id*. ¶¶102, 107, 117, 119, 126, 140), and failed to prudently monitor

---

[22] There is no inconsistency in Plaintiffs' allegations that Insperity Holdings both played a role with respect to Plan investments and also failed to properly monitor Reliance Trust, because a fiduciary can actively participate in certain transactions while failing to monitor others. *Cf*. Doc. 41-1 at 29 n.37. In any case, Rule 8 expressly allows alternative pleading of inconsistent claims. Fed.R.Civ.P. 8(d)(3).

Reliance Trust's investment decisions (*id*. ¶¶199–203).[23] This plausibly shows that Insperity Holdings exercised "authority or control respecting management or disposition of [Plan] assets" as to Counts I, III, and IV. 29 U.S.C. §1002(21)(A).

Because Counts I–IV state claims, Plaintiffs' derivative monitoring claim, Count V, also cannot be dismissed. *See Kruger*, 131 F.Supp.3d at 480. Even if Plaintiffs had stated no fiduciary breach or prohibited transaction claims against *any* Insperity entity, Count V still could not be dismissed because Plaintiffs have stated claims against Reliance Trust, and Insperity Holdings is liable for failing to monitor Reliance and as its co-fiduciary. And in light of Plaintiffs' numerous allegations that "Insperity Holdings and Reliance Trust" included excessive cost investments in the Plan and otherwise conspired as to the Plan's investments (AC ¶¶91, 102, 107, 117, 119, 126, 140), Insperity's contention that Plaintiffs have alleged "no facts in support of their co-fiduciary liability theory" and "merely recite the statutory language" is baseless. *Cf*. Doc. 41-1 at 30–31.

## III.    Counts VI and VII state prohibited transaction claims.

Insperity's counsel acknowledged in a recent presentation on "Fee Litigation" that prohibited transaction allegations are a "significant hurdle" for a Rule 12(b)(6)

---

[23] That the Plan "prohibits fiduciaries from sharing such responsibility" is irrelevant, because Plaintiffs' allegations show that Insperity Holdings disregarded that provision. To the extent the provision purports to shield Plan fiduciaries from potential co-fiduciary liability under §1105(a), it is void under §1110(a).

motion.[24] The same is true here. Count VI asserts §1106(a) prohibited transactions

between the plan and a "party in interest," which Congress defined to encompass

"those entities that a fiduciary might be inclined to favor at the expense of the plan

beneficiaries," such as employers, other fiduciaries,[25] and service providers.

*Harris*, 530 U.S. at 242.

Insperity, Inc. argues that it cannot be liable because the payments that it

received from the Plan went first to its subsidiary, and there is "no legal basis to

pierce the corporate veil[.]" Doc. 41-1 at 32–33. "Courts have without difficulty

disregarded form for substance where ERISA's effectiveness would otherwise be

undermined." *Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209, 1220 (2d Cir. 1987).[26]

> Neither the separate corporate status of the three corporations nor the general
> principle of limited shareholder liability afford protection where exacting
> obeisance to the corporate form is inconsistent with ERISA's remedial
> purposes. Parties may not use shell-game-like maneuvers to shift fiduciary
> obligations to one legal entity while channeling profits from self-dealing to a

---

[24] H. Douglas Hinson, et al., *Fiduciary Investment Litig.: Latest on Employer Stock,* Dudenhoeffer*, 401(k) Fee Cases Including Claims to Reduce Fees and Excessive Plan Fees*, Am. Conference Inst., 12th Nat'l Forum on ERISA Litig. (June 27, 2016)(presentation excerpt filed herewith as Exhibit 2); *see* Agenda Day One, 1:30, http://contentz.mkt5225.com/lp/17468/113480/671L16_E_0.pdf.

[25] Insperity's suggestion (at 25 n.43) that transactions related to Reliance Trust are not §1106(a) "party in interest" transactions because it is a fiduciary is wrong because §1002(14)(A) defines party in interest to include fiduciaries. Thus, transactions involving fiduciaries are within the scope of both §1106(a) and (b).

[26] *See also Hamilton v. Carell*, 243 F.3d 992, 1003 (6th Cir. 2001); *Reich v. Lancaster*, 55 F.3d 1034, 1046–47 (5th Cir. 1995); *Valley Fin., Inc. v. United States*, 629 F.2d 162, 171 (D.C. Cir. 1982). Insperity cites only non-ERISA cases.

separate legal entity under their control.

*Id*. "Section [1106](b)'s prohibitions would be empty rhetoric if the corporate form might so easily shield those who profit from prohibited transactions." *Id*. at 1221. Allowing Insperity to use a corporate shell game to funnel the proceeds of prohibited transactions through subsidiaries would frustrate the statutory purpose.

Plaintiffs also are not required to preemptively establish that the prohibited transactions did not qualify for any possible exemptions under §1108. *Cf*. Doc. 41-1 at 33–34. "[T]he burden of proof is on a defendant to show that a transaction that is otherwise prohibited under §1106 qualifies for an exemption under §1108." *Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 685 (7th Cir. 2014).[27] The facts regarding this issue are in the fiduciaries' sole possession. *Braden*, 588 F.3d at 601–02.[28]

Even if Plaintiffs were required to anticipate these defenses, Plaintiffs' allegations undermine them. Plaintiffs allege that the Plan paid far in excess of

---

[27] *Braden*, 588 F.3d at 601; *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996); *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 864 (4th Cir. 1994); *Lowen*, 829 F.2d at 1215; *Donovan v. Cunningham*, 716 F.2d 1455, 1467–68 (5th Cir. 1983).

