## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RONDA A. PLEDGER, SANDRA
BRITT, JENNIFER L. PRIMM,
ALEX BROOKS, JR., and EDWARD
COMER BUCK, individually and as
representatives of a class of similarly
situated persons of the Insperity
401(k) Plan,

      **Plaintiffs,**

v.

RELIANCE TRUST COMPANY,
INSPERITY, INC., INSPERITY
HOLDINGS, INC., INSPERITY
RETIREMENT SERVICES, L.P.,
INSPERITY RETIREMENT PLAN
COMMITTEE, and JOHN DOES 1-
20,

      **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:15-CV-4444-MHC**

## ORDER

This case comes before the Court on Defendants Insperity, Inc., Insperity

Retirement Services, L.P., Insperity Holdings, Inc., and Insperity Retirement Plan

Committee's (collectively, the "Insperity Defendants") Motion to Dismiss the

Complaint [Doc. 29], Defendant Reliance Trust Company's ("Reliance") Motion

to Dismiss the Complaint [Doc. 32], the Insperity Defendants' Motion to Dismiss

Plaintiffs' Amended Complaint [Doc. 41], Reliance's Motion to Dismiss Plaintiffs'

Amended Complaint [Doc. 43], Plaintiffs Sandra Britt, Alex Brooks, Jr., Edward

Comer Buck, Ronda A. Pledger, and Jennifer L. Primm's (collectively,

"Plaintiffs") Motion for Leave to File Second Notice of Supplemental Authority in

Opposition to Motions to Dismiss [Doc. 63], and Plaintiffs' Consent Motion for

Leave to File Third Notice of Supplemental Authority in Opposition to Motions to

Dismiss [Doc. 64].[1]

## I.  BACKGROUND

Plaintiffs are participants in the Insperity 401(k) Plan (the "Plan"), a defined

contribution, individual account, employee pension retirement plan under the

Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461

("ERISA").  Am. Compl. [Doc. 37] ¶¶ 6, 13-17; 29 U.S.C. § 1002(34).  The Plan is

---

[1] Plaintiffs' Motion for Leave to File Second Notice of Supplemental Authority in
Opposition to Motions to Dismiss [Doc. 63], and Plaintiffs' Consent Motion for
Leave to File Third Notice of Supplemental Authority in Opposition to Motions to
Dismiss [Doc. 64] are **GRANTED**.

one of the largest 401(k) plans in the United States, with over $2 billion in assets and 50,000 participants.  Am. Compl. ¶ 12.

Defendant Insperity, Inc. ("Insperity") is a "professional employer organization" (PEO) that offers the Plan to employees of small- and medium-sized businesses that contract with Insperity to provide human resources services.  Id. ¶¶ 8-9, 19.  In marketing the Plan, Insperity admits that it is the "plan sponsor" and "assumes all of the responsibilities inherent in plan sponsorship, including fiduciary obligations."  Id. ¶ 33.  In annual reports filed with the Department of Labor, Insperity states that the Plan is a "single-employer plan."  Id. ¶¶ 10, 80. Insperity administers the Plan through its subsidiaries.  Id. ¶ 20.

Defendants Insperity Holdings, Inc. ("Holdings") and Insperity Retirement Services, L.P. ("Retirement Services") are wholly-owned subsidiaries of Insperity. Id. ¶¶ 21, 26.  Holdings is named in the Plan as the fiduciary responsible for the Plan's control, management, and administration.  Id. ¶ 22.  Holdings, pursuant to its authority to delegate any of its responsibilities under the Plan, "delegated its fiduciary responsibility to hold, manage, and control the assets of the Plan" to Reliance, including "the selection, retention, and monitoring of [the] Plan['s] investment options," but retained the responsibility for the selection, retention, and compensation of the Plan's administrative service providers.  Id. ¶¶ 23, 57.

3

Retirement Services has served as the Plan's record keeper since October 1, 2003.
Id. ¶ 26.

Reliance functions as the Plan's discretionary trustee "to hold, manage and
control the assets of the Plan" under a Trust Agreement with Holdings, and is
responsible for the selection, retention, and monitoring of the Plan's investment
options. Id. ¶¶ 18, 23, 57-58. Reliance also is responsible for selecting
investments that compensate Retirement Services for providing record keeping
services for the Plan. Id. ¶¶ 58, 77.[2]

Plaintiffs contend that Defendants breached their fiduciary duties
and committed prohibited transactions under ERISA in a number of ways: (1) by
selecting untested proprietary funds as investment options for the Plan and
retaining those funds despite their poor performance, which benefited Defendants
at the expense of participants (Am. Compl. ¶¶ 61-74; 170-74) (Count I); (2) by
selecting Retirement Services as the Plan's record keeper, paying it excessive
administrative expenses, and failing to monitor and control the amount of those
administrative expenses (id. ¶¶ 75-85; 176-80) (Count II); (3) by providing to the
Plan investment options that contained unreasonable management fees when

_____

[2] The remaining Defendant, classified by Plaintiff as "the Insperity Retirement Plan
Committee," consists of "certain officers and members of management" of
Holdings whose identities are unknown to Plaintiffs. Id. ¶ 24.

cheaper versions of the same investments were available to the Plan, as were other high-quality, low-cost institutional alternatives (id. ¶¶ 86-127; 182-89) (Count III); (4) by providing as a Plan investment an imprudent money market fund that was not in the sole interest of participants and did not provide meaningful retirement benefits without considering a stable value fund option, and then providing an imprudent proprietary stable value fund (id. ¶¶ 128-36; 191-96) (Count IV); (5) by failing to properly monitor the Plan's fiduciaries (id. ¶¶ 137-44, 198-203) (Count V); (6) by engaging in prohibited transactions with a party in interest by putting proprietary investments in the Plan, causing the Plan to pay unreasonable compensation to Retirement Services, and providing the Plan unduly expensive investment options (id. ¶¶ 205-09) (Count VI); and (7) by engaging in prohibited fiduciary self-dealing through the use of proprietary investment options in the Plan and the use of Retirement Services as the Plan's record keeper (id. ¶¶ 211-17) (Count VII).  Plaintiffs also seek disgorgement of any ill-gotten gains or profits from the various alleged breaches. Id. ¶¶ 218-26 (Count VIII).

Following Motions to Dismiss the original complaint filed by the Insperity Defendants [Doc. 29] and Reliance [Doc. 32], Plaintiffs filed their Amended

Complaint.[3] The parties then filed the pending Motions to Dismiss the Amended

Complaint. [Docs. 41, 43.]

## II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a

"short and plain statement of the claim showing that the pleader is entitled to

relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed

for failure to state a claim upon which relief can be granted if it does not plead

"enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 547 (2007).   The Supreme Court has explained this

standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged.   The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).   Thus, a

claim will survive a motion to dismiss only if the factual allegations in the pleading

---

[3] "An amended pleading supersedes the former pleading; the original pleading is
abandoned by the amendment, and is no longer a part of the pleader's averments
against his adversary." Dresdner Bank, A.G. v. M/V Olympia Voyager, 463 F.3d
1210, 1215 (11th Cir. 2006) (internal punctuation and citation omitted).   Because
the Amended Complaint is now the governing pleading, the Insperity Defendants'
first Motion to Dismiss [Doc. 29] and Reliance's first Motion to Dismiss [Doc. 32]
are **DENIED AS MOOT**.

are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all the well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, they must be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). But the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.   DISCUSSION

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90 (1983). The statute accomplishes this purpose by imposing fiduciary duties of prudence and loyalty on plan fiduciaries. The duties charged to an ERISA fiduciary are the "highest known to law." ITPE Pension

7

Fund v. Hall, 334 F.3d 1011, 1013 (11th Cir. 2003) (citation omitted).  The duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  The duty of loyalty requires fiduciaries to act "solely in the interest" of plan participants and beneficiaries and "for the exclusive purpose of providing benefits to participants" and "defraying reasonable expenses of administering the plan."  Id. § 1104(a)(1)(A).

