IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**RONDA A. PLEDGER, SANDRA
BRITT, JENNIFER L. PRIMM,
ALEX BROOKS, JR., and
EDWARD COMER BUCK,
individually and as representatives of
a class of similarly situated persons of
the Insperity 401(k) Plan,**

      **Plaintiffs,**

**v.**

**RELIANCE TRUST COMPANY
and INSPERITY HOLDINGS, INC.,**

      **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:15-CV-4444-MHC**

## ORDER

This is a class action for damages brought pursuant to Section 502(a)(2) of

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§ 1132(a)(2), by Plaintiffs, participants in the Insperity 401(k) Plan (the "Plan"),

against Insperity Holdings, Inc. ("Holdings"), the Plan's sponsor and named

fiduciary, and Reliance Trust Company ("Reliance"), the Plan's trustee

(collectively, "Defendants"). This case is scheduled to be tried before the Court on

March 2, 2020. See Order Scheduling Trial [Doc. 202]. Presently pending before

the Court are Plaintiffs' Motions *in Limine* [Doc. 207], Reliance's Motion *in Limine* to Exclude Opinions of Plaintiffs' Expert Dr. Gerald Buetow ("Motion to Exclude Buetow") [Doc. 208], Holdings's Omnibus Motion *in Limine* ("Holdings's Motion *in Limine*") [Doc. 209], and Plaintiffs' Motion to Strike Defendants' Untimely *Daubert* Motions ("Motion to Strike") [Doc. 211].

## I.    LEGAL STANDARD

Trial judges are authorized to rule on motions *in limine* pursuant to the inherent authority to manage trials.  Luce v. United States, 469 U.S. 38, 41 n.4 (1984) (citing FED. R. EVID. 103(c)).  Judges have broad discretion when ruling on such motions.  See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., 402 F.3d 1092, 1104 (11th Cir. 2005).  Rulings on motions *in limine* are provisional rulings and the trial judge may reverse the decision during the course of a trial. See Ohler v. United States, 529 U.S. 753, 758 n.3 (2000).  "The real purpose of a Motion in Limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably affect the fairness of the trial."  Soto v. Geico Indem. Co., No. 6:13-CV-181-ORL-40KRS, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014) (citation and punctuation omitted).  "The Court will grant a motion in limine to exclude evidence only if the

evidence in question is clearly inadmissible." Wilson v. Pepsi Bottling Grp., Inc.,

609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009).

## II.     PLAINTIFFS' MOTION TO STRIKE[1]

Plaintiffs contend that the Court should strike or summarily deny Reliance's

Motion to Exclude Buetow and the applicable portion of Holdings's Motion *in*

*Limine*[2] because Defendants' request is untimely under Rule 26.2(C) of the Civil

Local Rules of Practice for the United States District Court for the Northern

---

[1] Courts may strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from "a pleading." FED. R. CIV. P. 12(f). Plaintiffs' request is improperly characterized as a motion to strike because such motions may be made only regarding pleadings. A motion *in limine* is not a pleading within the meaning of Rule 12(f) as defined by Rule 7(a). See FED. R. CIV. P. 7(a); see also Circle Grp., L.L.C. v. Se. Carpenters Reg'l Council, 836 F. Supp. 2d 1327, 1347, 1349 (N.D. Ga. 2011) (stating that Rule 12(f) "applies to pleadings, not to motions or briefs filed in support of motions"). Consequently, the Motion to Strike is **DENIED**; however, the Court will consider Plaintiffs' objection that Defendants' request to exclude Dr. Gerald Buetow's expert testimony is untimely. See, e.g., Murphy v. Farmer, 176 F. Supp. 3d 1352, 1342 (N.D. Ga. 2016); Exceptional Mktg. Grp., Inc. v. Jones, 749 F. Supp. 2d 1352, 1358-59 (N.D. Ga. 2010).

[2] The applicable portion of the Motion *in Limine* relates to Defendants' attempt to exclude the testimony of Plaintiffs' expert Dr. Gerald Buetow ("Buetow"). See Def. Reliance Tr. Co.'s Mem. of Law in Supp. of its Mot. in Limine to Exclude Ops. of Pls.' Expert Dr. Gerald Buetow ("Reliance's Mem.") [Doc. 208-1] at 1-2 & n.2; Def. Insperity Holdings, Inc.'s Mem. of Law in Supp. of its Omnibus Mot. in Limine ("Holdings's Mem.") [Doc. 209-1] at 2-3.

District of Georgia.  Mem. in Supp. of Pls.' Mot. to Strike Defs.' Untimely

*Daubert* Motions ("Pls.' Mem. in Supp. of Mot. to Strike") [Doc. 211-1] at 1.

Local Rule 26.2(C) states:

> Any party objecting to an expert's testimony based upon Daubert v.
> Merrell Dow Pharms., Inc., 509 U.S. 579, 113 S. Ct. 2786 (1993) shall
> file a motion no later than the date that the proposed pretrial order is
> submitted.  Otherwise, such objections will be waived, unless expressly
> authorized by Court order based upon a showing that the failure to
> comply was justified.

LR 26.2(C), NDGa.  Defendants moved under <u>Daubert</u> to exclude Buetow's

testimony on December 16, 2019, after the Proposed Consolidated Pretrial Order

[Doc. 200] was submitted on June 14, 2019.

However, pursuant to the Court's Standing Order Regarding Civil Litigation

("Standing Order") posted to the Northern District of Georgia website,[3] "[u]nless

otherwise directed, all motions in limine (including <u>Daubert</u> motions) shall be filed

at least fourteen (14) days before the pretrial conference."  Standing Order § II.O.

The pretrial conference is scheduled for February 24, 2020.  Order Rescheduling

Pre-Trial Conference [Doc. 210].  The Court ordered that motions *in limine* be

filed "on or before December 16, 2019."  Sept. 9, 2019, Order [Doc. 206] at 4.

Because Defendants moved under <u>Daubert</u> to exclude Buetow on December 16,

---

[3] http://www.gand.uscourts.gov/sites/default/files/MHC_Standing_Order.pdf.

2019, in accordance with the Court's orders,[4] their failure to comply with the timeframe set forth in Local Rule 26.2(C) is justified. Accordingly, Plaintiffs' request that the Court summarily deny as untimely Reliance's Motion to Exclude Buetow and the applicable portion of Insperity's Motion *in Limine* is **DENIED**.

## III.   PLAINTIFFS' MOTIONS *IN LIMINE*

### A.   Exhibits that Reliance Produced on May 20, 2019

Plaintiffs move pursuant to Federal Rules of Civil Procedure 26 and 37 to exclude thirteen exhibits[5] that Reliance produced for the first time on May 20, 2019, because Reliance failed to produce these materials as part of their Rule 26(a)(1) disclosures, in response to Plaintiffs' document requests, and in support of Reliance's motion for summary judgment. Pls.' Mots. *in Limine* at 1-2. The thirteen exhibits Plaintiffs seek to exclude are a series of emails and attachments dated from 2007 through 2012 related to the LifeStyles Funds. Pls.'

---

[4] The Court recognizes that the version of the Standing Order on the docket entered December 28, 2015 [Doc. 3] does not include the language clarifying that motions *in limine* may include Daubert motions. However, "Daubert motions are often considered as a type of motion *in limine*." GOT I, LLC v. XRT, Inc., No. 1:16-CV-38-MHC, 2018 WL 4907773, at *2 (N.D. Ga. Aug. 8, 2018) (citing J & V Dev., Inc. v. Athens-Clarke Cty., 387 F. Supp. 2d 1214, 1215 (M.D. Ga. 2005)).

