## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RONDA A. PLEDGER, *et al*.,

                                *Plaintiffs*,

v.

RELIANCE TRUST COMPANY, *et al*.,

                                *Defendants*.

Civil Action No.
1:15-cv-04444-MHC

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Plaintiffs brought this action against Reliance Trust Company (Reliance), Insperity, Inc., Insperity Holdings, Inc. (Holdings) and Insperity Retirement Services, L.P. (collectively the Insperity Defendants) alleging that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 (ERISA) by causing the Insperity 401(k) Plan (Plan) to invest in Reliance's proprietary Insperity Horizon Risk-Managed target date funds, causing the Plan pay unreasonable administrative and investment management fees, and for maintaining a low-yielding money market fund.[1]

After over four years of litigation, a two-week trial and protracted arm's-length

---

[1] Plaintiffs also named the "Insperity Retirement Plan Committee" and "John Does 1–20". The Court dismissed those defendants because a "Committee" did not exist, and Plaintiffs did not seek leave to substitute any individuals for the John Does. Doc. 197 at 1 n.1, 7 n.5.

negotiations with the assistance of a national mediator, Plaintiffs and Reliance have reached a proposed Settlement that provides nearly $40 million in monetary relief to Class members.[2] In light of the litigation risks further prosecution of this action would inevitably entail, Plaintiffs respectfully request that the Court (1) preliminarily approve the proposed Settlement, (2) approve the proposed form and method of notice to the Class, and (3) schedule a hearing at which the Court will consider final approval of the Settlement.

## BACKGROUND

### I.    Plaintiffs' claims

Plaintiffs filed their complaint on December 22, 2015. Doc. 1. They subsequently filed an amended complaint on April 15, 2016, Doc. 37, which is the operative complaint in this litigation. The amended complaint alleges Defendants disloyally and imprudently: used Reliance's proprietary Insperity Horizon Risk-Managed Funds (Horizon Funds) in the Plan (*id.* ¶¶61–74, Count I), imposed unreasonable recordkeeping and administrative fees (*id.* ¶¶75–85, Count II), imposed unreasonable investment management fees (*id.* ¶¶86–127, 137–44, Count III), and retained a minimally returning money market fund (*id.* ¶¶128–136, Count

---

[2] The fully executed settlement agreement dated October 12, 2020 ("Settlement") is attached to the Unopposed Motion for Preliminary Approval as Exhibit 1. Capitalized terms herein not otherwise defined are defined in the Settlement.

IV). Related to those counts, the amended complaint alleges Holdings failed to monitor fiduciaries (Count V), asserts prohibited transactions against Defendants (Count VI–VII), and seeks the right to other equitable relief under 29 U.S.C. §1132(a)(3) (Count VIII).

## II.    The status of the litigation

Since the filing of this case, the parties have engaged in over four years of hard-fought litigation. On May 16, 2016, Defendants filed motions to dismiss the amended complaint. Docs. 41, 43. The briefing was comprehensive. Defendants each filed 30-page memoranda of law, while attaching in total 21 exhibits consisting of hundreds of pages. Docs. 41-1 – 41-11, 43-1 – 43-16. Plaintiffs likewise filed lengthy oppositions to Defendants' motions. Docs. 51, 52. On March 7, 2017, the Court granted in part and denied in part Defendants' motions. Doc. 65. The Court dismissed Count IV (money market fund claim) and Count VIII (right to equitable relief under §1132(a)(3)). *Id.* at 44–45.

The parties then proceeded to merits discovery. On May 10, 2017, Plaintiffs served their first set of requests for production on Defendants. Docs. 79, 80. Defendants completed their document production in response to the first set of requests on October 6, 2017. Doc. 97 at 2. During discovery, Defendants produced approximately 98,000 documents consisting of over 500,000 pages. Declaration of Kurt Struckhoff, ¶3. Plaintiffs took 10 fact depositions of current and former

employees of Defendants. *Id.* ¶4. They also defended the depositions of the Named Plaintiffs who were deposed. *Id.* ¶5. Apart from fact discovery, the parties engaged in extensive expert discovery. Plaintiffs retained three experts, while Defendants retained four experts. Docs. 131-01, 132-1, 139-1, 163-156 – 163-162, 200-4 – 200-6.