[28] Defendants' district court citations are unpersuasive. *Goldenberg v. Indel, Inc.*, 741 F.Supp.2d 618, 632 (D.N.J. 2010)(finding *Mehling v. N.Y. Life Ins. Co.*, 163 F.Supp.2d 502 (E.D.Pa. 2001) unpersuasive in light of other "well-reasoned precedent" holding "that §1108 provides an affirmative defense," with burden on fiduciary). *Leber v. Citigroup, Inc.*, No. 07-9329, 2010 U.S.Dist.LEXIS 25097, *29 (S.D.N.Y. Mar. 16, 2010), recognizes it is the fiduciary's burden to prove an exemption to a §1106(b)(3) claim. *Fuller v. Suntrust Banks, Inc.*, No. 11-784, 2012 U.S.Dist.LEXIS 56602, *20 (N.D.Ga. Mar. 20, 2012), cites *Goldenberg* for the point that the exemptions "must be affirmatively proven by defendants."

"reasonable compensation" for investment and administrative services, including improper charges such as overhead, which negates the possibility of qualifying for any exemption under §1108(b)(2) or (c)(2). AC ¶¶81, 84, 92.[29]

Count VII asserts §1106(b) prohibited transactions between a plan and a fiduciary. 29 U.S.C. §1106(b). Insperity's argument that this Count should be dismissed as to Insperity Inc. and Insperity Retirement Services because they are not fiduciaries should be rejected for the reasons explained in Part II.

Insperity further contends that Plaintiffs do not identify any transaction "between the Plan and Holdings" or allege that it received any revenue. Doc. 41-1 at 32. The text of the statute does not include such requirements.[30] Insperity Holdings retained its affiliate as recordkeeper and allowed it to receive excessive sums in uncapped asset-based payments from the Plan, and selected investments

_____

[29] *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2012 U.S.Dist.LEXIS 166191, *48–49 (D.Minn. Nov. 20, 2012)(allegations that defendants "engaged in self-interested transactions, profited from the management of Plan assets to the detriment of the Plan," and "entered into agreements under which the Plan paid unreasonable fees and expenses" defeated possible exemptions); *Shirk v. Fifth Third Bancorp*, No. 05-49, 2008 U.S.Dist.LEXIS 108089, *45–46 (S.D.Ohio Sep. 26, 2008)(same); *see also Fuller*, 2012 U.S.Dist.LEXIS 56602, *20.

[30] "A fiduciary with respect to a plan shall not—(1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. §1106(b).

from which those sums would be paid. By doing so, Insperity Holdings at a minimum "deal[t] with the assets of the plan in [its] own interest," and "act[ed] in a[] transaction involving the plan on behalf of" parties (Insperity Inc., Insperity Retirement Services, itself), "whose interests [we]re adverse to the interests of the plan" and its participants. 29 U.S.C. §1106(b)(1), (2).

## IV. The amended complaint is not a "shotgun" pleading.

When faced with a "shotgun" pleading, the defendant should move for a more definite statement under Rule 12(e). *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 n.10 (11th Cir. 2015)(citation omitted). Dismissal with prejudice is an "extreme sanction" only appropriate in limited circumstances not present here. *Id*. Thus, even if Insperity's "shotgun" characterization were accurate (and it is not), that would not be a basis for dismissal.

The amended complaint is not a shotgun pleading because it is not "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996). And it does not fit within any of the four categories of "shotgun" pleadings described in *Weiland*, 792 F.3d at 1321–23. It sets forth claims in separate counts, does not "adopt[] the allegations of all preceding counts," does not include "immaterial facts" unrelated to any claim, and the counts

specify which defendants are responsible for which claims. AC ¶¶170, 175, 182, 191, 198, 205, 211–213, 219. The fact section organizes the claims by subsections,[31] similar to the structure approved in *Weiland*, 792 F.3d at 1325. And Insperity's assertion that it lacks notice of the specific conduct at issue is belied by its ability to move for dismissal of specific claims against particular entities.

## CONCLUSION

The Amended Complaint shows a flawed fiduciary process tainted by failure of effort, competence, or loyalty, and states claims of fiduciary breach and prohibited transactions on which relief can be granted. Insperity's motion should be denied.

July 25, 2016                                          Respectfully submitted,

                                                       /s/ Jerome J. Schlichter
                                                       SCHLICHTER, BOGARD & DENTON, LLP
                                                       Jerome J. Schlichter (*pro hac vice*)
                                                       Michael A. Wolff (*pro hac vice*)
                                                       Troy A. Doles (*pro hac vice*)
                                                       Kurt C. Struckhoff (*pro hac vice*)
                                                       Heather Lea (*pro hac vice*)
                                                       100 South Fourth Street, Suite 1200
                                                       St. Louis, MO 63102
                                                       Phone: (314) 621-6115
                                                       Fax: (314) 621-5934

                                                       *Lead Counsel for Plaintiffs*

---

[31] AC ¶¶28–60 (background facts), ¶¶61–74 (target-date funds); ¶¶75–85 (excessive recordkeeping fees), ¶¶86–127 (excessive investment management fees), ¶¶128–144 (money market fund).

/s/ Bradley S. Wolff
Bradley S. Wolff
Georgia Bar No. 773388
SWIFT, CURRIE, MCGHEE, & HIERS, LLP
1355 Peachtree St., N.E., Ste. 300
Atlanta, GA 30309-3231
Phone: (404) 874-8800
Fax: (404) 888-6199
brad.wolff@swiftcurrie.com

*Local Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1C. The foregoing was prepared on computer using Times New Roman font (14 point).

/s/ Jerome J. Schlichter
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to the attorneys of record.

/s/ Jerome J. Schlichter
Attorney for Plaintiffs