As defined by ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  ERISA fiduciaries may wear multiple hats and "may have financial interests adverse to beneficiaries."  Pegram v. Herdich, 530 U.S. 211, 225 (2000).

> In every case charging breach of ERISA fiduciary duty . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a

8

fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

Id. at 226.

Proof of an entity's fiduciary status "may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document." Hamilton v. Allen–Bradley Co., Inc., 244 F.3d 819, 824 (11th Cir. 2001). The fiduciary function is not an "all-or-nothing concept," and a defendant is only a fiduciary to the extent that he exercises discretionary authority "with respect to the particular activity at issue." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005) (citation omitted). For example, "a person is not a fiduciary unless he has discretion or exercises authority with respect to plan assets." Herman v. Nationsbank Trust Co. (Ga.), 126 F.3d 1254, 1365 (11th Cir. 1997).

ERISA authorizes a plan participant to bring a civil suit against plan fiduciaries for breaches of the fiduciaries' duties of loyalty and prudence. See 29 U.S.C. § 1132(a)(2). However, the plan participant cannot seek to recover personal damages for misconduct, but must instead seek recovery that "inures to the benefit of the plan as a whole." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985).

9

Defendants have moved to dismiss all counts of Plaintiffs' Amended Complaint. The Court will consider the motions with respect to each count *seriatim*.

### A. Count I (Breach of Duties of Loyalty and Prudence—Selection and Retention of Untested, Excessive-Cost, and Poorly-Performing Proprietary Target Date Funds)

Plaintiffs contend that Reliance established a new series of target date funds, called the Insperity Horizon Risk-Managed Target Date Funds ("the Insperity TDFs"), and added these funds to the Plan without considering alternatives, even though the Insperity TDFs were newly-created, had no performance history, and their investment manager had little experience managing such a fund. Am. Compl. ¶¶ 62-65, 172. Plaintiffs allege that, prior to offering the Insperity TDFs, the Plan offered established target date funds managed by J.P. Morgan, T. Rowe Price, and Vanguard, and that the Insperity TDFs substantially underperformed these previously offered funds with established track records. Id. ¶¶ 66-74. Although Reliance is responsible for the selection and management of the investment options, and established and added the Insperity TDFs to the Plan, Plaintiffs contend that every Defendant breached their fiduciary duties with respect to the selection and management of the funds, "knowingly participated in the breach of

the other Defendants, and failed to make any effort to remedy the breach. Id.

¶¶ 172-74.

> *1.   Whether the Insperity Defendants Were Fiduciaries With Respect to the Selection, Retention, and Monitoring of Investment Options*

The Insperity Defendants contend that Count I should be dismissed against

Insperity and Retirement Services because of Plaintiffs' failure to plead specific

facts that either Insperity or Retirement Services is a fiduciary under the Plan.

Mem. in Supp. of Insperity Defs.' Mot. to Dismiss [Doc. 41-1] ("Insperity Br.") at

18-22.[4]  The Insperity Defendants do not dispute that Holdings is the sponsor and a

named fiduciary of the Plan, but contend that Holdings, in compliance with 29

U.S.C. § 1105(c), "delegated its fiduciary responsibility to hold, manage and

control the assets of the Plan to Reliance, which includes the selection, retention

---

[4] The Insperity Defendants also seek dismissal of the entire Amended Complaint as a shotgun complaint.  The Court finds that the Amended Complaint is not a shotgun pleading because it is not "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996). And it does not fit within any of the four categories of "shotgun" pleadings described in Weiland v. Palm Beach Cty. Sheriff's Off., 792 F.3d 1313, 1321-23 (11th Cir. 2015).  The Amended Complaint sets forth claims in separate counts, does not "adopt[] the allegations of all preceding counts," does not include "immaterial facts" unrelated to any claim, and the counts specify which defendants are responsible for which claims. Am. Compl. ¶¶ 170, 175, 182, 191, 198, 205, 211-13, 219.

11

and monitoring of the Plan investment options." Id. at 21 (citing Am. Compl.

¶¶ 23, 199). The Insperity Defendants also assert that Plaintiffs fail to plead any

facts that allege Holdings retained any responsibility for the selection or retention

of investment options in the Plan. Id. at 21-22.

In response, Plaintiffs assert that Count I states a claim against Insperity for

breach of a fiduciary duty relating to the selection, retention, and monitoring of

investment options because (1) Insperity acted as a "functional fiduciary" under the

Plan, (2) Insperity allowed the creation and retention of the Insperity TDFs by use

of the Insperity name, which was "intertwined" with the decision that those funds

should be included in the Plan, and (3) "[i]t is reasonable to infer that [Insperity]

approved the funds because of revenue sharing payments that would flow to it."

Pls.' Mem. in Opp'n to Insperity Defs.' Mot. to Dismiss [Doc. 51] ("Pls.' Resp. to

Insperity Mot.") at 20-22. Plaintiffs contend that Retirement Services is a

fiduciary because the selection of the Insperity TDFs resulted in it receiving higher

fees, which "raises a plausible inference that [Retirement Services] participated in

the process of selecting those funds." Id. at 22. They further allege that

Retirement Services is a wholly-owned subsidiary of Insperity, that all Insperity-

related entities have acted as Insperity's agents, and that Insperity "administers the

Plan through its subsidiaries." Am. Compl. ¶¶ 20, 26-27. Plaintiffs assert that

12

although Holdings delegated its investment duties to Reliance, Holdings conspired with Reliance to include its proprietary investments in the Plan and to favor Insperity's corporate plan, while failing to monitor Reliance's investments. Pls.' Resp. to Insperity Mot. at 24-25. The Amended Complaint alleges that Holdings remains liable for Reliance's acts because it "knowingly participated in or failed to remedy" Reliance's breach of fiduciary duties, "selected and retained high-cost investments that generated excess revenue" to benefit both Holdings and Reliance, and failed to offer lower-cost investments that were provided to Insperity's own corporate employees. Am. Compl. ¶¶ 23, 119, 126, 140. Plaintiffs also dispute that at this stage of the litigation they are required to state exactly how each entity acted as a fiduciary with respect to each count of its complaint. Id. at 18.

In Woods v. S. Co., 396 F. Supp. 2d 1351 (N.D. Ga. 2005), a former employee of the Southern Company brought a putative class action against the sponsor of an employee pension retirement plan, as well as the manager of the plan's assets and others who purportedly exercised fiduciary supervision of other plan fiduciaries. Id. at 1355-56. The defendants moved to dismiss the action, in part, because the plaintiff's "allegations respecting their status as fiduciaries, and his assertions that certain acts were undertaken in their fiduciary capacities, are impermissibly vague." Id. at 1365. The court declined to dismiss the complaint.