[5] Reliance exhibits 10, 12, 27, 34, 74, 77, 191, 196, 198, 200, 259, 266, and 685. Pls.' Mots. *in Limine* at 1 n.1; see generally Def. Reliance Trust Co.'s Ex. List [Doc. 200-8].

Mots. *in Limine* at 1.  Although the LifeStyles Funds were not part of the Plan and are not at issue in this case, Reliance contends that these exhibits are evidence of its experience creating and managing multi-asset funds structured along a risk spectrum that correlated with that of the Insperity-branded Horizon Risk Managed Target-Date Funds ("TDFs") created for the Plan (the "Horizon Funds").  See Def. Reliance Tr. Co.'s Opp'n to Pls.' Mot. to Exclude Defs.' Suppl. Disclosures ("Reliance's Opp'n") [Doc. 215] at 1.

> Federal Rule of Civil Procedure 37 states:
>
> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

FED. R. CIV. P. 37(c).  In their initial disclosures, parties must provide "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  FED. R. CIV. P. 26(a)(1)(ii).  Parties must also supplement their discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the

other parties during the discovery process or in writing." FED. R. CIV. P.

26(e)(1)(A).

Plaintiffs contend that Reliance should have produced the thirteen exhibits

during document discovery, in response to Plaintiffs' Rule 34 Requests for

Production numbers nine and eleven. Pls.' Mots. *in Limine* at 6-8. Request

number nine asked for "[d]ocuments referring to or reflecting the selection and

removal criteria for investment options available to, provided to or recommended

for the Plan, the Corporate Plan or defined contribution plan clients of Reliance."

Pls.' First Set of Requests for Production to Def. Reliance Tr. Co. [Doc. 207-4]

at 8. Request number eleven asked for "[d]ocuments relating to or comprising

Reliance's investigation, research, review, analysis or consideration of any kind

regarding the selection, monitoring, or removal of the investment options provided

in the Plan and/or the Corporate Plan." Id. at 9. The Requests for Production

define "Plan" as "the Insperity 401(k) Plan and all of its affiliated, predecessor, or

successor plans, and all plans with which it has merged" and "Corporate Plan" as

"the Insperity Corporate 401(k) Plan and all of its affiliated, predecessor, or

successor plans, and all plans with which it has merged." Id. at 2.

Plaintiffs contend that the thirteen exhibits reflect Reliance's "investigation,

research, review, analysis or consideration of any kind regarding the selection" of

Plan investment options.  Pls.' Mots. *in Limine* at 7.  However, the LifeStyles

Funds were never included in the Plan.  The Court does not agree that emails and

attachments dated from 2007 through 2012 related to the LifeStyles Funds

reflected Reliance's research, review, analysis, or consideration regarding the

selection of Plan investment options.  These documents may indicate that Reliance

had experience designing funds structured along a risk spectrum similar to the

Horizon Funds, which were incorporated into the Plan, but documents indicating

that Reliance had experience designing comparable funds do not necessarily

evidence Reliance's investigation, research, review, analysis or consideration of

Plan investment options.  Reliance was not required to produce these documents in

response to Plaintiffs' Requests for Production numbers nine and eleven.

 Plaintiffs also contend that Reliance should have produced the thirteen

exhibits during document discovery pursuant to Rule 26(a) because Reliance is

using them to support its defenses.  Pls.' Mots. *in Limine* at 7-8.  Considering their

allegations that Reliance "imprudently put its untested target date funds in the

Plan," Plaintiffs contend that Reliance was "plainly on notice years ago that its

TDF-related experience was directly at issue, and thus clearly anticipated using its

purported Lifestyle fund experience as a defense."  Id.  However, the sequence of

events in this litigation demonstrates that Reliance timely supplemented its initial

disclosures with the thirteen exhibits after it became apparent that Reliance's

experience designing funds structured along a risk spectrum similar to the Horizon

Funds was an issue for trial.

Plaintiffs allege that Reliance breached its duty of prudence by adding the

Horizon Funds to the Plan.  See Mar. 28, 2019, Order [Doc. 196] at 61-62 (citation

omitted).  In response to Reliance's motion for summary judgment, Plaintiffs

contended that Reliance had no experience constructing or managing TDFs.  Id.

at 69-70 (citation omitted).  Nicolas Cotter ("Cotter"), a Portfolio Manager at the

Senior Vice President level at Reliance from 2007 to 2016, testified at his

deposition that Reliance was well-equipped to design a multi-asset suite of TDFs

with a glide path because of its experience with the LifeStyles Funds.  See id.

at 10 n.8, 70 (citations omitted).[6]  Cotter stated in his declaration that Reliance had

not previously constructed a glide path for a TDF.  Id. at 70 (citation omitted).  On

March 28, 2019, the Court, noting Reliance's "lack of experience constructing

glide paths, managing TDFs, and creating TDFs," found that genuine issues of

---

[6] Notably, even though at least 260 documents containing the word "Lifestyles,"
directly concerned the LifeStyles Funds were among the more than 3,000
documents produced to Plaintiffs through February 2018, Plaintiffs did not use any
of these documents as exhibits when deposing Reliance's witnesses, including
Cotter on January 23, 2018.  Reliance's Opp'n at 4-5 & n.3.

material fact existed as to whether Reliance was procedurally prudent when it created the Horizon Funds and included them in the Plan. Id. at 71.

Approximately two months later, and one month before the deadline to file the consolidated pretrial order, Reliance supplemented its initial disclosures with the thirteen exhibits "to ensure that the Court would have a full record of [Reliance]'s LifeStyles multi-asset portfolio experience at trial." See Reliance's Opp'n at 3; see generally Apr. 5, 2019, Order [Doc. 198] (extending deadline to file the consolidated pretrial order until June 14, 2019). Reliance's contention that it produced the thirteen exhibits because of the Court's finding genuine issues of material fact is reasonable. Reliance did not violate Rule 26 by supplementing its disclosures with the thirteen exhibits on May 20, 2019. See generally FED. R. CIV. P. 26(a)(3) ("Unless the court orders otherwise, these [pretrial] disclosures must be made at least 30 days before trial."); Standing Order § II.N (requiring the exhibits to be used at trial be identified in the consolidated pretrial order).

Accordingly, Plaintiff's Motion in Limine is **DENIED** with respect to the thirteen exhibits Reliance produced on May 20, 2019.[7]

---

[7] Plaintiffs also "conditionally seek to exclude certain fee-related exhibits identified by Defendants" if the Court grants Defendants' expected request to exclude evidence tending to show that higher fees in more expensive share classes were unreasonable. Pls.' Mots. in Limine at 2. The Court addresses this request in

## IV.   RELIANCE'S MOTION TO EXCLUDE BUETOW

Reliance moves to exclude all of Buetow's opinions regarding the processes that Reliance followed in connection with adopting the Horizon Funds as Plan investment options. Reliance's Mem. at 7-8, 20-21. Reliance contends that (1) Buetow's opinions concerning the fiduciary standards applicable to this case, including the actions a prudent fiduciary would take in choosing investment options, should be excluded because Buetow is not qualified to offer them, and (2) Buetow's opinions concerning Reliance's procedural actions in selecting the Horizon Funds should not be included because they are not opinions but factual findings that invade the province of the Court. Id. at 7-8.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b)    the testimony is based on sufficient facts or data;
> > (c)    the testimony is the product of reliable principles and methods; and

part V.A. of this Order after addressing Holdings's request to exclude that evidence.

(d)     the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  The Supreme Court has directed that

> [u]nlike an ordinary witness, see Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.  See Rules 702 and 703.  Presumably, this relaxation of the usual requirement of firsthand knowledge . . . is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.