Plaintiffs initially moved for class certification on June 1, 2017. Doc. 85. Prior to the deadline for Defendants to respond, the parties reached a Stipulation Regarding Class Certification And Adjudication Of Plaintiffs' Claims On A Class Basis. Doc. 94. The parties agreed that Plaintiffs' claims with regard to the proposed class were appropriate for certification under Federal Rule of Civil Procedure 23(b)(1). *Id.* at 4–7. The Court approved the Stipulation on November 7, 2017. Doc. 101. The Court certified the following class under Rule 23(b)(1): "All participants and beneficiaries of the Insperity 401(k) Plan from December 22, 2009 through September 30, 2017, excluding the Defendants." *Id.* at 4 (¶2).[3] The Court appointed Ronda A. Pledger, Sandra Britt, Jennifer Primm, Alex Brooks, Jr. and Edward Comer Buck as Class representatives and Schlichter Bogard & Denton LLP as Class Counsel. *Id.* at 4–5 (¶¶3, 5).

---

[3] Filed concurrently herewith, the Settling Parties move to modify the Class definition to effectuate the Settlement as follows: "All participants and beneficiaries of the Insperity 401(k) Plan from December 22, 2009 through March 31, 2019, excluding the Defendants."

Defendants moved for summary judgment on June 8, 2018. Docs. 133, 137. The record on summary judgment was voluminous. The parties filed 437 exhibits consisting of thousands of pages of documents, deposition transcripts, and declarations: the Insperity Defendants (104 exs.), Reliance (166 exs.), and Plaintiffs (167 exs.). Docs. 134-1, 137-119, 138-39, 163, 169-01 – 169-11, 173-14. The combined statements of facts were 437 pages for the Insperity Defendants' motion (Doc. 169), and 166 pages for Reliance's motion (Doc. 174). In connection with summary judgment, the Insperity Defendants also moved to exclude the testimony of two of Plaintiffs' experts. Docs. 170, 171-2.

On March 28, 2019, the Court granted in part and denied in part Defendants' motions. Doc. 196. The Court denied Defendants' motions with respect to Plaintiffs' claims that Defendants unlawfully added the Horizon Funds (Count I), caused the Plan to pay unreasonable investment fees (Count III), and Holdings failed to monitor Reliance's actions in the selection of the Horizon Funds and over the investment management fees (Count V). *Id.* at 93–94. The Court granted Defendants' motions with respect to all claims against Insperity, Inc. and Insperity Retirement Services, L.P. *Id.* at 89. The Court dismissed Plaintiffs' claim that Defendants breached their duty in retaining the Insperity Horizon funds, their claim that Defendants caused unreasonable recordkeeping fees to be charged to the Plan (Count II), their derivative duty to monitor claims asserted against Holdings

regarding the dismissed claims, and their prohibited transaction claims (Counts VI–VII). *Id.* at 90–92. The Court denied the Insperity Defendants' motion to exclude the proffered testimony of Plaintiffs' expert Jania Stout but granted their motion to exclude the proffered testimony of Plaintiffs' expert Michael Geist. Doc. 191 at 72.

The parties then proceeded with trial preparation. The parties submitted motions *in limine* to exclude certain evidence from trial. Docs. 207, 209. Reliance also moved to exclude the proffered testimony of Plaintiffs' expert Dr. Gerald Buetow. Doc. 208. The Court denied Plaintiffs' motion with respect to documents Reliance produced after summary judgment, denied Reliance's *Daubert* motion, and granted in part and denied in part the Insperity Defendants' motion to exclude certain evidence related to Count III. Doc. 225 at 45–46.

The parties submitted joint stipulated facts and trial briefs. Docs. 238–39, 241. Plaintiffs identified 18 will or may call witnesses (Doc. 200-4 at 5–7), Reliance identified 7 will or may call witnesses (Doc. 200-5), and the Insperity Defendants identified 18 will or may call witnesses (Doc. 200-6). The parties identified over 3,000 trial exhibits: Plaintiffs (2,379 exs., Doc. 200-7), Reliance (689 exs., Doc. 200-8), and the Insperity Defendants (924 exs., Doc. 200-9). Prior to trial, the parties reduced the number of exhibits on their exhibit lists: Joint Exhibits (402 exs.), Plaintiffs (1,568 exs.), Reliance (444 exs.), and the Insperity Defendants

(673 exs.). Struckhoff Decl. ¶6.