13

> There may indeed be instances in which as ERISA plaintiff's
> allegations respecting a particular defendant's fiduciary status are so
> 'conclusory' that a court need not afford them credence when
> determining whether the plaintiff has stated a claim for relief.
> Nevertheless, in light of the flexible and fact-intensive concept of a
> 'functional fiduciary' under ERISA . . . and the infant stage of this
> litigation, the Court is reluctant to dispose of Plaintiff's ERISA claims
> based on the absence of exacting factual averments respecting the
> existence of Defendants' fiduciary status or the outer contours of their
> fiduciary capabilities.

Id. (collecting cases). Other courts subsequent to the Twombly/Iqbal standard of review also have been hesitant to resolve breach of fiduciary claims under ERISA due to a purported lack of fiduciary status at the motion to dismiss stage, particularly where, as here, the plaintiffs allege the various defendants are interrelated. See, e.g., Gedek v. Perez, 66 F. Supp. 3d 368, 383 (W.D.N.Y. 2014) ("Whether a trustee has fiduciary status, or has acted as a fiduciary, is for the most part a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss.") (quotation marks and citation omitted); Jump v. Speedway LLC, 23 F. Supp. 3d 1024, 1031 (D. Minn. 2014) (finding that "it would be premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings, because a determination of fiduciary status based on function is a mixed question of law and fact.") (quotations marks and citations omitted); Groussman v. Motorola, Inc., No. 10 C 911, 2011 WL 147710, at *4 (N.D. Ill. Jan. 18, 2011) (finding that it was premature on a motion to dismiss to

14

determine whether a defendant acted as a functional fiduciary; whether such a duty was possessed by a defendant and whether they complied with that duty are matters more appropriately determined on summary judgment); <u>Feamster v. Mountain State Blue Cross & Blue Shield, Inc.</u>, No. 6:10-cv-241, 2010 WL 2854302, at *3-4 (S.D.W. Va. July 19, 2010) (concluding that whether a person is a fiduciary with respect to a plan regulated under ERISA involves not only reference to the plan documents but also an examination of whether others have performed specific discretionary functions relating to the management, assets or administration of the plan) (citations omitted).

ERISA "allows for a fiduciary to delegate a fiduciary duty." <u>Willett v. Blue Cross & Blue Shield of Ala.</u>, 953 F.2d 1335, 1340 (11th Cir. 1992) (citing 29 U.S.C. § 1105(c)(1)).[5] However, a fiduciary who delegates a fiduciary duty may still be liable for the breach of that duty if "the named fiduciary would otherwise be liable in accordance with subsection (a) of this section." 29 U.S.C. § 1105(c)(2)(B); <u>Willett</u>, 953 F.2d at 1340. Section 1105(a) provides for the circumstances under which a fiduciary would be liable for a breach of fiduciary

---

[5] 29 U.S.C. § 1105(c)(1) provides that, "[t]he instrument under which a plan is maintained may expressly provide for procedures (A) for allocating fiduciary responsibilities . . . among named fiduciaries, and (B) for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities . . . under the plan."

duty of another fiduciary, which include participating in an act or omission of another fiduciary or having knowledge of another fiduciary's breach.  29 U.S.C. § 1105(a)(1), (3).  "Under ERISA, a fiduciary must always be prepared to reassume a delegated fiduciary duty when it becomes apparent to the fiduciary that the party responsible for performing the duty has breached its obligation."  Willett, 953 F.2d at 1341.

At this stage of the litigation, the Court finds that Plaintiffs have sufficiently alleged that Holdings knew, facilitated, or failed to monitor Reliance's purported fiduciary breach after delegating authority over the management and control of the investment of assets to Reliance.  The Court also cannot definitively conclude at this stage that Insperity and Retirement Services are not fiduciaries.  Plaintiffs have alleged that Insperity is a fiduciary because it

> had and exercised authority or control over certain of Insperity Holdings, Inc.'s actions with respect to the Plan, and thereby exercised discretionary authority or discretionary control respecting the management of the Plan or management or disposition of its assets, and had discretionary authority or discretionary responsibility in the administration of the Plan.

Am. Compl. ¶ 25.  Plaintiffs contend that all six executive officers of Insperity hold the same positions at Holdings, which is the sole general partner of Retirement Services, that the CEO and President are Insperity board members, and that the CEO is its chairman.  Pls.' Resp. to Insperity Mot. at 8-9.  The court in

16

Woods was "unable to find any support for the proposition that a meaningful

distinction can be drawn between a 'corporation' and the directors through whom

it must act." Woods, 396 F. Supp. 2d at 1373. This Court finds that it is

inappropriate to determine the fiduciary status of allegedly-interrelated

corporations at the motion to dismiss stage. "Although the authorities and

principles cited by Defendants may constrain Plaintiff[s'] ability to prove [their]

case, they do not justify dismissing it." Id. at 1371.

Therefore, the Insperity Defendants' Motion to Dismiss Count I is

**DENIED**.

> 2.    *Whether Reliance Acted Imprudently by Including the Insperity TDFs as an Investment Option*

Reliance does not challenge fiduciary status; rather, it asserts that the fact

that the funds were newly-formed does not render them imprudent, particularly

because the Department of Labor has encouraged fiduciaries to consider "custom"

target date structures out of other plan investment options, despite their nature of

having no history of performance. Br. in Supp. of Reliance's Mot. to Dismiss

[Doc. 43-1] ("Reliance Br.") at 16. Although the funds have underperformed,

Reliance asserts, hindsight may not be used to judge fiduciary decision-making.

Id. at 17-18. Reliance also contends that layered fees are not inherently excessive

or unnecessary; rather, because the Insperity TDFs invested solely in funds

unaffiliated with Reliance, a separate fee was necessary to compensate Reliance for its services. Reliance's Reply in Supp. of Mot. to Dismiss [Doc. 56] ("Reliance Reply") at 9.

In response, Plaintiffs contend that the replacement of funds having an established track record with proprietary funds two days after their creation from which Reliance would earn substantial profits states a claim for breach of fiduciary duty. Pls.' Mem. in Opp'n to Reliance's Mot. to Dismiss Am. Compl. [Doc. 52] ("Pls.' Resp. to Reliance Br.") at 10-11. Plaintiffs allege that Reliance selected its target date funds with no performance history instead of more prudent alternatives to benefit itself and pay revenue sharing to Insperity. Am. Compl. ¶¶ 65, 72-74. Plaintiff state that they do not allege that Reliance breached its fiduciary duties because the funds underperformed, but that the underperformance is the result of its breach. Pls.' Resp. to Reliance Br. at 14.

> [A] claim for a breach of fiduciary duty under ERISA may survive a motion to dismiss—even absent any well-pleaded factual allegations relating directly to the methods employed by the ERISA fiduciary—if the complaint alleges facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident. Under this objective standard, whether an ERISA's fiduciary's investment decision is improvident depends on what a prudent man in like circumstances would do. Critically, however, plaintiffs cannot rely, after the fact, on the magnitude of the decrease in the relevant investment's price. Nor is it necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions.

Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Medical Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 718 (2d Cir. 2013) (internal quotation marks, punctuation, and citations omitted).  It has been held that an allegation that a fiduciary chose investment options with poor performance histories as opposed to other better performing alternatives states a claim for fiduciary breach when there is also an allegation that the choice benefitted one or more corporate or fiduciary interests over those of the plan.  See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 596 (8th Cir. 2009) (reversing the grant of a motion to dismiss a claim for breach of fiduciary duty where the complaint alleged that inferior investment options were selected to benefit the trustee at the expense of the participants).

Plaintiffs contend that a "non-conflicted fiduciary" making objective evaluations would not have selected funds with no performance history and unnecessary fees, and that their allegations raise an inference that Reliance's process in selecting the investments was "tainted by failure of effort, competence, or loyalty."  Pls.' Resp. to Reliance Mot. at 11 (quoting Braden, 588 F.3d at 596).  The allegations in this case are similar to those in Krueger v. Ameriprise Fin., Inc., No. 11-02781, 2012 WL 5873825 (D. Minn. Nov. 20, 2012), where the court

denied a motion to dismiss, finding that the plaintiffs stated a claim for breach of a

fiduciary duty:

> Plaintiffs have plausibly pled that Defendants did not discharge their
> duties solely in the interest of the participants and beneficiaries of the
> Plans. Plaintiffs allege that Defendants chose investment options with
> poor or non-existent performance histories relative to other investment
> options that were available to the Plan. Plaintiffs have also plausibly
> claimed that Defendants continued to choose novel or poorly
> performing affiliated fund investment options for the Plan instead of
> more established and better performing alternatives. Plaintiffs have
> pointed to prudent alternatives to Ameriprise affiliated funds that
> Defendants could have chosen as investment options for the Plan. It
> is also plausible that Defendants may have selected higher-cost share
> classes when lower-cost share classes were available because they
> received benefits for doing so.

Krueger, 2012 WL 5873825, at *11; see also McDonald v. Jones, No. 4:16 CV

1346 RWS, 2017 WL 372101, at *2 (E.D. Mo. Jan. 26, 2017) (denying the

defendant's motion to dismiss based upon the defense of offering an array of

investment options when the plaintiffs contended the defendants "affiliated

themselves with funds which benefited Defendants at the expense of the Plan

participants").

At this stage, accepting the allegations in the Amended Complaint as true,

the Court similarly finds it would be inappropriate to grant Reliance's motion to

dismiss. Plaintiffs allege that in 2012, Reliance removed the Plan's J.P. Morgan-

managed target date funds and replaced them with the Insperity TDFs, for which

Reliance is the investment manager and which had been created two days before

Reliance included them in the Plan. Am. Compl. ¶¶ 61-74, 169-74. Reliance then

purportedly transferred $466 million of the Plan's assets into these funds, using the

Plan's assets as seed money. Id. ¶¶ 62, 65. Like other target date funds, Reliance's

assets invested in other funds that had their own fees and expenses that were

deducted from fund assets. Id. ¶ 68. Unlike other target date funds, including

those offered by established competitors such as J.P. Morgan, Vanguard, and T.

Rowe Price, Reliance allegedly charged additional management and administrative

fees in addition to the fees assessed by the underlying funds. Id. ¶¶ 68-69.

According to the Amended Complaint, Reliance's funds drastically

underperformed alternatives from J.P. Morgan, Vanguard, and T. Rowe Price,

causing the Plan losses of over $56 million compared to prudent alternatives. Id.

¶¶ 72-74 (including comparative charts). Plaintiffs allege Reliance's choice was

made to benefit itself and because its funds paid revenue sharing to Insperity. Id.

¶ 65. That distinguishes this case from those that merely allege underperformance

of selected funds without a concomitant allegation of self-dealing. See, e.g.,

Pension Ben Guar., 712 F.3d at 723 (granting motion to dismiss where the

plaintiff's bare allegations of questionable investments did not give rise to a

plausible inference that the fiduciary acted imprudently; "price decreases do not,

21

without further allegations, plausibly show that Morgan Stanley's unspecified subprime investments were imprudent . . . .").

The Court finds Plaintiffs' allegations sufficient to state a claim for breach of fiduciary duty against Reliance. Reliance's arguments are more appropriately addressed on summary judgment, after the benefit of discovery. Therefore, Reliance's Motion to Dismiss Count I is **DENIED**.

B.   **Count II (Breach of Duties of Loyalty and Prudence— Unreasonable Administrative and Record Keeping Fees)**

Plaintiffs allege that Insperity and Holdings selected Retirement Services as the Plan's record keeper without conducting any competitive bidding process. Am. Compl. ¶¶ 76, 178. They also contend that all Defendants breached their fiduciary duties as follows: (1) Reliance, which is responsible for monitoring the compensation received by Retirement Services, failed to control the amount of asset-based revenue sharing and record keeping costs as the Plan's assets grew, id. ¶¶ 77-78, 83; (2) Retirement Services received compensation that was unreasonable because it drastically exceeded the direct expenses incurred in the administration of the Plan, id. ¶ 84; (3) Holdings failed to adequately monitor Reliance's monitoring of Retirement Services, id. ¶ 77; and (4) Insperity billed participating employers for additional amounts for service and record keeping charges, which were paid to Retirement Services on top of the already allegedly

22

excessive fees assessed, id. ¶ 82.  Plaintiffs claim that each Defendant "knew of the breach by the other Defendants" and failed to remedy them.  Id. ¶ 180.

> *1.     Whether Claims Based Upon the Initial Selection of Retirement Services Are Time-Barred*

As an initial matter, the Insperity Defendants contend that Plaintiffs' claim based on the initial selection of the record keeper is time-barred.  Under ERISA, a plaintiff must file suit within the shorter of either: (1) six years after the "date of the last action which constituted a part of the breach or violation," or (2) three years from the date that the plaintiff had "actual knowledge" of the breach.  29 U.S.C. § 1113.  Here, Retirement Services was selected as record keeper in October 2003.  Am. Compl. ¶ 39.

To the extent Plaintiffs attempt to assert a claim based upon the initial selection of Retirement Services as record keeper (see Am. Compl. ¶¶ 76, 178), such claim is time-barred.  Consequently, the Court will not consider Plaintiffs' contention that Insperity and Holdings should have selected the record keeper through a competitive bidding process.  See Pl.'s Resp. to Insperity Mot. at 11.  The Insperity Defendants' motion to dismiss that portion of the Amended

Complaint is **GRANTED**.[6]  However, because the majority of Plaintiffs' assertions

against Retirement Services concern its actions while operating as the record

keeper, those allegations are not time-barred.  See Tribble v. Edison Int'l, 135 S.

Ct. 1823, 1829 (2015) (holding that as long as alleged breach of a continuing duty

occurred within six years of the filing of the lawsuit, the claim is timely).

> 2.    *Whether All Insperity Defendants and Reliance Are Proper*
> *Defendants in Count II.*

The Insperity Defendants contend that Plaintiffs cannot assert a claim

against Insperity and Retirement Services for retaining and compensating

Retirement Services because Holdings had the fiduciary responsibility for

selecting, retaining, and compensating administrative service providers.  Insperity

Br. at 13; see also Am. Compl. ¶¶ 23, 75.  They assert that Plaintiffs fail to allege

that Insperity or Retirement Services played any role in retaining or compensating

Retirement Services as the record keeper.  Insperity Br. at 14; see also Am. Compl.