Daubert v. Merrell Dow Pharms., 509 U.S. 579, 592 (1993).  Because Rule 702 permits a broader range of testimony, the Supreme Court has made clear that district courts must perform a critical "gatekeeping" function concerning the admissibility of all expert testimony to ensure that an expert witness's testimony is not only relevant, but reliable.  United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert, 509 U.S. at 589 n.7, 597).  In particular, district courts are "charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand."  Corwin v. Walt Disney Co., 475 F.3d 1239, 1250 (11th Cir. 2007).

In performing this gatekeeping function, the Eleventh Circuit has developed "a rigorous three-part inquiry" to determine the admissibility of expert testimony under Rule 702, that considers whether:

12

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260 (quoting City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998)).  "While there is inevitably some overlap among the basic requirements—qualification, reliability, and helpfulness—they remain distinct concepts and the courts must take care not to conflate them." Id.

"A district court's gatekeeper role under Daubert 'is not intended to supplant the adversary system or the role of the jury.'" Maiz v. Virani, 253 F.3d 641, 666 (11th Cir. 2001) (quoting Allison v. McGhan, 184 F.3d 1300, 1311 (11th Cir. 1999)); accord Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); Adams v. Lab. Corp. of Am., 760 F.3d 1322, 1332, 1334 (11th Cir. 2014) (citations omitted) ("Bias in an expert witness's testimony is usually a credibility issue for the jury. . . . The risk of bias would mean, at most, that [the expert's] testimony is to some extent 'shaky,' and shakiness goes to the weight of her testimony, not its admissibility.").  Rather, the Court's role as a gatekeeper under Daubert "is to make certain that an expert, whether basing testimony upon

13

professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., 526 U.S. at 152.

The proponent of expert testimony "always bears the burden to show that his expert is qualified to testify competently regarding the matters he intended to address, the methodology by which the expert reached his conclusions is sufficiently reliable, and the testimony assists the trier of fact." Frazier, 387 F.3d at 1260 (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002) (internal punctuation omitted)); see also Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., 402 F.3d 1092, 1107 (11th Cir. 2005) (explaining that it is the proponent's burden to lay the foundation for admission of expert testimony).

The Eleventh Circuit has cautioned that "[m]any factors will bear on the inquiry, and [there is no] definitive checklist or test." Maiz, 253 F.3d at 665 (quoting Daubert, 509 U.S. at 593). While Daubert and its progeny provide flexible guidelines for the admissibility of evidence under Rule 702, "expert testimony that does not meet all or most of the Daubert factors may sometimes be admissible" based on the particular circumstances of a specific case. United States v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005); see also United States v. Scott, 403 F. App'x 392, 397 (11th Cir. 2010) (quoting Kumho Tire Co., 526 U.S. at 152)

(finding that the <u>Daubert</u> factors are only general guidelines and the trial judge has

"considerable leeway in deciding in a particular case how to go about determining

whether particular expert testimony is reliable"); <u>Quiet Tech. D C-8, Inc. v. Hurel-</u>

<u>Dubois UK Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003) (finding that the court

should consider the <u>Daubert</u> factors "to the extent possible" but that "these factors

do not exhaust the universe of considerations that may bear on the reliability of a

given expert opinion, and a federal court should consider any additional factors

that may advance its Rule 702 analysis").

"[T]he [court's] gatekeeping function is not as stringent" when, as here, the

factfinder is "the court rather than a jury."  <u>See</u> <u>In re Suntrust Banks, Inc. ERISA</u>

<u>Litigation</u>, No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *4 (N.D. Ga. Aug.

17, 2016) (citing <u>United States v. Brown</u>, 415 F.3d 1257, 1268 (11th Cir. 2005)).

The barriers to expert testimony "are even more relaxed in a bench trial situation,

where the judge is serving as factfinder and we are not concerned about dumping a

barrage of questionable scientific evidence on a jury." <u>Brown</u>, 415 F.3d at 1268-

59 (citing <u>Allison</u>, 184 F.3d at 1310; <u>Daubert</u>, 509 U.S. at 588) (internal quotation

omitted).  However, "[t]he district court enjoys 'considerable leeway' in making

such evidentiary decisions, and will be reversed only if 'the ruling is manifestly

erroneous.'" <u>Winn-Dixie Stores, Inc. v. Dolgencorp, LLC</u>, 746 F.3d 1008, 1027

(11th Cir. 2014) (citing <u>Frazier</u>, 387 F.3d at 1258).

### A.      Whether Buetow is Qualified

There are various ways for determining whether an expert is qualified.

"While scientific training or education may provide possible means to qualify,

experience in a field may offer another path to expert status." <u>Frazier</u>, 387 F.3d

at 1260-61.  Federal Rule of Evidence 702 provides that an expert's qualification

may be based on "knowledge, skill, experience, training, or education." <u>See also</u>

FED. R. EVID. 702 advisory committee's note (2000 amends.) ("Nothing in this

amendment is intended to suggest that experience alone . . . may not provide a

sufficient foundation for expert testimony.").  Thus, "there is no mechanical

checklist for measuring whether an expert is qualified to offer opinion evidence in

a particular field." <u>Santos v. Posadas de P.R. Assocs.</u>, 452 F.3d 59, 63 (1st Cir.

2006).  Rule 702 requires an expert witness relying solely on experience to

"explain *how* that experience leads to the conclusion reached, why that experience

is a sufficient basis for the opinion, and how that experience is reliably applied to

the facts." Frazier, 387 F.3d at 1261 (citing FED. R. EVID. 702 advisory

committee's note (2000 amends.)).

Reliance contends that Buetow is not qualified to testify about the

investigative actions a prudent fiduciary would or would not take in selecting plan

investment options because he lacks experience serving as a 401(k) plan fiduciary

with responsibility for selecting managers or funds.  Reliance's Mem. at 11.

Reliance acknowledges that a portfolio manager like Buetow can be qualified to

offer expert opinions on the objective reasonableness of investment products, but

contends that he is not qualified to offer expert opinions on the procedures

followed by prudent fiduciaries.[8]  Id. at 10, 12.  Plaintiffs assert that Reliance's

contention has no basis in the law and any purported gaps in Buetow's experience

go to the weight, not admissibility, of his testimony.  Pls.' Opp'n to Reliance Tr.

Co.'s Mot. to Exclude Ops. of Dr. Gerald Buetow ("Pls.' Opp'n to Reliance's

Mot.") [Doc. 218] at 7 (citing Leathers v. Pfizer, Inc., 233 F.R.D. 687, 692 (N.D.

---

[8] "Whether an ERISA fiduciary has acted prudently requires consideration of both
the substantive reasonableness of the fiduciary's actions and the procedures by
which the fiduciary made its decision . . . ."  Fish v. GreatBank Trust Co., 749 F.3d
671, 680 (7th Cir. 2014) (citation omitted).  This Court previously found that
genuine issues of material fact exist as to whether Reliance was procedurally
prudent when it created the Horizon Funds and included them in the Plan.  Mar.
28, 2019, Order at 71.

Ga. 2006)).  Plaintiffs contend that Buetow's twenty-five years working as an

academic, researcher, and professional in the investment management field,

including working with 401(k) plans and TDFs, qualifies him to testify about the

procedures that investment experts use in selecting investments.  Id. at 12-14.

Plaintiffs explain that "[j]ust as an ERISA fiduciary must seek to optimize

financial benefits for participants while avoiding undue risk, Dr. Buetow pursues

the same objectives in his work as a portfolio manager.  That he may have been

subject to different legal responsibilities than an ERISA fiduciary does not render

him unqualified."  Id. at 14 (citations omitted).