The trial commenced on March 2, 2020. Doc. 242. The parties tried complex factual and legal issues, and offered extensive evidence in support of their claims and defenses. The trial lasted two weeks, and ended on March 13, 2020. Doc. 251. Fourteen witnesses testified at trial (10 for Plaintiffs, and 4 for Defendants), and 794 exhibits were admitted into evidence. Doc. 276-1.[4] The trial transcript was 2,392 pages in length. Docs. 252–61. Following trial, the parties submitted their detailed Proposed Findings of Fact and Conclusions of Law on June 15, 2020. Docs. 266–68. Given the volume of the trial record, these submissions were very lengthy, consisting of 936 pages in total. *Id.*

### III.    Mediation and settlement negotiations

While Defendants' motions to dismiss were pending, the parties engaged in an in-person mediation before a nationally recognized mediator in Atlanta, Georgia. Struckhoff Decl. ¶7. The case did not settle. While there were occasional settlement communications among the parties thereafter (including around the time of trial), the parties did not resume serious settlement negotiations until several months after they submitted their Proposed Findings of Fact and Conclusions of Law. In particular, on August 17, 2020, settlement discussions between counsel for

---

[4] Defendants also elicited direct testimony from the fact witnesses called by Plaintiffs.

Reliance and counsel for Plaintiffs recommenced in earnest in coordination with the mediator. Sept. 16, 2020 Hearing Tr. 10:19–21. These discussions continued on and off thereafter without any genuine prospect of a resolution. Not until September 11, 2020 was there any serious indication of a possible settlement between Plaintiffs and Reliance, and the Court was alerted to this development quickly thereafter. *Id.* at 9:11–21. On September 18, 2020, the Settling Parties notified the Court that Plaintiffs and Reliance reached a settlement in principle to resolve all claims against all Defendants. The case was then administratively closed pending approval of the settlement. Doc. 279.

## IV.   The terms of the proposed Settlement

### A. Monetary relief

In exchange for releases and for the dismissal of the action and for entry of a judgment as provided for in the proposed Settlement, Reliance will make a substantial monetary payment of $39,800,000 (Gross Settlement Amount) to pay recoveries to Class members. Reliance will deposit this amount in an interest-bearing settlement account (Settlement Fund). The Settlement Fund will be used to compensate Class members for their alleged losses, as well as to pay Class Counsel's attorneys' fees and expenses, Administrative Expenses of the Settlement, and the Class Representatives' incentive awards if ordered by the Court. All amounts deposited in the Settlement Fund will be distributed in

accordance the terms of the proposed Settlement. No residual monies will revert back to Reliance.

The majority of Class members will automatically receive distributions directly into their tax-deferred retirement accounts. Those who already left the Plan and no longer have an active account will be given the option to receive their distributions in the form of a check made out to them individually or as a rollover into another tax-deferred account. As a result, most Class members will receive their distributions tax-deferred, further enhancing the significant monetary recovery.

### B. Statement as to non-monetary relief

In their Proposed Findings of Fact and Conclusions of Law, Plaintiffs requested certain non-monetary relief if the Court entered judgment against Defendants. Doc. 267 at 420–21. The material terms included the removal of Reliance as the Plan's discretionary trustee, a competitive bidding process to select Reliance's replacement, the requirement that if Holdings retains a third party with discretionary authority or control over the approval of expenses submitted by Insperity Retirement Services, that party shall not also have discretion over the Plan's investments, and any individual who exercises Holdings' discretionary authority shall not have responsibility over the financial results of Retirement Services. *Id.* at 420–21 (¶¶1–5).

Those non-monetary terms have been satisfied (or effectively satisfied) through

changes that have occurred with respect to the Plan. Reliance no longer has any relationship with the Plan. Sept. 16, 2020 Hearing Tr. at 17:3–9. Holdings replaced Reliance as the 3(38) investment manager with Rocaton Investment Advisors, LLC. Struckhoff Decl. ¶8, Ex. 2 at 67 (2018 Form 5500, Notes to Fin. Stmts. at 14 (§9)). Rather than the Directors of Holdings exercising discretionary authority or control over the Plan, Holdings modified the Plan and appointed the "Insperity Benefits Plan Committee" as the Plan administrator. *Id.* It is also Plaintiffs' understanding that Holdings hired another independent consultant to assist the Committee in carrying out its fiduciary responsibilities.