¶¶ 75-85, 175-80.

---

[6] Although Reliance was not involved in the selection of Retirement Services as
the Plan's record keeper, to the extent that Plaintiffs seek to join Reliance in their
claim of improper selection, Am. Compl. ¶ 178, that claim is also time-barred.

24

Reliance contends that Count II fails against it because it had no authority to select[7] or remove Retirement Services as the Plan's record keeper. Reliance Br. at 7-9. Because Holdings had fiduciary responsibility for selecting and removing Retirement Services before Reliance became trustee, Reliance contends it only was responsible for reviewing Retirement Services' expenses, but had no power to remove it as record keeper. Reliance Br. at 9.

Plaintiffs respond that they need not specify how each Insperity entity acted as a fiduciary as to each count, because these facts are hidden from them. Pl.'s Resp. to Insperity Mot. at 18. Plaintiffs contend that the overlap among the officers and board members acting on behalf of the three Insperity entities, and the multiple hats worn by each, raise a plausible inference that they acted as fiduciaries with respect to the retention and compensation of the record keeper. Pls.' Resp. to Insperity Mot. at 19-20.

Plaintiffs also assert that Retirement Services, by receiving more revenue sharing through higher-cost share class funds, plausibly participated in selecting the funds, exercising control over its compensation and Plan management. Pls.' Resp. to Insperity Mot. at 22; Am. Compl. ¶¶ 58, 91. Plaintiffs contend that, at a

---

[7] As stated above, any claims raised by Plaintiffs as to the selection of Retirement Services are time-barred.

minimum, they plausibly allege Retirement Services is liable under § 1105(a) for participating, enabling, or failing to rectify the co-fiduciaries' breaches regarding record keeping fees. Pls.' Resp. to Insperity Mot. at 23; Am. Compl. ¶ 180.

Plaintiffs contend that Reliance was responsible for monitoring Retirement Services' compensation and failed to take action when it became unreasonable. Pls.' Resp. to Reliance Mot. at 7-8. Plaintiffs also assert that, because Reliance provided investment options that were more expensive, this operated to increase the fees paid to Retirement Services. Id. at 8. According to the Amended Complaint, Reliance and Holdings were jointly responsible for monitoring the compensation received by Retirement Services. Am. Compl. ¶¶ 77-79. Thus, Plaintiffs assert, Reliance failed to determine a reasonable record keeping fee and to ensure Retirement Services received only reasonable compensation, instead providing excessively expensive Plan investment options that paid more fees to Retirement Services, causing over $30 million in Plan losses. Id.

The Court finds Plaintiffs have sufficiently alleged that the Insperity Defendants acted as fiduciaries concerning administrative and record keeping fees to withstand a motion to dismiss. As noted above, courts have been hesitant to resolve breach of fiduciary claims under ERISA due to a purported lack of fiduciary status at the motion to dismiss stage when there are allegations that the

various defendants are interrelated. The Court further finds that Plaintiffs have alleged that Reliance exercised "functional . . . control and authority over the plan." Hunt v. Hawthorne Assocs., 119 F.3d 888, 892 n.2 (11th Cir. 1997) (citation omitted). It may very well be that Plaintiffs are unable to develop any facts which would support this claim against one or more of the Insperity Defendants or Reliance, but that decision is more appropriately made upon the filing of summary judgment motions after discovery.

*3. Whether Plaintiffs State a Plausible Claim That Retirement Services Received Unreasonable or Excessive Fees*

The Insperity Defendants contend that Retirement Services only receives reimbursement for actual, legally-permissible expenses which are reviewed and approved by Reliance and that the fees charged are supported by "the nature and structure of this unique, and highly complex, plan and thus the 'market' available to service it." Insperity Br. at 15. They contend that the Plan "is *required* by the IRS to be operated like a collection of thousands of small, individual plans" and "is more expensive to administer and recordkeep than a traditional 401(k) plan." Id. at 16-17 (emphasis in original).

Plaintiffs contend that Insperity failed to negotiate the subsidiary's compensation, failed to monitor the amount of asset-based revenue sharing it received, and failed to obtain rebates of excessive compensation, resulting in gross

overpayment for administrative services. Pls.' Resp. to Insperity Br. at 11. They

also assert that Insperity provides no authority for contending that the Plan requires

more record keeping than do other plans and that Insperity's $500 "Annual Base

Recordkeeping" charge and $30 "Annual Participant Service Fee" further

demonstrate impropriety. Id. at 11-13.

At this stage of the proceedings, it is not Plaintiffs' burden "to rule out every

possible lawful explanation" for the allegedly high fees charged in administering

the Plan.[8] Braden, 588 F.3d at 596-97. If a fiduciary charges record keeping fees

---

[8] The Insperity Defendants cite to a procedure manual adopted by Reliance which
they assert is a governing plan document that disputes Plaintiffs' characterization
of the fees charged by Retirement Services. "Procedure Manual for Payment of
Reimbursement of Plan Expenses," attached as Ex. 7 to Insperity Mot. [Doc. 41-
11]; see also Insperity Br. at 9 n.21. When deciding a motion to dismiss, the Court
must limit its consideration to well-pleaded factual allegations, judicially-noticed
matters, and documents central to or referenced in the complaint. La Grasta v.
First Union Sec., Inc., 358 F.3d 840, 8435 (11th Cir. 2004). If a document is
attached to a motion to dismiss, it may be referenced "only where the attached
document is central to the plaintiff's claim and is undisputed in the sense that the
authenticity of the document is not challenged." Woods, 396 F. Supp. 2d at 1359
(quoting Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (quotation marks
omitted)). Plaintiffs allege that, at this stage of the litigation, there is a dispute
between the parties as to whether Defendants' actions were in compliance with the
terms of the Manual. Pl.'s Resp. to Insperity Mot. at 16. Where a document's
contents are disputed by a party, it is "improper to permit defendants to simply
'attach [documents] referenced in a . . . complaint to their motions to dismiss and
ask courts to consider the contents of those [documents when] they contradict[] the
allegations of [a] complaint.'" Wesolowski v. Title Source, Inc., 608 F. App'x
724, 726 (11th Cir. 2015) (quoting Saunders v. Duke, 766 F.3d 1262, 1270 (11th

as a percentage of assets, it can be a breach of its fiduciary duty to fail to monitor

the fees and rein in excessive compensation.  Tussey v. ABB, Inc., 746 F.3d 327,

336 (8th Cir. 2014).  Once again, the Court finds the Insperity Defendants'

arguments regarding the propriety and necessity of the fees are more appropriately

considered at the summary judgment stage, after the benefit of discovery.

Therefore, Defendants' Motions to Dismiss Count II are **GRANTED IN**

**PART and DENIED IN PART**.  Specifically, the motions are **GRANTED** with

respect to claims challenging the initial selection of Retirement Services as record

keeper and otherwise are **DENIED**.