Among other experience, Buetow served as the Director of Research at

Atlanta Asset Management I where he was "given discretion by the fiduciary over

multi-asset pension plans" and "also served in a monitoring capacity for underlying

asset managers."  See Expert Report of Gerald Buetow ("Buetow Report")

[Doc. 208-2] ¶ 8.  Buetow became Chief Investment Officer and was "responsible

(fiduciary and discretionary) for various multi-asset investment solutions."  Id.

These roles "were all encompassing in terms of the management, monitoring,

operation, and administration of several multi-asset investment portfolios."  Id.

Buetow was also a consultant for the Chartered Financial Analyst Institute where

he sat on the Senior Investment Committee for the Institute's defined contribution

plan. Id. ¶ 5. Buetow testified at his deposition that he had been appointed as a monitoring fiduciary for a defined contribution plan. Tr. Dep. of Gerald W. Buetow ("Buetow Dep.") [Doc. 146-1] at 306. He has "been part of that expertise process of selecting investments for [defined contribution plans]" in "various capacities." See id. at 307.

Reliance cites no authority adopting its view that a portfolio manager is qualified to offer expert opinions on the objective reasonableness of investment products but not on the procedures followed by prudent fiduciaries. Instead, it cites four cases that do not involve expert testimony about fiduciary duty under ERISA. See Reliance's Mem. at 11-12 & n.8 (citations omitted). Reliance's challenges to Buetow's experience—that it is limited, that Buetow was at Atlantic Asset Management for only three years and a long time ago, and that Buetow's advice on fund selection was preliminary, very top-level analysis—go to the weight of his testimony, not its admissibility, particularly since the Court will be the trier of fact.[9] See Wildman v. Am. Century Servs., No. 4:16-CV-00737-DGK,

_____

[9] Reliance contends that Buetow conceded at his deposition "that it is 'debatable' whether he is 'an expert on fiduciary process.'" Reliance's Mem. at 12 (alteration accepted) (citing Buetow Dep. at 299-300). This is not a fair reading of the transcript. Defendants' attorney asked Buetow "whether your opinions in your report with regard to Insperity are based on an assumption that Insperity essentially had the same fiduciary responsibilities as Reliance with regard to those investment decisions." Buetow Dep. at 298. After Buetow testified that "Insperity's fiduciary

2018 WL2326628, at *1-2 (W.D. Mo. May 22, 2018) (finding that witness with experience providing consulting services to investment advisors was qualified to testify as an expert even though he lacked experience consulting with plan committees and "had no experience with the practices of fiduciaries of a retirement plan for a mutual fund company."). The Court finds that Buetow is qualified to testify as an expert.

**B.      Whether Buetow's Testimony Will Assist the Trier of Fact**

Whether expert testimony is helpful turns on whether the expert testimony "concerns matters that are beyond the understanding of the average lay person." Frazier, 387 F.3d at 1262. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. at 1262-63.

---

responsibility isn't removed by them delegating fiduciary responsibility to Reliance," Defendant's attorney asked, "[b]ut you're not an expert in that aspect of the fiduciary process because you've never been in that aspect of the fiduciary process, right?" Id. at 299. Buetow responded: "I would say one part of your—I disagree with one part and I agree with the other part. So the first part is, do I have a right given my experience to opine about the fiduciary responsibilities in the design and the function of a defined contribution plan? Absolutely, yes, I do. Do I—do I—am I an expert in the fiduciary process in terms—I don't know how you would delineate that. I would—I guess that's debatable." Id. at 299-300.

Aside from Buetow's statements concerning the investigative actions a prudent fiduciary would take in selecting investment options for a defined contribution plan, Reliance contends that the remainder of his opinions "largely consist of a factual narrative concerning the actions [Reliance] allegedly took (or did not take) in adopting the Horizon TDFs." Reliance's Mem. at 14. Reliance contends that these factual findings will not aid the Court and should be excluded. Id. at 15.

"As a general matter, it is inappropriate for experts to become a vehicle for factual narrative." Duling v. Domino's Pizza, LLC, No. 1:13-CV-01570-LMM, 2015 WL 3407602, at *12 (N.D. Ga. Jan. 14, 2015) (quotations omitted) (quoting Secs. and Exch. Comm'n v. Tourre, 950 F. Supp. 2d 666, 675 (S.D.N.Y. 2013)); see also Tillman v. C.R. Bard, Inc., 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015) (quoting In re Fosamax Prods. Liab. Litig., 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) ("An expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.")). "However, as opposed to providing a mere factual narrative, [an] expert is allowed to articulate the 'factual underpinning' upon which [s]he bases h[er] opinion." Duling, 2015 WL 3407602, at *12 (citing FNB Bank v. Park Nat'l Corp., 996 F. Supp. 2d 1187, 1190 (S.D. Ala. 2014)).

The Court has reviewed Buetow's Report and does not find that it is offered "solely for the purpose of constructing a factual narrative." Rather, Buetow explains the facts on which he bases his opinion. See, e.g., Buetow Report ¶¶ 39 ("This development introduced a clear conflict of interest between Reliance's business decisions and the Plan's best interests."), 50 ("In performing its duties in selecting and retaining investments, Reliance maintained written processes relating to the analysis and selection of third-party managers, including a host of qualitative and quantitative measures such as the following: . . . ."), 62 ("In its marketing efforts, F-Squared disseminated, as explained below and as later admitted by F-Squared, 'clearly overstated' returns."). Buetow's Report "provide[s] more than simple narratives of Plaintiffs' version of the factual events at issue in this case. Instead, [his] expert report[] provide[s] *opinions* based upon facts that *could* be accepted by the [factfinder]." See Duling, 2015 WL 3407602, at *12 (internal citations omitted).

Reliance is correct that expert opinions that are simply "a recitation of historical facts based on information conveyed by others," "merely a restatement of information available from other sources," or "consist[], almost entirely, of . . . parroting of evidence from other sources" do not aid the trier of fact. See In re BankAtlantic Bancorp, Inc. Sec. Litig., No. 07-61542-CIV, 2010 WL 6363027,

at *7 (S.D. Fla. Sept. 9, 2010) (citing Hibiscus Assocs. Ltd. v. Bd. of Tr. of

Policemen and Firemen Ret. Sys. of City of Detroit, 50 F.3d 908, 917 (11th Cir.

1995)); Barrueto v. Fernandez Larios, No. 99-0528-CIV, 2003 WL 25782075,

at *3 (S.D. Fla. Sept. 18, 2003).  However, the Court finds that Buetow's opinions

are not of this nature.  Buetow's Report does not merely recite the facts upon

which Plaintiffs rely; instead, it explains the facts upon which Buetow's opinions

are based.  See generally Buetow Report ¶¶ 57-126.

Reliance contends that Buetow's Report "is almost identical in form to the

defective report that was excluded" in BankAtlantic Bancorp.  Reliance's Mem.

at 16.  In BankAtlantic Bancorp, the relevant section of the expert's report "t[ook]

the following form: first, [the expert] recite[d] at some length BankAtlantic's

practices for monitoring or reviewing its loan portfolios; next [the expert] ma[d]e[]

a bare conclusion based on the rehashed information."  BankAtlantic Bancorp,

2010 WL 6363027, at *6.  The court found that

> [t]o the extent that [the expert]'s opinion regarding the efficacy of
> BankAtlantic's monitoring practices is merely a restatement of
> information available from other sources, it does not assist the trier of
> fact.  And to the extent that [the expert] offers opinions based on this
> recited information, he fails to indicate how he reached such opinions.

Id. at *7 (citing Hibiscus, 50 F.3d at 917).  Unlike the expert's opinions in

BankAtlantic Bancorp, Buetow's opinions do not merely restate information

available from other sources.  See, e.g., Buetow Report ¶¶ 13, 63, 82, 85, 87,

91-92, 94, 101-02, 108, 113-14, 116-122.