The voluntary changes regarding the fiduciary governance of the Plan provides substantial value to Class members. These changes ensure that Plan participants are provided a retirement plan that is administered loyally and prudently moving forward. This will benefit not only current Plan participants but also participants who later join the Plan. Because the non-monetary relief advocated by Plaintiffs has been effectively satisfied, it was not necessary for Plaintiffs to demand additional non-monetary terms as part of the settlement with Reliance or seek further relief from the Court as to their claims against Holdings.

### C. Notice and Class representatives' compensation

The Administrative Expenses to administer the proposed Settlement will be paid from the Settlement Fund. For expenses associated with the Settlement

10

Administrator who will send notice to Class members and provide other services to facilitate the Settlement, Plaintiffs received proposals from candidates to provide these services. After consideration of the proposed fees and the quality of the services to be provided by each candidate, Analytics LLC was selected as the Settlement Administrator at an estimated cost of $199,507.[5] In addition, Holdings selected Gallagher Fiduciary Advisors, LLC as the Independent Fiduciary to review the terms of the Settlement at a cost of $18,000.

Plaintiffs intend to seek incentive awards for the Class representatives in an amount approved by the Court. These awards will be paid from the Settlement Fund. Plaintiffs will request $25,000 for each Class Representative, Ronda A. Pledger, Sandra Britt, Jennifer Primm, Alex Brooks, Jr. and Edward Comer Buck. This amount is consistent with prior precedent recognizing the value of individuals stepping forward to represent a class, particularly in contested litigation like this where the potential benefit to any individual does not outweigh the cost of prosecuting class-wide claims and there are significant risks of no recovery and the risk of alienation from their employers and peers.[6] *E.g., Champs Sports Bar &*

---

[5] The proposed fees for the Settlement Administrator to provide notice to Class members and other related services to facilitate the settlement is estimated based on information presently available to the parties and is subject to change once the number of Class members and those with available email addresses is determined.

[6] Plaintiffs recognize the Eleventh Circuit recently reversed the grant of an incentive award to a class representative. *Johnson v. NPAS Sols., LLC*, ___ F.3d

*Grill Co. v. Mercury Payment Sys., LLC,* 275 F.Supp.3d 1350, 1356 (N.D. Ga. 2017) (Cohen, J.); *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (Story, J.); *In re Dun & Bradstreet Credit Servs. Customer Litig*., 130 F.R.D. 366, 374 (S.D. Ohio 1990); *see also Troudt v. Oracle Corp.*, No. 16-175, Doc. 236 at 9 (D. Colo. July 10, 2020); *Kelly v. Johns Hopkins Univ.*, No. 16-2835, 2020 WL 434473, at *8 (D.Md. Jan. 20, 2020); *Cassell v. Vanderbilt Univ.*, No. 16-2086, Doc. 174 at 5 (M.D. Tenn. Oct. 22, 2019); *Tussey v. ABB, Inc.,* No. 06-4305, 2019 WL 3859763, at *6 (W.D. Mo. Aug. 16, 2019); *Clark v. Duke Univ.,* No. 16-1044, 2019 WL 2579201, at *5 (M.D. N.C. June 24, 2019); *Kruger v. Novant Health, Inc*., No. 14-208, 2016 WL 6769066, at *6 (M.D. N.C. Sept. 29, 2016); *Spano v. Boeing Co*., No. 06-743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016). The total award requested for the Class representatives represents only 0.31% of Settlement Fund.

---

___, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020). The appellant-plaintiff Dickerson intends to file its request for panel rehearing or rehearing *en banc*, which is due on or before October 22, 2020. *Johnson,* No. 18-12344, Text Order (Sept. 28, 2020). In Plaintiffs' motion for attorneys' fees, reimbursement of expenses, and case contribution awards, they will address this opinion and its impact on Plaintiffs' request for incentive awards. At the preliminary approval stage, the Court does not need to address the merit of this request.