### C.   Count III (Breach of Duties of Loyalty and Prudence—Unreasonable Investment Management Fees)

Plaintiffs allege that the Insperity Defendants and Reliance engaged in self-

dealing by offering higher-cost investments to the Plan's participants, because

Reliance selected those investments in order to pay a larger amount of revenue-

sharing to the Insperity Defendants.  Am. Compl. ¶ 91.  The Amended Complaint

reviews in some detail a comparison of the higher management fees generated

from the investments selected for the Plan versus investments in the Plan that were

replaced and other investment alternatives.  Id. ¶¶ 92-127.  Plaintiffs contend that

---

Cir. 2014)).  Therefore, the Court has not considered the Manual at this stage in
evaluating Plaintiffs' claims.

each Defendant is personally liable and also knowingly participated in the other Defendants' breaches. Id. ¶¶ 188-89.

> 1.    *Whether the Insperity Defendants are Proper Parties Under Count III.*

The Insperity Defendants rely on the same arguments (regarding delegation and fiduciary status) to dismiss Count III as they do to dismiss Count I. Insperity Br. at 20-23. For the reasons discussed *supra* at 11-17, dismissal on this basis is not appropriate at this stage of the proceedings.

> 2.    *Whether It Can Be a Breach of a Fiduciary Duty to Fail to Pursue Investment Options With Lower Management Fees*

Reliance contends that it has no duty to seek out the cheapest possible investment options and that a prudent fiduciary can make investment choices based on factors other than cost. Reliance Br. at 10-11. Reliance further asserts that attacks such as Plaintiff's challenge to the investment options chosen by Reliance have been rejected by courts, and that it is not a breach of a fiduciary duty to offer revenue sharing to defray the Plan's expenses. Id. at 11-15. In response, Plaintiffs reference other cases that support such a challenge. Pls.' Resp. to Reliance Br. at 17-22.

The Eleventh Circuit has not addressed whether allegations of the imposition of excessive management fees as a part of investment selections are sufficient to

state a claim for breach of fiduciary duty. The cases that have been decided in other Circuits can be divided into two categories. The first category are those decisions concluding that there was no violation of a fiduciary duty where investment options that carried excessive fees were selected; in these decisions, there were no allegations of self-dealing or the use of revenue sharing to benefit corporate interests over those of the plan. Renfro v. Unisys Corp., 671 F.3d 314, 327 (3d Cir. 2011) (affirming dismissal where the allegations were "limited to contentions that [the defendant] should have paid per-participant fees rather than fees based on a percentage of assets in the plan" and the plaintiff did not allege any sort of *quid pro quo* between fee payments and the nature of the investments); Loomis v. Exelon Corp., 658 F.3d 667, 671 (7th Cir. 2011) (affirming dismissal which involved allegations that the fiduciary should have chosen or negotiated fund with lower fees and the plaintiffs "[did] not contend that the funds Exelon selected had any control over it, or over them; there is no reason to think that Exelon chose these funds to enrich itself at participants' expense"); Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) (finding no breach of fiduciary duty where allegations were limited to selecting investments with excessive fees and there was no dispute that there was a sufficient mix of investments offered to plan participants). These cases are consistent with the generally accepted principle

31

that a fiduciary's actions are not to be judged "from the vantage point of hindsight"

because the prudent person standard under ERISA "does not impose a duty to take

any particular course of action if another approach seems preferable." Chao v.

Merino, 452 F.3d 174, 182 (2d Cir. 2008) (quotation marks and citations omitted).

However, in the second category of cases, claims for breach of fiduciary

duty were permitted to proceed where the choice of investments with higher

management expenses was linked to allegations of wrongdoing, including

allegations that the selections were made to benefit the defendants over the plan

participants. Tussey, 746 F.3d at 336 (concluding that "[t]he facts of this case,

unlike [Renfro, Loomis, and Hecker], involve significant allegations of

wrongdoing, including allegations that [the fiduciaries] used revenue sharing to

benefit [the fiduciaries] at the Plan's expense"); Braden, 588 F.3d at 596

(concluding that the district court erred in dismissing the claim for breach of

fiduciary duty where the complaint alleged that investment "options were chosen

to benefit the trustee at the expense of the participants" and that revenue sharing

payments were made to the trustee as a *quid pro quo* for including certain

investments in the plan). The Court finds that the allegations raised by Plaintiffs

are consistent with those found to state a claim by the Eighth Circuit. Further, as

the Seventh Circuit later clarified, Hecker was not meant to give a "green light" to

fiduciaries to make reckless or imprudent investment selections; rather, it "was

tethered closely to the facts before the court" and "[p]laintiffs never alleged that

any of the 26 investment alternatives that Deere made available to its 401(k)

participants was unsound or reckless. . . ." Hecker v. Deere & Co., 569 F.3d 708,

711 (7th Cir. 2009).

Here, Plaintiffs have alleged that Defendants' selection of the funds with

excessive management fees resulted in greater income for Defendants. See Am.

Compl. ¶¶ 91 ("Reliance Trust and Insperity entities engaged in blatant self-

dealing when offering higher-cost investments to Plan participants.  In order to

drive revenue to Reliance Trust, Reliance Trust selected, and Insperity entities

allowed, Reliance Trust proprietary investments to be offered as Plan investment

options.  In return, Reliance Trust selected higher-cost share classes of the Plan's

funds, which paid a larger amount of asset-based revenue sharing to Insperity

entities than the available lower-cost share classes would have paid.  This

conflicted scheme ensured that excessive fee revenue from Plan investments was

fully captured by these conflicted fiduciaries on an ongoing basis."); 119, 126

(". . . Defendants Reliance Trust and Insperity Holdings selected and retained high-

cost investments that generated excess revenue to benefit themselves and other

Insperity Defendants through investment management fees and asset-based
revenue sharing payments.").

Given the specific allegations at issue here, the Court finds that Plaintiffs
have stated a claim.  The Court finds that the analysis of the Eighth Circuit in
Braden is most applicable:

> Taken as true, and considered as a whole, the complaint's allegations
> can be understood to assert that the Plan includes a relatively limited
> menu of funds which were selected by Wal-Mart executives despite
> the ready availability of better options.   The complaint alleges,
> moreover, that these options were chosen to benefit the trustee at the
> expense of the participants.  If these allegations are substantiated, the
> process by which appellees selected and managed the funds in the
> Plan would have been tainted by failure of effort, competency, or
> loyalty.   Thus, the allegations state a claim for breach of fiduciary
> duty.

588 F.3d at 595; see also In re Regions Morgan Keegan ERISA Litig., 692 F.

Supp. 2d 944, 957-58 (W.D. Tenn. 2010) (denying motion to dismiss an excessive

fee claim, alleging that the fiduciaries breached their duty by investing imprudently

in Regions' proprietary funds, which charged excessive fees, despite comparable

alternatives, because Defendants acted not for the Plans' sole benefit, but out of

Regions' self-interest.").  Here, as discussed above, Plaintiffs have alleged not just

that the percentage of fees was excessive, but that Defendants are liable for self-dealing and a failure to choose available, less expensive options.[9]

For the reasons discussed above, the Court finds Plaintiffs have stated a claim for Count III. Reliance's arguments regarding whether it sufficiently researched alternatives, and whether alternatives existed that would have provided the same benefits, are more appropriately addressed at the summary judgment stage, after the benefit of discovery. The Insperity Defendants and Reliance's Motion to Dismiss Count III is **DENIED**.