Reliance contends that, like the expert's opinions in BankAtlantic Bancorp,

Buetow's "observations are factual summations masquerading as expert opinions."

Reliance's Mem. at 17.  While Buetow does describe the factual background in

detail, he also states the opinions that he reached based on that information.  See,

e.g., Buetow Report ¶¶ 63 ("Even this disclaimer contains contradictory statements

. . . This should have been a tremendous red flag to any fiduciary.  It represents a

gross conceptual error that was never addressed by Reliance."), 91 (citation

omitted) ("To replace an existing manager, the JP Morgan TDFs, which are

admittedly meeting expectations with proprietary funds that are untested and

largely based on unverifiable hypotheticals is inconsistent with my experience and

not in the best interest of participants.  Given the above references and document

profit motive of Reliance, the adding of these funds is clearly untenable for any

fiduciary."), 101 (citation omitted) ("In my experience, any prudent investment

professional would have viewed this level of outperformance with the utmost

skepticism."). Thus, Buetow's Report is distinguishable from the expert's opinions found inadmissible in BankAtlantic Bancorp.

Reliance also contends that Buetow's factual narrative is unreliable because he reviewed "only [that] sliver of the record" collected by Plaintiffs' counsel, and his report allegedly contains factual errors. Reliance's Mem. at 17-18. Reliance contends that Buetow lacked access "to critical information" regarding the scope of Reliance's investigation into the Plan's investment choices because Plaintiffs' counsel did not question Reliance personnel about it at their depositions. Id. at 18-19. Reliance notes that Buetow reviewed "less than 1[,]000 of the many tens of thousands of documents produced in this case," and, thus, Reliance contends that Buetow's factual determinations are unreliable. Id. at 17, 20; see generally Buetow Report, Ex. 1 (listing the materials that Buetow considered).

As an example, Reliance contends that Buetow "proclaims based on the 'document evidence' that [Reliance] had 'no experience' 'coming up with a strategic asset allocation' in a 'multiasset fund,' or 'managing a multiasset class portfolio' prior to designing the Horizon TDFs." Reliance's Mem. at 17-18 (alterations accepted) (citing Buetow Dep. at 129-131, 133). Reliance contends that this is factually incorrect because as of November 2012, it had twenty years of experience "developing strategic asset allocations through its management of the

multi-asset class Lifestyle Portfolios." Id. at 18 (citing Def. Reliance's Mot. for

Summ. J. and Mem. of Law in Supp. ("Reliance's Mot. for Summ. J.") [Doc. 137]

at 26).[10]  As explained below, this example demonstrates not that Buetow's

statements were factually incorrect, but that the parties disagree whether Reliance's

experience (or lack thereof) suggests that it acted imprudently in adding the

Horizon Funds to the Plan.  See generally Mar. 28, 2019, Order at 71.

Buetow testified at his deposition that it was his understanding "that prior to

November of 2012, [Reliance] ha[d] no experience in managing a tactical asset

allocation model, or coming up with a glide path, or coming up with strategic asset

allocation that I have any document—document evidence."  Buetow Dep. at 129.

When Defendants' counsel asked Buetow whether he understood that Reliance,

"prior to November 2012, had no prior experience managing a multiasset fund with

exposure to commodities and real estate," Buetow replied, "my point is, [Reliance]

ha[s] no experience in managing a tactical asset allocation model."  Buetow Dep.

at 130.  Buetow clarified that he had "no documentary evidence that [Reliance]

ha[s] managed a multiasset class portfolio . . . [a]nd specifically in an active

---

[10] Neither Reliance's Memorandum nor its Motion for Summary Judgment cite
evidence in the record to support this assertion.  See Reliance's Mem. at 18;
Reliance's Mot. for Summ. J. at 26.

strategy." Id. at 131.  Buetow also stated that "I have no evidence that was

presented to me in all the documents that I have that suggest that [Reliance] ha[s]

had experience in putting together a multiasset glide path or tactical model.  That's

my answer." Id. at 132.  Buetow then clarified that by "glide path," he meant "a

target date fund" or "any multiasset fund with a strategic asset allocation."  Id.

At summary judgment, Reliance presented evidence, via Cotter's

declaration, that Reliance had "extensive experience with multi-asset allocation"

through the LifeStyles Funds which it had managed since the 1990s.  Mar. 28,

2019, Order at 70 (citation omitted).  Cotter stated in his declaration that Reliance

had been researching and selecting TDFs with glide paths for its 401(k) clients for

many years.  Id. at 70-71 (citation omitted, emphasis added).  However, Cotter also

stated in his declaration that Reliance had not previously constructed a glide path

for a TDF.  Id. at 70 (citation omitted, emphasis added).  Cotter also testified at his

deposition that, to his knowledge, Reliance had never before created a TDF or been

involved in managing a TDF.  Id. (citation omitted).  Defendants offered no

evidence at summary judgment "that Reliance previously constructed a glide path,

created a TDF, or was involved in managing a TDF."  Id. (emphasis added).  The

27

deposition testimony that Reliance contends illustrates Buetow's error is instead consistent with this lack of evidence.  See Buetow Dep. at 129-33.[11]

Another of Reliance's examples is no more convincing.  Reliance contends that Buetow "declares that he saw 'no documentation that offers analysis' on 'the investment characteristics of the multi-asset class strategies' or 'no documented concern that the JP Morgan TDFs were too aggressive or that there was no need for downside protection.'"  Def. Reliance's Reply in Supp. of its Mot. in Limine to Exclude Opinions of Pls.' Expert Dr. Gerald Buetow ("Reliance's Reply") [Doc. 222] at 11 (quoting Buetow Report ¶¶ 92, 118).  Reliance contends Buetow is factually incorrect because a Reliance presentation on the decision to remove the JP Morgan TDFs states that the reason for removal was "a desire for a more cost-effective approach" and "a desire for a more robust risk-management capabilities." Id. at 11 n.3 (citing Insperity 401(k) Plan and Insperity Corporate 401(k) Plan Trustee's Report (Mar. 14, 2012) ("March 2012 Annual Report") [Doc. 163-112] at 36).

---

[11] Furthermore, it is unclear what documents produced during discovery Buetow did not but allegedly should have reviewed that would have changed this deposition testimony.  The relevant statements in Cotter's Declaration do not cite to any documents.  See Cotter Decl. ¶¶ 30-34.

Buetow states in his report that "prior to the time Reliance won the CIT business with F-Squared, I have seen no documented concern that the JP Morgan TDFs were too aggressive or that there was a need for downside protection in the Plan's TDF investments."  Buetow Report ¶ 92 (emphasis added).  First, Buetow reviewed and cited to the March 2012 Annual Report.  See id. ¶¶ 92 (citing "Exhibit 43 at 54"), 84 (making clear that "Exhibit 43" is the 2012 Annual Report); see also id. Ex. 1 (stating that Buetow considered "Annual Trustee's Reports").  Furthermore, the March 2012 Annual Report is dated March 12, 2012.  See Mar. 2012 Annual Report at 1.  Buetow states that Reliance "won the F-Squared business" in December 2010.  Buetow Report ¶ 66.  Thus, the March 2012 Annual Report does not contradict Buetow's assertion that he saw no documentation about concerns with the JP Morgan TDFs from before Reliance won the CIT business with F-Squared.

As the Court previously explained when denying Defendants' Daubert motion to exclude the opinions of Plaintiffs' expert Jania Stout, "the fact that [the expert] base[s] [his] opinions on a version of disputed rather than established facts can be properly brought to the [factfinder]'s attention by Defendants through cross-examination."  Duling, 2015 WL 3407602, at *13 (internal quotation marks omitted) (citing Viterbo v. Dow Chem. Co, 826 F.2d 420, 422 (5th Cir. 1987) ("As

a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.")); see generally Feb. 25, 2019, Order [Doc. 191] at 32.