### D. Attorneys' fees and costs

In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Boeing Co. v. VanGemert*, 444 U.S. 472, 478 (1980). In this case, Class Counsel will request attorneys' fees to be paid out of the Settlement Fund in an amount not more than one-third of the Settlement Fund, or $13,266,667, as well as reimbursement for costs incurred of no more than $750,000.

Courts in this district have regularly approved fee awards of one-third in common fund cases. *See, e.g., Champs,* 275 F.Supp.3d at 1356; *George v. Acad. Mortg. Corp.*, 369 F.Supp.3d 1356, 1382 (N.D. Ga. 2019); *Lunsford v. Woodforest Nat'l Bank*, No. 12-103, 2014 WL 12740375-CAP, at *11 (N.D. Ga. May 19, 2014); *McLendon v. PSC Recovery Sys., Inc.*, No. 06-1770-CAP, 2009 WL 10668635, at *5 (N.D. Ga. June 2, 2009). In addition, a one-third fee to Class Counsel is provided for in the contract with the Class representatives. Declaration of Jerome J. Schlichter ¶4.

Although Class Counsel will not request a fee greater than one-third of the monetary recovery, Class Counsel will not seek compensation for time associated with communicating with Class members or Defendants during the Settlement Period, or work required to enforce the proposed Settlement. They also will not

seek attorneys' fees from the interest earned on the Gross Settlement Amount.

## ARGUMENT

The first step in approving any proposed settlement in a class action is preliminary approval. Manual for Complex Litigation, Fourth, §21.632, at 320–21 (Fed. Jud. Ctr. 2004). "At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the 'range of reasonableness.'" *Agnone v. Camden Cty., Georgia*, No. 14-24, 2018 WL 4937061, at *5 (S.D. Ga. Oct. 10, 2018), *report and recommendation adopted*, No. 14-24, 2018 WL 4937060 (S.D. Ga. Oct. 11, 2018) (citing 4 Newberg on Class Actions, §11.26 (4th ed. 2010)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies, and the settlement falls within the range of reason." *Agnone*, 2018 WL 4937061, at *5. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *Id*. (citing Manual for Complex Litigation, §30.42 (3rd ed. 1995)) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.").

At this stage, the Court reviews the proposed Settlement to determine whether it is sufficient to warrant public notice and a hearing. Manual for Complex

Litigation, Fourth, §13.14, at 172–73. If so, the final decision on approval is made after a "fairness" hearing. *Id*. The Court is not required at this preliminary stage to make any final determinations:

> The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id*. §21.632, at 321. The initial assessment can be made on the basis of information already known to the Court and then supplemented by briefs, motions, and an informal presentation from the settling parties. *Id*. at 320.

The Court should preliminarily approve the proposed Settlement because (i) the proposed Settlement is fair, reasonable, and adequate, and within the range of possible approval; (ii) the proposed Settlement has been negotiated in good faith at arm's length between experienced attorneys familiar with the legal and factual issues of this case; and (iii) with respect to the forms of notice of the material terms of the Settlement to class members for their consideration and reaction, that notice is appropriate and warranted. *See Prather v. Wells Fargo Bank, N.A*., No. 15-4231, 2017 WL 770132-SCJ, at *1 (N.D. Ga. Feb. 24, 2017); *Cross v. Wells Fargo Bank, N.A.,* No. 15-1270-RWS, 2016 WL 5109533, at *1 (N.D. Ga. Sept. 13, 2016).

## I.   The proposed Settlement is fair, reasonable, adequate, and within the range of possible approval.

The proposed Settlement is fair, reasonable, and adequate. As set forth above,

15

the Settlement provides monetary relief in the amount of $39,800,000—nearly a third of the damages they claimed at trial. In the opinion of Class Counsel, the settlement is fair, reasonable, and adequate. Schlichter Decl. ¶2. Independent of Class Counsel's opinion as to the reasonableness of the Settlement, the parties will submit the Settlement to an Independent Fiduciary, which will provide an opinion on the Settlement's fairness before the final fairness hearing.

Class Counsel conducted substantial investigation and analysis of over 500,000 pages of documents that occurred over four years. As part of Class Counsel's discovery practice in preparing the case for depositions, summary judgment and ultimately trial, the majority of these documents were electronically indexed and sorted, and thereafter individually examined, analyzed, and cataloged by an attorney. Class Counsel also thoroughly reviewed and analyzed materials provided by the Class representatives, and took numerous fact and expert witness depositions. This extensive investigation and discovery strongly weighs in favor of approval of the Settlement. *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 633 (11th Cir. 2015).