### D. Count IV (Breach of Duties of Loyalty and Prudence—Use of a Microscopically Low-Yielding Money Market Fund Without Consideration or Use of a Stable Value Fund Until Adding a Stable Value Fund and Then Adding an Imprudent One)

In Count IV of the Amended Complaint, Plaintiffs allege that stable value funds are unique investments available only to retirement plans, especially large

---

[9] It should be noted that some district courts have found <u>Braden</u> applicable even where plaintiffs did not allege any sort of kickbacks or revenue sharing. <u>See, e.g.,</u> <u>Kruger v. Novant Health, Inc.</u>, 131 F. Supp. 3d 470, 477 (M.D.N.C. 2015) ("In <u>Braden</u>, as in the present action, the plaintiff alleged that the plan fiduciaries were utilizing imprudently expensive investment options to the detriment of the plan."); <u>Krueger v Ameriprise Fin., Inc.</u>, No. 11-cv-2781 (SRN/JSM), 2012 WL 5873825, at *11 (D. Minn. Nov. 20, 2012) ("The Eighth Circuit in <u>Braden</u> explicitly stated that the 'gravamen' of the plaintiffs' complaint was that the defendants 'failed adequately to evaluate the investment options included in the Plan' and as a result chose affiliated investment options that charged excessive fees. That is exactly what the Plaintiffs allege in this action." (quoting <u>Braden</u>, 588 F.3d at 589-90)).

plans, which provide safety of principal and liquidity but far higher returns than money market mutual funds, which are used by retail investors with shorter investment horizons and more rapid trading activity. Id. ¶¶ 128-31. Plaintiffs further allege that Reliance

> imprudently and disloyally failed to consider including a stable value fund in the Plan by weighing the benefits of a stable value fund compared to a money market fund, and declined to include a stable value option in the Plan without any prudent or loyal basis to do so, until recently in 2014. Even then, rather than considering the many high-quality outside stable value fund providers, Reliance Trust added its own in-house proprietary stable value fund . . . .

Id. ¶ 135. Although Plaintiffs appear to limit their factual contentions to Reliance, they contend that each of the Defendants breached their fiduciary duties of loyalty and prudence under 29 U.S.C. §§ 1104(a)(1)(A) & (B) and is personally liable to make good on any plan losses; moreover, they seek to hold all Defendants responsible for "knowingly participat[ing] in the breach of the other Defendants." Id. ¶¶ 195-96. Significantly, unlike their allegations in Counts I and III, Plaintiffs do not allege any self-dealing or *quid pro quo* arrangement that resulted in the selection of the questionable funds, just that selecting one fund over another was improper.

The Court finds that the allegations contained in Count IV fail to state a claim upon which relief can be granted. "We see nothing in the [ERISA] statute

36

that requires plan fiduciaries to include any particular mix of investment vehicles in their plan.  That is an issue, it seems to us, that bears more resemblance to the basic structuring of a Plan than to its day-to-day management." Hecker, 556 F.3d at 586.

The same allegations contained in Count IV were held not to state a claim upon which relief can be granted in a recent district court decision that this Court finds persuasive.  In White v. Chevron Corp., No. 16-CV-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016), the plaintiffs alleged that the defendants breached their duties of loyalty and prudence by providing participants with a money market fund as a capital preservation option, instead of offering them a stable value fund.  The district court concluded that this did not state a claim:

> The complaint simply alleges that defendants violated the "duties of loyalty and prudence" by offering a money market fund instead of a stable value fund . . . .  Here, the complaint pleads no facts sufficient to raise a plausible inference that defendants took any of the actions alleged for the purpose of benefitting themselves or a third-party entity with connections to Chevron Corporation, at the expense of the Plan participants, or that they acted under any actual or perceived conflict of interest in administering the Plan.  Instead, plaintiffs simply allege in the first through fourth causes of action that "Chevron breached its duties of loyalty and prudence" under § 1104(a)(1)(A) & (B). . . .
>
> The court finds that the complaint does not allege sufficient facts to show a breach of the duty of prudence in connection with defendants' selection of the money market fund as the "capital preservation option."  Offering a money market fund as one of an array of

mainstream investment options along the risk/reward spectrum more than satisfied the Plan fiduciaries' duty of prudence. . . .

A complaint that lacks allegations relating directly to the methods employed by the ERISA fiduciary may survive a motion to dismiss only if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed. No such inference can be made in this case. Under Iqbal, the plausibility standard asks for more than a sheer "possibility" that a defendant has acted unlawfully. Without some facts that raise an inference of imprudence in the selection of the money market fund – apart from the fact that stable value funds may provide a somewhat higher return than money market funds – plaintiffs have failed to state a claim.

Id. at *5, 7-8 (internal citations and punctuation omitted). Finally, the court stated that the plaintiffs' focus on comparing the relative performance of stable value funds and money market funds in the past was "an improper hindsight-based challenge to the Plan fiduciaries' investment decision-making." Id. at *8.

In Count IV, as in White, Plaintiffs challenge the mere selection of one fund over another, with no allegations (other than hindsight financial comparison) of why the selection was improper.[10] Therefore, the Insperity Defendants' and Reliance's Motions to Dismiss Count IV are **GRANTED**.

---

[10] White is more on point than Abbott v. Lockheed Martin Corp., 725 F.3d 803 (7th Cir. 2013), cited by Plaintiffs. In Abbott, which reversed an order denying class certification, the issue was not limited to whether there was a breach of fiduciary duty by failing to include a stable value fund in the mix of investments. "Lockheed distorts Plaintiffs' SVF [stable value fund] claim when it characterizes their theory as one in which the SVF was imprudently managed because it deviated from the mix of investments held by other funds bearing the "stable value" label.

### E.    Count V (Holdings' Failure to Monitor Fiduciaries)

In Count V, Plaintiffs assert that Holdings gave preferential treatment to a separate 401(k) plan for Insperity's corporate employees by offering Insperity's corporate employees lower-cost classes for a group of smaller assets than was offered for participants in the Plan. Am. Compl. ¶¶ 137-41. Plaintiffs also contend that Holdings failed to ensure that Reliance considered the better performing investment options contained in the corporate 401(k) plan assets than those offered for the Plan's participants. Id. ¶¶ 142-43; 202. Finally, Plaintiffs contend that, if Holdings had taken action to monitor the performance of Reliance, it would have been alerted to the excessive administrative and management fees that were assessed against the Plan. Id. ¶ 202.

In their motion to dismiss, the Insperity Defendants assert that Plaintiffs' failure to monitor claim against Holdings is dependent upon their allegations that Reliance breached its fiduciary duties, and that they fail to allege any specific facts as to how Holdings' monitoring activities were deficient. Insperity Br. at 23. In

---

Plaintiffs' claim is not so narrow. Plaintiffs allege that the SVF was an imprudent investment, full stop. They aim to show that the SVF was not structured to beat inflation, that it did not conform to its own Plan documents, and that Lockheed failed to alter the SVF's investment portfolio even after members of its own pension committee voiced concerns that the SVF was not structured to provide a suitable retirement asset." Abbott, 725 F.3d at 811. The allegations in this case are more akin to White than to Abbott.

response, Plaintiffs state in a conclusory manner that Holdings is responsible for a breach of fiduciary duty because it included excessive cost investments in the Plan, merely restating its contentions from Count II and III. Pls.' Resp. to Insperity Br. at 25.