Reliance also contends that Buetow's opinion that "the profit motive clearly clouded the judgment of the plan fiduciaries" in adopting the Horizon Funds is not helpful. Reliance's Mem. at 19; see generally Buetow Report ¶ 103. The Court agrees. At his deposition, Defendants' counsel asked Buetow if he was "expressing an opinion on the motives of Reliance in deciding to add the Horizon Funds." Buetow Dep. at 328. Buetow stated, "I can read the documents that led to this conclusion and I can extrapolate what I think the intent was in adding these funds to the plan." Id. When counsel clarified, asking, "[a]nd you're offering an opinion, are you not, sir, that in fact Reliance's motives were in its own interest in adding these funds as opposed to the interest of participants, right?," Buetow answered, "Yes. Reliance absolutely in my view had a conflict . . . ." Id. at 328-29. Buetow's speculation as to Reliance's motives is, among other things, not helpful to the Court. See Cason v. C.R. Bard. Inc., No. 1:12-CV-1288-MHS, 2015 WL 9913809, at *13 (N.D. Ga. Feb. 9, 2015) (quoting In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004)) ("Expert testimony on 'the

intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of knowledge or expertise.  The testimony is improper also because it describes lay matters which a jury is capable of understanding and deciding without the expert's help.'"); City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 565 (11th Cir. 1998) ("[The expert's] characterizations of documentary evidence as reflective of collusion, and his characterizations of particular bids as 'signals,' do not [assist the trier of fact], because the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance from [the expert] or other experts.").  Thus, Buetow is not permitted to testify as to this opinion.

With the exception of Buetow's opinion about Reliance's motives in adding the Horizon Funds, Reliance has not shown that Buetow's opinions will not be helpful, particularly in the context of a bench trial.  Accordingly, Reliance's Motion to Exclude Buetow is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** with respect to Buetow's opinion as to Reliance's motive for adding the Horizon Funds as Plan investment options.  In all other respects, the motion is **DENIED**.

## V.    HOLDINGS'S MOTIONS *IN LIMINE*

Defendants[12] move to exclude (1) evidence that they contend relates solely to the reasonableness of the Plan's recordkeeping expenses, (2) exhibits that they contend relates solely to retirement plans not at issue in this case, and (3) Buetow's testimony related to damages for Count III.

### A.    Evidence of the Reasonableness of Plan Recordkeeping Expenses

The Court previously granted Defendants' motion for summary judgment as to Count II, wherein Plaintiffs alleged that Reliance and Holdings breached their duties of loyalty and prudence by permitting the Plan's recordkeeper to be paid excessive compensation.  Mar. 28, 2019, Order at 82-84; see generally Am. Compl. ¶¶ 175-76, 78.  Defendants contend that approximately 150 trial exhibits,[13] portions of John Stanton and Richard Rawson's deposition testimony,[14] and Plaintiffs' witness Sean Duffy should be excluded because they are relevant only to the reasonableness of the Plan's recordkeeping expenses, which is no longer at issue in this case.  Holdings's Mem. at 6-7 & n.2.  Plaintiffs contend that the

---

[12] Reliance also joins Holdings's Motion *in Limine*.  Reliance's Mem. at 2 n.2.

[13] See Holdings's Mem., Ex. 1 [Doc. 209-3].

[14] See Holdings's Mem., Exs. 2 & 3 [Docs. 209-4 & 209-5].

challenged evidence is relevant as to Count III, wherein Plaintiffs allege that Defendants breached their fiduciary duties by selecting and retaining investments for the Plan that charged excessive management fees.  Pls.' Opp'n to Insperity Holdings's Mot. in Limine ("Pls.' Opp'n to Holdings's Mot. *in Limine*") [Doc. 219] at 1-3; <u>see generally</u> Am. Compl. [Doc. 37] ¶¶ 182-89.

Plaintiffs contend that the challenged evidence "tend[s] to show that using higher-cost share classes and revenue sharing to offset the Plan's recordkeeping and administrative expenses 'increased costs and fees to Plan participants.'"  Pls.' Opp'n to Holdings's Mot. *in Limine* at 3 (quoting Mar. 28, 2019, Order at 86-87). In denying summary judgment, the Court explained that a genuine issue of material fact exists on Count III because "[t]he parties' experts disagree whether using revenue-sharing was appropriate and whether it [] increased costs and fees to Plan participants."  Mar. 28, 2019, Order at 87.  The parties agree that the Plan maintained these higher-cost shares to generate revenue to offset trustee, recordkeeping, and administrative expenses.  Mar. 28, 2019, Order at 84-85. However, Plaintiffs contend that using higher-cost shares drove up the fees paid by Plan participants, and that a prudent fiduciary would have switched to lower-cost shares.  Pls.' Opp'n to Holdings's Mot. *in Limine* at 2 (citation omitted).

Plaintiffs acknowledge that the challenged evidence pertains to the Plan's recordkeeping expenses.  See id. at 3.  The Court agrees with Plaintiffs that in granting summary judgment on Count II, it did not find that the Plan's recordkeeping fees were in fact reasonable, but, rather, found that Plaintiffs could not make a *prima facia* showing that the Plan suffered a resulting loss, even assuming that Defendants had breached their fiduciary duties.  See Mar. 28, 2019, Order at 82-84.  The Court did not determine, as Defendants contend, "that there was no evidence that the amount of recordkeeping expenses paid for by revenue sharing was unreasonable."  See generally Holdings's Mem. at 4.  The Court found that the expert report of Michael Geist, whom the Court found not qualified to testify as an expert, was "the only evidence that the Plan suffered losses as a result [of any breach of fiduciary duty]."  Mar. 28, 2019, Order at 84.

Nevertheless, the Court concludes that evidence about the Plan's recordkeeping expenses is not relevant to Count III.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  Because the Court previously granted summary judgment on Count II, whether the Plan's recordkeeper was paid excessive compensation is not of consequence in adjudicating any of the remaining claims in this action.

Plaintiffs have failed to show that the challenged evidence relates to their claims in Count III that Defendants selected and retained investments that charged excessive management fees.  Accordingly, Holdings's Motion *in Limine* is **GRANTED** with respect to evidence of the Plan's recordkeeping expenses.[15]

Plaintiffs contend that if the Court excludes this evidence, it should also preclude Defendants "from using any exhibits or testimony for the purpose of proving that the higher costs in the more expensive share classes were reasonable plan expenses."[16]  Pls.' Mots. *in Limine* at 2-3, 13-14.  Plaintiffs appear to conflate evidence that the Plan's recordkeeping expenses were reasonable, which is irrelevant because the Court granted summary judgment on Count II, with evidence that Defendants selected and retained investments that charged excessive management fees, which is relevant to Counts III and V and remain for trial.

_____

[15] Consequently, Holdings has agreed to remove all designations of evidence concerning the reasonableness of the Plan's recordkeeping expenses, including (1) the designations of Sean Duffy, James Scheinberg, and Ian Ratner, (2) ninety exhibits, and (3) certain deposition designations of Richard Rawson and John Stanton, including John Stanton's deposition testimony at 80:20-81:5.  See Holdings' Mem. at 7-8 n.3; Def. Insperity Holdings, Inc.'s Opp'n to Pls.' Mots. in Limine ("Holdings's Opp'n") [Doc. 214] at 2-3 & n.2.

[16] Plaintiffs identify the specific exhibits and portions of deposition designations in footnote 2 of their Motions *in Limine*.  See Pls.' Mots. *in Limine* at 3 n.2.