Apart from their diligent investigation, Class Counsel devoted significant time and effort to survive dismissal and summary judgment. But their efforts did not end there. Class Counsel fully prepared for trial and tried their claims over a two-week trial. The trial was complex and extensive. The trial record amply reflects the

dedication and perseverance of Class Counsel to recover losses to the Plan resulting from Defendants' alleged fiduciary breach. A settlement was not reached until the Settling Parties engaged in further arm's-length negotiations once the case was under submission. These circumstances strongly weigh in favor of the Settlement. *Cf. Henderson v. Thomas,* No. 11-224, 2013 WL 11318845, at *1 (M.D. Ala. Aug. 6, 2013) (granting preliminary approval after settlement reached after trial and entry of judgment).

The $39,800,000 Settlement represents important monetary relief to Class members they might not otherwise obtain. *Hall v. Bank of Am., N.A.,* No. 12-2700-FAM, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014). "The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain." *Gevaerts v. TD Bank, N.A*., No. 14-20744, 2015 WL 12533121, at *5 (S.D. Fla. Aug. 4, 2015), *accord*, *Columbus Drywall & Insulation, Inc. v. Masco Corp*., No. 04-3066, 2012 WL 12540344-JEC, at *6 (N.D. Ga. Oct. 26, 2012). That is particularly so here in this type of ERISA fiduciary breach litigation.

Although Plaintiffs sought at trial $127.7 million in alleged Plan losses, of which $91.8 million related to the addition of the Horizon Funds, obtaining a successful judgment for any amount was far from certain. Throughout the

litigation, both Defendants vigorously disputed that they breached any duty or were liable for any amount of losses. Their Proposed Findings of Fact and Conclusions of Law illustrate the relative strength of their defenses. Docs. 266–68. The risk to Plaintiffs that their claims might fail is underscored by the result of another trial handled by Plaintiffs' attorneys in a similar ERISA action. In *Sacerdote v. New York Univ.*, after an eight-day bench trial, the court entered judgment finding wholly in favor of the defendants and against the plaintiffs. 328 F.Supp.3d 273 (S.D.N.Y. 2018), *appeal pending,* No. 18-2707 (2d Cir.).

Moreover, in this case, there was a significant legal issue that the Court would have to decide before entering judgment—which party bears the burden regarding causation of losses from a breach of fiduciary duty. *See* Doc. 267 at 331–33; Docs. 238–39. If this question was resolved in Defendants' favor, it could have a profound impact on Plaintiffs' ability to obtain a successful judgment, particularly on the Horizon Funds claim. *See* Doc. 268-1 at 20–29, 64–81. This ruling alone would inevitably lead to an appeal by the unsuccessful party because the Eleventh Circuit has not yet weighed in on the issue.

Even if Plaintiffs prevailed on liability with respect to certain claims, they would not be guaranteed a recovery of the full extent of their claimed damages. Defendants' Proposed Findings of Fact and Conclusions of Law enumerate a number of objections to Plaintiffs' damages computations. The risk that Plaintiffs

18

might not receive the full measure of damages they claim despite a finding of liability is exemplified by the experience of Plaintiffs' counsel in a recent ERISA fiduciary breach action litigated through judgment. In *Ramos v. Banner Health,* following an eight-day bench trial, the court found that defendants breached their duties by allowing unreasonable recordkeeping expenses to be charged to the Plan. ___ F.Supp.3d ___, No. 15-2556, 2020 WL 2553705, at *25–26 (D. Colo. May 20, 2020), *appeal docketed*, No. 20-1231 (10th Cir.). However, the court only awarded $1.7 million to the Plan—out of $19 million in estimated losses claimed by Plaintiffs. *Id.* at *28,*32.