The Court finds that Plaintiffs have included sufficient specific allegations of deficient monitoring on behalf of Holdings to state a claim for relief. Although some of these same allegations with respect to the excessive compensation provided to Retirement Services and the management fees contained in the selection of funds for the Plan are duplicative of those contained in Counts II and III, Count V also includes allegations of preferential treatment with respect to the investments contained in Insperity's corporate plan. Therefore, the Insperity Defendants' Motion to Dismiss Count V against Holdings is **DENIED**.

### F. Counts VI (29 U.S.C. § 1106(a)—Prohibited Transactions Between the Plan and Parties in Interest), and VII (29 U.S.C. § 1106(b)—Prohibited Transactions Between the Plan and Fiduciaries)

Count VI asserts that Defendants violated 29 U.S.C. § 1106(a), which prohibits transactions between the Plan and a "party in interest," by causing the Plan to use Reliance's proprietary investments in order to benefit Reliance through excessive management fees and to pay Retirement Services revenue sharing payments from those proprietary investments. Am. Compl. ¶ 208. Count VII

asserts that Defendants violated 29 U.S.C. § 1106(b), which prohibits certain transactions between the Plan and its fiduciaries. Id. ¶¶ 212-14.

The Insperity Defendants contend that there were no transactions between the Plan and Holdings, and reasserts it prior arguments that neither Insperity nor Retirement Services are fiduciaries of the Plan. Insperity Br. at 24-26. Moreover, the Insperity Defendants assert that any claim in Count VI against Retirement Services must fail because of the exemptions contained in 29 U.S.C. § 1108(b)(2) (ERISA § 408(b)(8)), which provides that the prohibition on transactions between the Plan and real parties in interest does not apply to "making reasonable arrangements with a party in interest for . . . services necessary for the establishment and operation of the plan, if no more than reasonable compensation is paid therefor," and 29 U.S.C. § 1108(c)(2), which provides that a fiduciary may receive reasonable compensation for services rendered. Id. at 26-28. Reliance reasserts its argument made in opposition to Count II that it did not retain Retirement Services as the Plan's record keeper, and relies on the exemption contained in 29 U.S.C. § 1108(b)(8), "which specifically allows plan investment in a fiduciary trust company's proprietary collective trusts." Reliance Br. at 25-26.

As discussed above with respect to Counts II and III of the Amended Complaint, the Court will not dismiss Plaintiffs' claims based upon arguments

41

suggesting a lack of fiduciary status or seeking a definitive determination as to

which entity was a party to the transactions at issue, as those arguments are more

appropriate for consideration on motions for summary judgment.

> Neither the separate corporate status of the three corporations nor the
> general principle of limited shareholder liability afford protection
> where exacting obeisance to the corporate form is inconsistent with
> ERISA's remedial purposes.  Parties may not use shell-game-like
> maneuvers to shift fiduciary obligations to one legal entity while
> channeling profits from self-dealing to a separate legal entity under
> their control.

Lowen v. Tower Asset Mgmt., 829 F.2d 1209, 1220 (2d Cir. 1987).

Moreover, "the statutory exemptions established by § 1108 are defenses

which must be proven by the defendant." Braden, 588 F.3d at 601 (vacating

district court judgment that dismissed cause of action because the plaintiff failed to

plead facts that showed he was not exempted by § 1108); see also Allen v.

GreatBanc Trust Co., 835 F.3d 670, 676 (7th Cir. 2016) ("We now hold squarely

that the section 408 exemptions are affirmative defenses for pleading purposes, and

so the plaintiff has no duty to negate any or all of them."); Fish v. Greatbanc Trust

Co., 749 F.3d 671, 685 (7th Cir. 2014) ("[T]he burden of proof is on a defendant to

show that a transaction that is otherwise prohibited under § 1106 qualifies for an

exemption under § 1108."); Lowen, 829 F.2d at 1215 ("[B]ecause the fiduciary has

a virtual monopoly of information concerning the transaction in question, it is in

42

the best position to demonstrate the absence of self-dealing. Placing the burden of proof on the fiduciary [to establish that the transaction in question fell under an exemption] is thus justified.").

Consequently, the Insperity Defendants and Reliance's Motions to Dismiss Counts VI and VII are **DENIED**.

G.    **Count VIII (29 U.S.C. § 1132(a)(3)—Other Equitable Relief Based on Receipt of Ill-Gotten Proceeds)**

In Count VIII, Plaintiffs seek equitable relief in the form of Court-ordered restitution or disgorgement under 29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) to restore alleged "ill-gotten proceeds and profits" resulting from Defendants' alleged fiduciary breaches to the Plan. Am. Compl. ¶¶ 224-26. The Court finds that Plaintiffs do not seek appropriate equitable relief under § 1132(a)(3).

In Varity Corp. v. Howe, 516 U.S. 489 (1996), the Supreme Court stated that § 1132(a)(3) "functions as a safety net, offering appropriate equitable relief caused by violations that § 502 does not elsewhere adequately remedy." Id. at 513. Varity limited this expansion of coverage under ERISA by noting that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be appropriate." Id. (quotation marks and citation omitted).

43

Plaintiffs fail to allege how they would be unable to obtain adequate relief

for the alleged violations of fiduciary duty in the event they succeed on the

remaining claims in this lawsuit; moreover, to the extent Plaintiffs seek the

recovery of "ill-gotten proceeds or profits," they have alleged no identifiable *res*.

> First, to the extent that Plaintiff seeks monetary damages under that
> subsection, the Complaint alleges no set of facts that would support
> such an award. The Supreme Court recently reiterated that the term
> "equitable relief" in § 502(a)(3) must refer to those categories of relief
> that were typically available in equity, and that money damages are
> the classic form of legal relief. It emphasized that a monetary award
> under ERISA would fall within the scope of § 502(a)(3) only in the
> limited circumstance where the Plaintiff shows that he is entitled to be
> restored particular funds or property improperly in the defendant's
> possession. The Court has found no factual allegations in the
> Complaint even suggesting that such is the case here. Thus,
> Plaintiff's request for "equitable" monetary relief is dismissed.

Woods, 396 F. Supp. 2d at 1363 (internal punctuation, citations, and emphasis

omitted).

Therefore, Count VIII is **DISMISSED**.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Insperity

Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 41] and

Reliance's Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 43] are

**GRANTED IN PART and DENIED IN PART**. Specifically, the Motions are

**GRANTED** with respect to:  (1) claims contained in Count II relating to the initial

44

selection of the record keeper, (2) Count IV, and (3) Count VIII. Defendants'
Motions to Dismiss are otherwise **DENIED**.

It is further **ORDERED** that the Insperity Defendants' Motion to Dismiss
the Complaint [Doc. 29] and Reliance's Motion to Dismiss the Complaint [Doc.
32] are **DENIED AS MOOT**.

It is further **ORDERED** that Plaintiffs' Motion for Leave to File Second
Notice of Supplemental Authority in Opposition to Motions to Dismiss [Doc. 63]
and Plaintiffs' Consent Motion for Leave to File Third Notice of Supplemental
Authority in Opposition to Motions to Dismiss [Doc. 64] are **GRANTED**.

**IT IS SO ORDERED** this 7th day of March, 2017.

_Mark H. Cohen_
MARK H. COHEN
United States District Judge