As Holdings explains in detail, the evidence that Plaintiffs challenge concerns the selection and retention of the higher-cost share classes for Plan investments.  See Holdings's Opp'n at 3-7.  For example, Plaintiffs seek to exclude Holdings's exhibits 36 and 903, emails regarding a spreadsheet "that calculates the effect of share class changes on the amount of rev[enue] sharing available to cover plan costs."  Id. at 4 n.3; Pls.' Mots. in Limine at 3 n.2; see generally Holdings's Ex. List [Doc. 200-9] at 3, 77.  Plaintiffs also seek to exclude Holdings's exhibits 390-392, a calendar appointment for a meeting "on Excess Revenue Allocation," emails regarding "Excess Revenue Policy, and a "Policy for Use of Revenue Sharing, respectively.  Holdings's Opp'n at 3 n.4; Pls.' Mots. in Limine at 3 n.2; see generally Holdings's Ex. List. at 29.  Because it appears that the evidence that Plaintiffs seek to exclude concerns the higher costs in the more expensive share classes, which is relevant to Counts III and V, Plaintiff's Motion in Limine is **DENIED** with respect to this evidence.[17]

---

[17] The parties dispute the effect of the Court's statement that, "[i]t is the fiduciary's burden to show the fees were reasonable."  Mar. 28, 2019, Order at 85 (citing Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1215 (2d Cir.1987)).  Plaintiffs contend that this Court has held that "[i]t is Defendants' burden to show that the additional $31 million in fee payments were necessary for Plan services and reasonable in amount."  See, e.g., Pls.' Mots. in Limine at 12-13; Pls.' Opp'n to Holdings's Mot. in Limine at 5-6, 8.  Defendants contend that Plaintiffs' interpretation is wrong as a matter of law.  Holdings's Opp'n at 8.

Although the Court's statement was not outcome determinative in the March 28, 2019, Order because the Court denied summary judgment on Count III, finding a genuine issue of material fact, see Mar. 28, 2019, Order at 87, the Court reiterates that to establish a claim for breach of fiduciary duty, Plaintiffs generally must show that Defendants are fiduciaries, that Defendants breached their fiduciary duties, and that the breach caused harm to Plaintiffs. See id. at 83 (citations omitted). Defendants are correct that the Court's citation to Lowen when addressing Plaintiff's breach of fiduciary duty claim in Count III was in error because Lowen concerned the burden of proof in an ERISA prohibited transaction claim, not a breach of fiduciary duty claim. See Lowen, 829 F.2d at 1215 (citation omitted) ("We believe that a fiduciary charged with a violation of [ERISA] Section 406(b)(3) either must prove by a preponderance of the evidence that the transaction in question fell within an exemption, or must prove by clear or convincing evidence that compensation it received was for services other than a transaction involving the assets of a plan. The burden is on the fiduciary for two reasons."); Ruppert v. Principal Life Ins. Co., 796 F. Supp. 2d 959, 973 n.14 (S.D. Iowa 2010) ("[T]he Second Circuit held in Lowen that the fiduciary has the burden to prove by a preponderance of evidence that an exemption applied to the transaction . . . ."); see also Pledger v. Reliance Tr. Co., 240 F. Supp. 3d 1314, 1336 (N.D. Ga. 2017) (collecting cases) (stating that the burden of proof is on the fiduciary to prove that a transaction prohibited by ERISA Section 406 qualifies for an exemption under ERISA Section 408). The Court previously granted summary judgment to Defendants on Plaintiffs' prohibited transaction claims, Counts VI and VII. See Mar. 28, 2019, Order at 41-49.

Furthermore, the Court recognizes that "[t]he Circuit Courts of Appeal are split on who bears the burden of demonstrating causation" for losses resulting from a breach of fiduciary duty under ERISA Section 409, and that at least one other court in this district has observed that "[i]t appears that the Eleventh Circuit allocates the burden of proving loss causation to the [p]laintiff," but the Court expresses no opinion on this issue because it was, and is not presently, before the Court. See Perez v. DSI Contracting, Inc., No. 1:14-CV-282-LMM, 2015 WL 12618779, at *5 (N.D. Ga. July 24, 2015) (citations omitted). The Court granted summary judgment to Defendants on Plaintiffs' breach of fiduciary duty claim in Count II because Plaintiffs had no admissible evidence of losses to the Plan as the result of

**B.     Exhibits Relating to Other Retirement Plans**

Defendants contend that Plaintiffs' potential trial exhibits relating solely to

other retirement plans, including the Insperity Corporate 401(k) Plan, the Insperity

Choice 401(k) Plan, and a Customized 401(k) Plan, should be excluded because

they are irrelevant to the remaining claims in this case.  Holdings's Mem. at 9-10.

Plaintiffs contend that "evidence as to the decisions and procedures that the same

fiduciaries employed in managing other similar retirement plans goes to the issue

of whether Defendants acted prudently in managing the Plan."  Pls.' Opp'n to

Holdings's Mot. *in Limine* at 9-10.  All of the challenged exhibits relate to other

Insperity 401(k) Plans.  See Holdings's Mem., Ex. 1.  Defendants do not contend

that these other Insperity 401(k) Plans are dissimilar to the Plan, nor do they

explain why evidence of the decisions that they made as fiduciaries in managing

these other Insperity 401(k) Plans is not relevant.  See generally Holdings's Mem.

at 9-10.

The Court agrees with Plaintiffs that evidence of the decisions that the

Defendants made as the fiduciaries of other similar retirement plans is relevant to

whether Defendants breached their duty of prudence in managing the Plan.  See

---

any breach; the Court did not opine as to whose burden it was to prove that losses

were caused by the breach.  See Mar. 28, 2019, Order at 82-84.

George v. Kraft Foods Global, Inc., 814 F. Supp. 2d 832, 853 (N.D. Ill. 2011)

(rejecting defendant's argument that because of "various differences between

defined benefit and defined contribution plans," "the shift in investment strategy

[that] may have made sense for the [d]efined [b]enefit [p]lan . . . cannot serve as a

valid point for comparison for evaluating what investments were offered in the

[defined contribution] [p]lan").[18]  Accordingly, Holdings's Motion *in Limine* is

**DENIED** with respect to exhibits relating to other retirement plans.

---

[18] Defendants' reliance on Slusarski v. Life Ins. Co. of N. Am., 632 F. Supp. 2d 159 (D.R.I. 2009) is misplaced.  In that case, plaintiff argued that "in order to ensure that Mr. Slusarski is treated consistently with other beneficiaries with regard to interest on withheld benefits, it is necessary to know the [d]efendants' practice or procedure to pay, or not pay, interest on withheld benefits."  Slusarski, 632 F. Supp. 2d at 168 (alteration accepted, internal citation omitted).  The court found that the insurance company's "practice or procedure with respect to paying interest on withheld benefits due under other plans is certainly not relevant.  [The insurance company]'s obligation is to apply 'plan provisions . . . consistently with respect to similarly situated claimants,' 29 C.F.R. § 2560.503-1(b)(5), meaning the provisions of this [p]lan, not all other plans."  Id.  The cited regulation, which "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries," is inapplicable here.  See 29 C.F.R. § 2560.503-1(a).  Furthermore, unlike the plaintiff in Slusarski, Plaintiffs are not contending that Defendants "have an obligation to be consistent," see Slusarski, 632 F. Supp. 2d at 168, but rather that the decisions Defendants made as fiduciaries of others plans may tend to show that they were imprudent in managing the Plan.  See Pls.' Opp'n to Holdings's Mot. *in Limine* at 9-10.