Even if Plaintiffs were to succeed on all their claims and computations of damages, the Class's recovery would still be uncertain due to the likelihood of a protracted appellate process. In *Tussey v. ABB, Inc.*, Plaintiffs' attorneys tried a 401(k) plan case for breach of fiduciary duty over four weeks in January 2010, which resulted in a favorable judgment in March 2012. No. 06-4305, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012). Among other findings, the court found that the defendants breached their duties in removing an established plan investment and mapping its assets to a target date fund option added to the plan. *Id.* at *17–26, *37. After *two* separate appeals to the Eighth Circuit and *two* remands to the district court concerning the proper measure of losses on plaintiffs' target date fund claim, the parties finally reached a settlement on March 28, 2019—more than *nine*

years after the case was tried. *Tussey*, No. 06-4305, Doc. 859 (W.D. Mo. Mar. 28,

2019); *Tussey v. ABB, Inc*., 746 F.3d 327 (8th Cir. 2014); *Tussey v. ABB, Inc*., 850

F.3d 951 (8th Cir. 2017).

*Tibble v. Edison Int'l* is another example of a case handled by Plaintiffs'

attorneys illustrating the uncertainties posed by the appellate process in this type of

fiduciary breach litigation. In 2010, the court entered a limited judgment in favor

of plaintiffs related to defendants' retention of certain higher-cost share classes of

the plan's mutual funds. *Tibble v. Edison Int'l*, No. 07-5359, 2010 WL 2757153

(C.D. Cal. July 8, 2010). Following the bench trial, the case was appealed to the

Ninth Circuit, which affirmed the district court's orders. The plaintiffs then

successfully petitioned the Supreme Court for certiorari, which unanimously ruled

in favor of plaintiffs and remanded to the Ninth Circuit panel. The Ninth Circuit

sitting *en banc* unanimously reversed the panel decision affirming the district

court's orders and remanded to the district court for further proceedings. *See Tibble*

*v. Edison Int'l,* No. 07-5359, 2017 WL 3523737, at *3–7 (C.D. Cal. Aug. 16,

2017) (summarizing case history). After the second trial on remand, on August 16,

2017, the court found in favor of plaintiffs on their share class claim involving all

funds at issue. *Id.* at *15. However, due to a subsequent appeal, judgment was not

entered until October 25, 2018—over eight years after the first trial. *Tibble,* No.

07-5359, Doc. 602 (C.D. Cal. Oct. 25, 2018).

20

By contrast, with a settlement, rather than "having to wait as long as a decade as other classes in similar 401(k) cases have to do," Class members will receive compensation and be able to invest their proceeds immediately in a tax-deferred vehicle, which adds more value. *Kruger*, 2016 WL 6769066, at *5. The Investment Company Institute estimates that the benefit of the present value of tax deferral for 20 years is an additional 18.6%,[7] so the actual value to the Class of the monetary relief is $47,202,800. Based on the risk of non-payment to the Class and the strong likelihood of a protracted appellate process, the Settlement therefore appropriately values Plaintiffs' claims given that "continued litigation with its risks and costs are outweighed by the benefits of the settlement." *Ressler v. Jacobson*, 822 F.Supp. 1551, 1553 (M.D. Fla. 1992).

## II.     The Settlement has been negotiated in good faith at arm's-length between experienced attorneys familiar with the legal and factual issues of this case.

There is a strong initial presumption that a proposed class action settlement is fair and reasonable when it is the result of arm's-length negotiations. *Carpenters Health & Welfare Fund v. Coca-Cola Co.,* No. 00-2838-WBH, 2008 WL

---

[7] Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral; *Abbott v. Lockheed Martin Corp.*, No. 06-701, Doc. 497 at 37 (ECF 47) (S.D. Ill. Apr. 14, 2015) (Report of the special master) (citing ICI report).

11336122, at *8 (N.D. Ga. Oct. 20, 2008). As described above, the Settlement is the result of lengthy and complex arm's-length negotiations between the Settling Parties. These negotiations continued over an extended period and included the involvement of an experienced, independent mediator. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-2800-TWT, 2020 WL 256132, at *6 (N.D. Ga. Mar. 17, 2020) (quoting *Ingram*, 200 F.R.D. at 693 (presence of "highly experienced mediator" pointed to "absence of collusion")).

In evaluating class action settlements, the "Court is entitled to rely upon the judgment of experienced counsel for the parties . . . [and] should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also In re Motorsports Merch. Antitrust Litig.*, 112 F.Supp.2d 1329, 1333 (N.D. Ga. 2000) (same). It is recognized that the opinion of experienced and informed counsel supporting the settlement is entitled to considerable weight. *Holmes v. Cont'l Can Co.,* 706 F.2d 1144, 1149 (11th Cir. 1983).