### C.    Buetow's Testimony Related to Damages for Count III

Regarding Count III, Buetow's opinion is that had Plan fiduciaries used the cheapest share classes available, the total fee savings would have been $31 million, and had Plan fiduciaries utilized available lower share classes, the plan would not have lost almost $32 million. Buetow Report ¶¶ 127-30. Defendants contend that Buetow is not qualified to give this opinion, that his methodology in reaching it is not sufficiently reliable, and that the testimony does not assist the trier of fact. Holdings's Mem. at 10-11.

Defendants contend that Buetow has "scant" relevant experience: Specifically, that "he has no experience in the selection of shares classes that provide revenue sharing to defray expenses of a defined contribution plan," "no experience serving as a fiduciary responsible for selecting investments for a defined contribution plan," and "no experience with one entity (Holdings) monitoring an investment expert[] (Reliance)['s] discretionary investment decisions." Id. at 11 (citations omitted). These challenges go to the weight of Buetow's testimony, not its admissibility, particularly since the Court will be the trier of fact. See supra part IV.A.

Defendants contend that Buetow's inexperience "leads to a flawed and incomplete analysis" in that Buetow ignores that Reliance intentionally selected

higher-cost share classes to provide revenue sharing to help offset the Plan's recordkeeping expenses. Holdings's Mem. at 12 (citation omitted). As the Court noted in its March 28, 2019, Order, the parties' experts disagree whether using revenue sharing was appropriate here, and Buetow's opinion is that prudent fiduciaries would have ensured that plan participants invested in the lowest share class of a selected fund. Mar. 28, 2019, Order at 86-87; see also Buetow Dep. at 171-72. The fact that Defendants and their expert disagree with Buetow does not mean Buetow is unqualified to give his opinion. The Court reaffirms that Buetow is qualified to testify as an expert. See supra part IV.A.

Defendants contend that Buetow does not use a reliable methodology because he fails to consider or address the use of revenue sharing from higher-cost share classes. Holdings's Mem. at 12-13. Defendants contend that the court in Sacerdote v. N.Y. Univ., 328 F. Supp. 3d 273 (S.D.N.Y. 2018), appeal filed, No. 18-2707 (2d Cir. Sept. 12, 2018), found Buetow's damages calculation unreliable for this reason. Id. at 13, 15. In that case, Buetow "was retained by plaintiffs to opine on the fiduciary process and investment decisions made by NYU and its officers and trustees." Sacerdote, 328 F. Supp. 3d at 311 n.110. The court discounted Buetow's testimony because "his analysis of fund performance did not account for a number of important factors and the Court is not persuaded that he

compared the funds in question to appropriate benchmarks." Id. (emphasis added).

The court found that Buetow "failed to adjust for cash and compared the fund to a

R[eal] E[state] I[nvestment] T[rust]." Id. at 311.  The court did not rely on

Buetow's damages calculations because it found that "Buetow d[id] not use

reliable economic methods to analyze damages related to the TIAA Real Estate

Account or appropriate benchmarks against which to measure damages; he also

fail[ed] to take into account that the annuities would not be mapped." Id. at 112.

Unlike the defendants in Sacerdote, Defendants here do not challenge

Buetow's analysis of Plan's funds' performance or contend that Buetow did not

compare the Plan's funds to appropriate benchmarks.  Buetow identifies twenty-

four Plan investment options that had lower cost share classes available that were

identical to the more expensive share classes in all material respects except for the

fees.  Mar. 28, 2019, Order at 86 (citing Buetow Report ¶¶ 128-29).  He concludes

that had the Plan fiduciaries used the lowest-cost classes available for each

investment option, Plan participants would have saved $31 million in fees.  Id.

(citing Buetow Report ¶ 127).  Defendants do not challenge Buetow's assertion

that these twenty-four funds were identical in all material respects except for the

fees.  Nor do they challenge Buetow's calculation of the difference in fees between

the lower cost shares and those used in the Plan.  Unlike in Sacerdote, there is no

indication that Buetow did not use a reliable methodology. Defendants' objection is that Buetow did not account for the fact that higher cost shares that used revenue sharing to reduce recordkeeping expenses and allegedly saved Plan participants money. This goes to one of the ultimate issues in this case—whether the Plan's investments charged excessive management fees—and not whether Buetow's methodology is reliable.

Defendants also contend that Buetow's opinion is not reliable because he does not identify any amount of revenue sharing that was unreasonable or excessive. Holdings's Mem. at 16. Plaintiffs agree that Buetow was not attempting to provide a calculation as to what amount of Plan fees were unreasonable or excessive. Pls.' Opp'n to Holdings's Mem. at 8. Defendants contend that without evidence that the Plan's expenses were unreasonable by some specific amount, there is no evidence that the amount of revenue sharing received from the higher-cost shares was unreasonable. Holdings's Mem. at 16. Thus, Defendants contend, there is no evidence that Plan participants were harmed by Defendants' use of the higher-cost shares. See id. at 16-17. Regardless of whether this logic is correct, the fact that Buetow does not identify any amount of revenue sharing that was unreasonable or excessive does not make his calculation of the

investment management fees that Plan participants would have saved had the Plan used the lower cost share classes unreliable.

Finally, Defendants contend that Buetow's opinion is not helpful to the Court because Buetow did not calculate the impact of the revenue sharing on Plan expenses. Id. at 17-18. Again, the parties' experts dispute whether using revenue sharing was appropriate and whether it increased costs and fees to Plan participants. See Mar. 28, 2019, Order at 86-87. Buetow's opinion is that "prudent fiduciaries ensure that plan participants are invested in the lowest share class of a selected fund." Id. at 86 (citing Buetow Report ¶ 128). Plaintiffs' expert Jania Stout appears to agree. Id. at 86-87 (citing Expert Report of Jania Stout [Doc. 163-157] ¶¶ 53, 55). Reliance's expert, Russell Wermers, found that "between 73 and 95 percent of the Plan's investment options had expense ratios less revenue sharing that were less than the median expense ratio of the minimum expense ratio share class of peer funds," and "between 91 and 100 percent of the Plan's investment options had expense ratios less revenue sharing that were less than the 80th percentile." Id. at 86 (citing Expert Report of Russell R. Wermers [Doc. 139-2] ¶ 117). Whether the Plan's investment options (including the higher cost share classes that used revenue sharing) charged excessive management fees, and whether Defendants breached their fiduciary duties by selecting those

44

investment options, are issues for trial. Proposed Joint Consolidated Pretrial Order at 12, 14, 16; Pretrial Order [Doc. 201] (adopting the Proposed Joint Consolidated Pretrial Order). Buetow's opinion is helpful to resolving those issues.

Accordingly, Holdings's Motion *in Limine* is **DENIED** with respect to Buetow's testimony.

## VII. CONCLUSION

For the forgoing reasons, it is hereby **ORDERED** that:

- Plaintiffs' Motion to Strike Defendants' Untimely *Daubert* Motions [Doc. 211] is **DENIED**.

- Plaintiffs' Motions *in Limine* [Doc. 207] are **DENIED**.

- Defendant Reliance Trust Company's Motion *in Limine* to Exclude Opinions of Plaintiffs' Expert Dr. Gerald Buetow [Doc. 208] is **GRANTED IN PART and DENIED IN PART**. The motion is **GRANTED** with respect to Buetow's opinion as to Reliance's motive for adding the Horizon Funds as Plan investment options. In all other respects, the motion is **DENIED**.

- Defendant Insperity Holdings, Inc.'s Omnibus Motion *in Limine* [Doc. 209] is **GRANTED IN PART and DENIED IN PART** as explained in part V of this Order.

**IT IS SO ORDERED** this 24th day of January, 2020.

_Mark H. Cohen_

MARK H. COHEN
United States District Judge

46