Counsel on both sides are experienced and thoroughly familiar with the factual and legal issues presented. Class Counsel is the "preeminent firm" in 401(k) plan litigation having "achieved unparalleled results on behalf of its clients" in the face of "enormous risks". *Nolte v. Cigna Corp.,* No. 07-2046, 2013 WL 12242015, at *3–4 (C.D. Ill Oct. 15, 2013). The firm is the "pioneer and the leader in the field of

22

retirement plan litigation." *Abbott v. Lockheed Martin Corp.,* No. 06-701, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015). They are "experts" in the field. *Krueger v. Ameriprise Fin., Inc*., No. 11-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015); *Tussey v. ABB, Inc*., No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012) ("Plaintiffs' attorneys are clearly experts in ERISA litigation."). It is Class Counsel's opinion that the Settlement is fair and reasonable. Schlichter Decl. ¶2.

### III. The proposed notices are adequate, appropriate, and warranted.

Due process and Federal Rule of Civil Procedure 23(e) do not require that each Class member receive notice, but do require that the class notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co*., 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974).

The proposed form and method of notice of the proposed Settlement satisfy all due process considerations and meet the requirements under Rule 23(e)(1). Plaintiffs' proposed forms of settlement notices are attached to the Settlement Agreement. The proposed settlement notices will fully apprise Class members of the existence of the lawsuit, the Settlement, and the information they need to make

informed decisions about their rights, including (i) the terms of the Settlement; (ii) the nature and extent of the Release; (iii) the maximum attorneys' fees and expenses that will be sought by Class Counsel; (iv) the procedure and timing for objecting to the Settlement and the right of the Settling Parties to seek limited discovery from objectors; (v) the date and place of the final fairness hearing; and (vi) the website on which the full settlement documents, and any modifications to those documents, will be posted.

The notice plan consists of multiple components designed to reach Class members. First, the Settlement Notice will be sent by electronic email to all Class members who have a current email address known to Holdings and/or the Plan's recordkeeper and by first-class mail to the current or last known address of all Class members for whom there is no current email address shortly after entry of the Preliminary Approval Order. Addresses of the Class members are maintained by the Plan's recordkeeper and Holdings, who use this information for, among other things, mailing Plan notices and other Plan-related information.

Second, Class Counsel will develop a dedicated website solely for the Settlement, and a link to that website will appear on Class Counsel's website (www.uselaws.com). The notice plan also includes a follow-up requirement for the Settlement Administrator to take additional action to reach those Class members whose notice letters are returned as undeliverable. Thus, the form of notice and

24

proposed procedures for notice satisfy the requirements of due process, and the

Court should approve the notice plan as adequate.

## CONCLUSION

The Court should grant the Settling Parties' Unopposed Motion for Preliminary

Approval of Class Settlement.

October 12, 2020                    /s/ Jerome J. Schlichter
                                    SCHLICHTER BOGARD & DENTON LLP
                                    Jerome J. Schlichter (*pro hac vice*)
                                    Troy A. Doles (*pro hac vice*)
                                    Kurt C. Struckhoff (*pro hac vice*)
                                    100 South 4th Street, Suite 1200
                                    St. Louis, MO 63102
                                    Phone: 314- 621-6115
                                    Fax: 314-621-5934
                                    jschlichter@uselaws.com
                                    tdoles@uselaws.com
                                    kstruckhoff@uselaws.com

                                    Bradley S. Wolff, GA No. 773388
                                    SWIFT, CURRIE, McGHEE, & HIERS, LLP
                                    1355 Peachtree St., N.E., Ste. 300
                                    Atlanta, GA 30309-3231
                                    Phone: (404) 874-8800
                                    Fax: (404) 888-6199

                                    *Counsel for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Under the Civil Local Rules of Practice for the United States District Court for the Northern District of Georgia, this is to certify that the foregoing document complies with the font and point selections approved by the Court in Local Rule 5.1.C. The foregoing was prepared on computer using Times New Roman font (14 point).

/s/ Jerome J. Schlichter
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on October 12, 2020, I caused to be served a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties to this matter via electronic notification.

/s/ Jerome J. Schlichter
Attorney for Plaintiffs