IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**RONDA A. PLEDGER, SANDRA**
**BRITT, JENNIFER L. PRIMM,**
**ALEX BROOKS, JR., and**
**EDWARD COMER BUCK,**
**individually and as representatives of**
**a class of similarly situated person of**
**the Insperity 401(k) Plan,**

    **Plaintiffs,**

**v.**

**RELIANCE TRUST COMPANY,**
**and INSPERITY HOLDINGS, INC.,**

    **Defendants.**

**CIVIL ACTION FILE**

**NO. 1:15-CV-4444-MHC**

## ORDER GRANTING FINAL APPROVAL OF SETTLEMENT, AND AWARDING ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE AWARDS

On October 12, 2020, Plaintiffs and Defendant Reliance Trust Company

("Reliance") reached a proposed class action settlement resolving Plaintiffs'

claims.  Class Action Settlement Agreement ("Settlement Agreement") [Doc. 280-

2].  On October 14, 2020, this Court issued an order for preliminary approval of

the Settlement Agreement and directed that notice issue to the settlement class.

Oct. 14, 2020, Order ("Preliminary Approval Order") [Doc. 286].  This case is

before the Court on Plaintiffs' and Reliance's Motion for Final Approval of Class

Settlement [Doc. 290] and Plaintiffs' Motion for Award of Attorneys' Fees, Class

Representative Awards and Expenses [Doc. 289].  For the reasons set forth below,

and after considering the entire record and the record of the Fairness Hearing held

on March 5, 2021, the Court hereby orders as follows.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs are participants in the Insperity 401(k) Plan (the "Plan"), a defined

contribution, individual account, employee pension retirement benefit plan under

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§§ 1001-1461.  At all relevant times during the period prior to the initiation of this

litigation, Reliance was the Plan's trustee and assumed responsibility for selecting

and monitoring the Plan's investment options and for reviewing recordkeeping and

other expenses to be charged against Plan assets.

Plaintiffs filed their Complaint on December 22, 2015 [Doc. 1] and

subsequently filed an Amended Complaint on April 15, 2016 [Doc. 37], which is

the operative complaint in this case.  The Amended Complaint named as

defendants Reliance, Insperity, Inc., Insperity Holdings, Inc. ("Holdings"), and

Insperity Retirement Services, L.P. ("Retirement Services") (collectively, the

"Insperity Defendants"), and alleged that these defendants breached their fiduciary

duties and conducted prohibited transactions under ERISA: (1) by selecting untested proprietary funds (the "Horizon Funds") as investment options for the Plan and retaining those funds despite their poor performance, which benefited Defendants at the expense of participants (id. ¶¶ 61-74, 170-74) (Count I); (2) by paying Retirement Services, the Plan's recordkeeper, excessive administrative expenses, and failing to monitor and control the amount of those administrative expenses (id. ¶¶ 75-85, 176-80) (Count II); (3) by providing to the Plan investment options that contained unreasonable management fees when cheaper versions of the same investments were available to the Plan, as were other high-quality, low-cost institutional alternatives (id. ¶¶ 86-127, 182-89) (Count III); (4) by retaining a minimally returning money market fund (id. ¶¶ 128-136, 191-96) (Count IV); (5) by failing to properly monitor the Plan's fiduciaries (id. ¶¶ 128-136) (Count V); (6) by engaging in prohibited transactions with a party in interest by putting proprietary investments in the Plan, causing the Plan to pay unreasonable compensation to Retirement Services, and providing the Plan unduly expensive investment options (id. ¶¶ 205-09) (Count VI); and (7) by engaging in prohibited fiduciary self-dealing through the use of proprietary investment options in the Plan and the use of Retirement Services as the Plan's recordkeeper (id. ¶¶ 211-17)

(Count VII).  The Amended Complaint also sought other equitable relief based on

receipt of ill-gotten gains (id. ¶¶ 219-26) (Count VIII).

This case was litigated for over four years.  Defendants filed motions to

dismiss the Amended Complaint on May 16, 2016 [Docs. 41, 43], which this Court

granted in part and denied in part on March 7, 2017, resulting in the dismissal of

Counts IV and VIII of the Amended Complaint, as well as those claims in Count II

related to the initial selection of Retirement Services as the Plan's recordkeeper.

Pledger v. Reliance Tr. Co., 240 F. Supp. 3d 1314, 1334, 1336 (N.D. Ga. 2017).

As stated by Gallagher Fiduciary Advisors, LLC, the Independent Fiduciary

selected to review the terms of the Settlement Agreement,

> [t]he parties then proceeded to merits discovery.  During discovery,
> Defendants produced approximately 98,000 documents consisting of
> over 500,000 pages.  Plaintiffs took 10 fact depositions of current and
> former employees of Defendants.  They also defended the depositions
> of the named plaintiffs who were deposed.  Apart from fact discovery,
> the parties engaged in extensive expert discovery.  Plaintiffs retained
> three experts, while Defendants retained four experts.

Jan. 29, 2021, Report of Gallagher Fiduciary Advisors, LLC ("Gallagher Report")

[Doc. 290-3] at 3, attached as Ex. 1 to Decl. of Kurt C. Struckhoff ("Struckhoff

Decl.") [Doc. 290-2].

On June 1, 2017, Plaintiffs moved for class certification [Doc. 85].  Prior to

the deadline for response, the parties stipulated to the proposed class [Doc. 94]

and, on November 7, 2017, the Court approved the parties' stipulation [Doc. 101].

The Court certified the following class under Rule 23(b)(1) of the Federal Rules of

Civil Procedure: "All participants and beneficiaries of the Insperity 401(k) Plan

from December 22, 2009 through the date of judgment, excluding the Defendants."

Nov. 7, 2017, Order at 1-2. The Court appointed Plaintiffs as class representatives

and Schlichter Bogard & Denton LLP as class counsel. Id. at 4-5.

On June 8, 2018, Defendants filed their motions for summary judgment,

which included large numbers of exhibits [Docs. 133, 137]. The Insperity

Defendants also filed motions to exclude the testimony of two of Plaintiffs' experts

[Docs. 170, 171-2]. On March 28, 2019, the Court entered a ninety-four page

order that (1) granted the motions for summary judgment as to (a) all claims as to

Insperity, Inc. and Insperity Retirement Services, L.P., (b) Count I as to Plaintiffs'

breach of the duty of prudence claim regarding the retention of the Horizon Funds,

(c) Counts II, VI, and VII, and (d) Count V as to Holdings' breach of the duty to

monitor Reliance, except as to the alleged breach of the duties of loyalty and

prudence in adding the Horizon Funds and in the alleged breach of prudence in

allowing the Plans to pay unreasonable management fees; and (2) denied the

motions for summary judgment as to (a) Count I as to Plaintiffs' breach of the

duty of loyalty claim and breach of the duty of prudence claim regarding the

addition of the Horizon Funds, (b) Count III, and (c) Count V as to Holdings'
breach of the duty to monitor Reliance as to the alleged breach of the duties of
loyalty and prudence in adding the Horizon Funds and in the alleged breach of
prudence in allowing the Plan to pay unreasonable management fees. Pledger v.
Reliance Tr. Co., No. 1:15-CV-4444-MHC, 2019 WL 10886802, at *30 (N.D. Ga.
Mar. 28, 2019). The Court also denied the Insperity Defendants' motion to
exclude the testimony of Plaintiffs' expert Jania Stout but granted the motion to
exclude the testimony of Plaintiffs' expert Michael Geist [Doc. 191]. Id., 2019
WL 4439606, at *26 (N.D. Ga. Feb. 25, 2019).

The parties then proceeded with trial preparation, and Defendants submitted
motions *in limine* to exclude certain evidence and testimony at trial [Docs. 207-
209]. The Court entered its order on the motions *in limine* on January 24, 2020.
Pledger v. Reliance Tr. Co., No. 1:15-CV-4444-MHC, 2019 WL 6101409, at *16
(N.D. Ga. Jan. 24, 2020). The trial commenced on March 2, 2020, and lasted two
weeks, ending on March 13, 2020. Fourteen witnesses testified at trial and 794
exhibits were admitted into evidence. The trial transcript was nearly 2,400 pages
in length [Dos. 252-261]. On June 15, 2020, the parties submitted their proposed
findings of fact and conclusions of law [Docs. 266-268].

On September 16, 2020, the Court was alerted to the possibility of a

settlement in this case.  See Tr. of Sept. 16, 2020, Telephonic Status Conference

[Doc. 283].  On September 18, 2020, Plaintiffs and Reliance notified the Court that

they had reached a settlement in principle to resolve all claims against all

Defendants.  The case was then administratively closed pending approval of the

settlement [Doc. 279].

## II.  TERMS OF THE SETTLEMENT[1]

The following are the material terms of the Settlement Agreement:

### A.  The Settlement Class

The settlement class is defined as follows:  "All participants and

beneficiaries of the Insperity 401(k) Plan from December 22, 2009 through March

31, 2019, excluding the Defendants."[2]  The settlement class includes any

"Beneficiary" (as separately defined in the Settlement Agreement) of a deceased

---

[1] The parties have reported to the Court that there are certain voluntary non-monetary changes involving the Plan that resolved previous requests for non-monetary relief which are not a part of the Settlement Agreement, including the replacement by Holdings of Reliance as the 38(3) investment manager with Rocaton Investment Advisors, LLC, and the appointment of the "Insperity Benefits Plan Committee" as the Plan administrator, all of which "provide substantial benefit to Class members."  Mot. for Final Approval of Class Settlement at 7.

[2] See Oct. 14, 2020, Order Granting Unopposed Mot. to Modify the Class Definition [Doc. 285].

person who participated in the Plan at any time during the Class Period, and/or

"Alternative Payee" (as separately defined in the Settlement Agreement), in the

case of a person subject to a Qualified Domestic Relations Order who participated

in the Plan at any time during the Class Period.

## B.    The Settlement Fund

Reliance will pay $39,800,000 into an interest-bearing account ("Settlement

Fund") to compensate Class Members for their alleged losses, attorneys' fees and

expenses, class representatives' fees, and notice and administration costs.

Settlement Agreement §§ 2.27, 5.1-5.9.  No settlement funds will revert to any

Defendant.  Id. § 6.14.  The majority of Class Members will automatically receive

distributions directly into their tax-deferred retirement accounts.  Id. § 6.5.  Those

who already left the Plan and no longer have an active account will be given the

option to receive their distributions in the form of a check made out to them

individually or as a rollover into another tax-deferred account.  Id. §§ 6.7-6.8.  This

means that most Class members will receive their distributions tax-deferred.  The

Gross Settlement Amount will be distributed within 120 calendar days after the

date of this Order.  Id. §§ 2.41, 5.7.  The Settlement Agreement contains detailed

provisions as to the calculation of settlement payments.  Id. § 6.4.  If money

8

remains in the fund after distributions, it will be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan. Id. § 6.14.

## C.    Approval of Class Notice

The notice plan was developed by Class Counsel and implemented by Analytics Consulting, LLC ( "Analytics").  See Settlement Agreement, Ex. 3; Decl. of Analytics Consulting, LLC ("Analytics Decl.") [Doc. 290-4].  In accordance with the Preliminary Approval Order, Settlement Notice was timely distributed by electronic or first-class mail to all Class Members who could be identified with reasonable effort, and Settlement Notice was published on the Settlement Website maintained by Class Counsel.  In addition, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1711, et seq., notice was provided to the Attorneys General for each of the states in which a Class Member resides, the Attorney General of the United States, and the United States Secretary of Labor.

The Court finds that the form and methods of notifying the Class Members of the terms and conditions of the proposed Settlement Agreement met the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure, any other applicable law, and due process, and constituted the best notice practicable under the circumstances; and due and sufficient notices of the Fairness Hearing and the

rights of all Class Members have been provided to all people, powers, and entities entitled thereto. The Class has been notified of the Settlement Agreement pursuant to the plan approved by the Court. The Court further finds that all requirements of CAFA have been met. Class Members had the opportunity to be heard on all issues regarding the resolution and release of their claims by submitting objections to the Settlement Agreement to the Court.

After obtaining data files containing contact information for Class Members, Analytics caused the settlement notice to be mailed or e-mailed to 222,721 Class Members, and undertook additional efforts to notify 4,927 Class Members whose notices were returned as un-deliverable. Analytics Decl. ¶¶ 7-10. Analytics also established and maintained a toll-free phone number to provide Class Members with additional information regarding the Settlement Agreement, and 2,456 calls were received. Id. ¶ 11. The notice specified that Plaintiffs would seek up to $13,266,667 in attorneys' fees, up to $750,000 to reimburse litigation costs, and $25,000 incentive awards to each of Plaintiffs' Class Representatives. Id. ¶ 11, Ex. B.

The Settlement Website (www.Insperity401kplansettlement.com) was first published on October 15, 2020, and has been maintained and updated continuously

10

by Class Counsel.  Struckhoff Decl. ¶ 3.  Class Counsel has published on that

website the Amended Complaint, the Settlement Agreement (and Amendment),

Plaintiffs' Motion and Memorandum in Support of Preliminary Approval, their

Motion and Memorandum in Support of their Motion for Attorneys' Fees, Class

Representative Awards and Expenses, the Court's Orders granting preliminary

approval and modification of the Class definition, participant notices and claim

forms, and other documents related to the Settlement Agreement.  Id.

Class Members had the opportunity to be heard on all issues regarding the

resolution and release of their claims by submitting objections to the Settlement

Agreement to the Court.  The Preliminary Approval Order allowed Class Members

up to February 3, 2021 (30 days before the Fairness Hearing) to object to any

aspect of the Settlement Agreement, the Plan of Allocation of the net settlement

amount, the proposed award of attorneys' fees and costs, or the incentive awards to

the Class Representatives.  Preliminary Approval Order at 14-16.  No Class

Member filed a timely objection to the Settlement Agreement, meaning that the

support for the Settlement Agreement was unanimous.  One Class Member filed an

untimely non-substantive objection, which will be addressed below.

Gallagher Fiduciary Advisors, LLC ("Gallagher") was appointed as the

Independent Fiduciary and charged with the responsibility to determine

11

independently whether to approve and authorize the settlement of released claims

on behalf of the Plan and whether the Settlement Agreement satisfies the

requirements of the Prohibited Transaction Class Exemption 2003-39 (the "Class

Exemption").  Settlement Agreement § 2.28; Struckhoff Decl. ¶ 4; Gallagher

Report at 1.  The Gallagher Report concluded that the terms of the Settlement

Agreement meet the requirements of the Class Exemption and that it was achieved

at arms-length and is reasonable given the uncertainties of a larger recovery for the

Class at trial and the value of claims foregone.  Gallagher Report at 2-6.

> **D.    Attorneys' Fees, Expenses of Litigation, and Class Representative Awards**

Class Counsel have applied for a percentage-based attorneys' fee of

$13,266,266 (one-third of the monetary recovery), reimbursement of $705,172.30

in litigation expenses, and Class Representative awards of $25,000 for each of the

five Class Representatives.  These amounts are in accordance with the terms of the

Settlement Agreement.  For the reasons more fully set forth below, under

prevailing precedent and the circumstances of this case, the requests will be

approved.

## III.    FINAL APPROVAL OF PROPOSED SETTLEMENT

After consideration of the Settlement Agreement, the arguments and

authorities presented by the parties, the arguments at the Fairness Hearing on

March 5, 2021, and the entire record in this case, the Court reaffirms its findings in the Preliminary Approval Order and finds that Settlement Agreement is fair and reasonable.

"[I]n order to approve a settlement, the district court must find that it 'is fair, adequate, and reasonable and is not the product of collusion between the parties.'" Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984) (quoting Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977)).  In addition, the United States Court of Appeals for the Eleventh Circuit has directed district courts to consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Id.

In this case, the Court finds that there were substantial hurdles that Plaintiffs faced in succeeding on the merits of their claims.  Throughout this case, Defendants vigorously disputed that they breached any fiduciary duty or were liable for any losses to Plaintiffs.  The Court narrowed the scope of the Amended Complaint significantly prior to trial.  It is entirely possible that Plaintiffs would not have prevailed on establishing liability on the part of Defendants after the two-

13

week trial of this case given the uncertainty as to the Court's factual findings. The

questionable likelihood of success also affects the possible range of recovery

because, even if Plaintiffs prevailed on liability with respect to one or more claims,

they would not be assured of a recovery to the full extent of claimed damages.

This case was complex, expensive, and time-consuming which, when combined

with the uncertainty of recovery, meant that the range of possible recovery

included amounts far less than those agreed to in the Settlement Agreement. In

addition, even assuming that Plaintiffs succeeded establishing liability and

recovered all damages sought, the case would have likely undergone a protracted

appellate process with an affirmance of the district court's decision far from

certain. The stage of the proceedings also weighs in favor of the Settlement

Agreement. The case was litigated extensively for over four years and after a two-

week trial where the parties were able to fully consider the factual issues presented

by both sides. Finally, the fact that no Class member filed a timely objection to the

Settlement Agreement is a strong indicator as to its adequacy. All of the Bennett

factors weigh in favor of granting final approval.

     The Court also finds that the terms of the Settlement Agreement are fair,

reasonable, and adequate within the meaning of Federal Rule of Civil Procedure

23(e)(2). The Class Representatives and Class Counsel have adequately

represented the Class.  The interests of the Class Representatives are aligned with

those of the other members of the Class because they are all participants in the Plan

during the relevant time period.  The Settlement Agreement was not the product of

fraud or collusion but negotiated at an arms-length formal mediation conducted by

a neutral, highly respected mediator.  The relief provided to the class is adequate,

taking into account the complexity of the case and the likelihood of a protracted

appeal regardless of the Court's decision after trial.  The size of the settlement is

one of the largest of its type, and continued litigation would have likely involved

additional significant attorneys' fees and expenses inherent with an appeal with a

final resolution potentially years later.  Current participants in the Plan will not be

required to submit claims to receive relief as outlined in the Settlement Agreement

and all Class Members are treated equally relative to each other.

Based on the foregoing, the Court hereby finally **APPROVES** in all respect

the Settlement Agreement, and finds that the Settlement Agreement and the plan

for distribution of the Settlement Fund is in all respects fair, reasonable, and

adequate, and are in the best interest of the Class Members.

## IV.   ATTORNEYS' FEES, EXPENSES OF LITIGATION AND CLASS REPRESENTATIVE AWARDS

The Court hereby **GRANTS** to Class Counsel a fee in the amount of

$13,266,666, litigation expenses in the amount of $705,172.30, and Class

Representative awards of $25,000 for each of the five Class representatives, which

the Court finds to be fully supported by the facts and applicable law.  These

amounts shall be paid from the Settlement Fund.

### A.    Attorneys' Fees

The Court finds that the parties' agreement with regard to the payment of

fees was not negotiated while they were negotiating the other terms of the

Settlement Agreement and that the agreement with regard to the payment of fees

and expenses was not the product of collusion or fraud.  The requested attorneys'

fee is justified under the percentage of the common fund approach adopted by the

Eleventh Circuit in Camden I Condo. Ass'n, Inc. v. Dunkle, 946 F.2d 768 (11th

Cir. 1991).  The fee represents one-third of the $39.8 million settlement.  In

approving the requested fee, the Court has carefully considered the factors listed in

Camden I, including the time and labor involved; the novelty and difficulty of the

questions involved; the skill needed to perform the services properly; the

preclusion of other employment; the customary fee; the fact that the fee was

entirely contingent on a successful outcome; the time limitations imposed by the

circumstances; the amount involved and the results obtained; the experience,

reputation and ability of the attorneys; awards in similar cases; the objections by

Class Members; the risks undertaken by Class Counsel; the economics involved in

prosecuting class actions; and the other relevant circumstances.  The record shows that all of these factors support the requested fee.

### 1.    The Time and Labor Required

The Court has observed the intense amount of time and labor required to prosecute the claims in this case.  Class Counsel spent just under 18,000 hours prosecuting this action from its investigative stage, through the filing of the Complaint and Amended Complaint, responding to motions to dismiss, engaging in extensive discovery, responding to motions for summary judgment, and preparing for and conducting a trial which took two weeks to conclude.  See Decl. of Troy A. Doles ("Doles Decl.") [Doc. 289-4] ¶ 5.  The Court finds that the work that Class Counsel have done is justified in view of the issues, the complexity and importance of the case, the manner in which the case was defended, the quality and sophistication of Class Counsel, the result, and the magnitude of the settlement. This factor weighs in favor of Plaintiffs' fee request.

### 2.    The Novelty and Difficulty of the Relevant Questions

"ERISA litigation of this type is a rapidly evolving, complex, and demanding area of the law."  In re BellSouth Corp. ERISA Litig., No. 1:02-CV-2440-JOF, 2006 WL 8431178, at *7 (N.D. Ga. Dec. 5, 2006).  Effectively and successfully litigating an ERISA breach of fiduciary action requires a specialized

knowledge and expertise that was demonstrated by Class Counsel.  This litigation involved highly technical knowledge of investment plans, investment knowledge, and industry practices.  The difficulty of the questions posed is borne out by recent decisions that have been decided against claims of breach of fiduciary duties.  See, e.g., Cunningham v. Cornell Univ., No. 16-cv-6525, 2019 WL 4725876, at *18 (S.D.N.Y. Sept. 19, 2019) (granting summary judgment for the defendants and rejecting allegations of a breach of fiduciary duty with respect to retail share class funds); Divane v, Northwestern Univ., No. 16 C 8157, 2018 WL 2388118, at *7-11 (N.D. Ill. May 25, 2018) (granting motion to dismiss breach of fiduciary claims related to change in investment options for ERISA-defined contribution plans), aff'd, 953 F.3d 980 (7th Cir. 2020).  This factor weighs in favor of Plaintiffs' fee request.

### 3.    The Skill Needed to Perform the Services Properly and the Experience, Reputation, and Ability of the Lawyers

This case required a high level of experience and skill.  Class Counsel are highly experienced and recognized experts in ERISA litigation.  See, e.g., In re Northrup Grumman ERISA Litig., No. CV 06-6213-AB (JCx), 2017 WL 9614818, at *4 (C.D. Cal. Oct. 24, 2017); Krueger v. Ameriprise Fin., Inc., No. 11-CV-02781 (SRN/JSM), 2015 WL 4246879, at *2 (D. Minn. July 13, 2015); Nolte v. Cigna Corp., No. 07-2046, 2013 WL 12242015, at *2 (C.D. Ill. Oct. 15, 2013).

Class Counsel's unique experience representing plaintiffs like Class Members in this case supports Plaintiffs' fee request.

### 4.    The Preclusion of Other Employment and the Time Limitations Imposed by the Circumstances

But for the time and effort they spent in this case, and given the demand for their services attributable to their high level of skill and competence, Plaintiffs' attorneys would have spent significant time on other matters. Class Counsel was compelled at various times during the litigation to work under significant time pressure and had to commit significant resources. These factors weigh in favor of the requested fee.

### 5.    The Customary Fee and Whether the Fee is Fixed or Contingent

The percentage used to calculate the requested fee in this case is consistent with experienced attorneys who handle complex ERISA litigation, and has been found reasonable in numerous cases in federal district courts. See Decl. of Jerome J. Schlichter ("Schlichter Decl.") [Doc. 289-2] ¶ 35 (listing cases). A contingency fee often justifies a larger award of attorneys' fees because, if the case is lost, an attorney realizes no return for investing large amounts of time and resources in the case. In re Friedman's, Inc. Sec. Litig., No. 1:03-cv-3475-WSD, 2009 WL

19

1456698, at \*3 (N.D. Ga. May 22, 2009).  Class Counsel's requested fee is justified by their substantial work in this case.

Moreover, although a lodestar "cross-check" is not required, it may be used "to ensure that the fee produced by the chosen method is in the ballpark of an appropriate fee."  In re Home Depot Inc., 931 F.3d 1065, 1091, n.25 (11th Cir. 2019).  Class Counsel's reasonable hourly rates recently have been approved in similar ERISA class action litigation in this district.  Henderson v. Emory Univ., No. 16-cv-2920-CAP (N.D. Ga. Nov. 4, 2020) (memorandum and order) [ECF 236] at 5.  The approved hourly rates are as follows: for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15–24 years of experience, $900 per hour; for attorneys with 5–14 years of experience, $650 per hour; for attorneys with 2–4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour.  Id.  These hourly rates were independently verified just last year by a recognized expert who opined that Class Counsel's requested rates were reasonable based on rates charged by national attorneys of equivalent experience, skill, and expertise in complex class action litigation.  Decl. of Sanford Rosen, Tracey v. MIT, No. 18-1099 (D. Mass. Mar. 27, 2020) [ECF 302-6 at 18].  In light of the very close similarities between the fiduciary breach claims alleged in those cases and this one, Class Counsel being the same, and the recency

20

of these cited decisions, the same rates are appropriate.

Using these rates, multiplied by the number of hours expended in this case, which the Court finds is reasonable, the lodestar would be $11,288,918, creating a multiplier of just 1.18—only minimally above a straight hourly rate without taking into account risk. This is well within the range of multipliers approved by courts in this circuit. Columbus Drywall & Insulation, Inc. v. Masco Corp., No. 04-CV-3066-JEC, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008) (approving fee with lodestar multiplier between 2 and 3); Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 696 (N.D. Ga. 2001) (noting that courts have approved lodestar multipliers greater than five); Cox v. Cmty. Loans of Am., Inc., No. 11-177-CDL, 2016 WL 9130979, at *3 (M.D. Ga. Oct. 6, 2016) (lodestar multipliers "in large and complicated class actions range from 2.26 to 4.5 while three appears to be the average[.]"); see also Davis v. Locke, 936 F.2d 1208, 1215 (11th Cir. 1991) (affirming district court's enhancement of lodestar by a multiplier of 1.6 to compensate, among other things, for the risk associated with a contingency fee).

For these reasons, the Court finds these factors weigh in favor of the requested fee.

### 6.   The Amount Involved and the Results Obtained

Class Counsel obtained a substantial award for the Class, one of the largest settlements of this type of litigation.  Schlichter Decl. ¶ 36.  Furthermore, most Class Members will not have to file a claim form but will automatically receive their distributions into their tax-deferred retirement accounts.  This factor weighs in favor of the requested fee.

### 7.   Awards in Similar Cases

"In similar ERISA excessive fee cases, and in particular those brought by Class Counsel [the same as in this case], district courts have consistently recognized that a one-third fee is the market rate."  Kelly v. Johns Hopkins Univ., No. 1:16-CV-2835-GLR, 2020 WL 434473, at *3 (D. Md. Jan. 28, 2020); see also Sims. v. BB&T Corp., Nos. 1:15-CV-732 & 1:15-CV-841, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019) ("A one-third fee is consistent with the market rate in complex ERISA matters such as this and reflects a customary fee for like work."). This factor weighs in favor of the fee request in this case.

### 8.   The Objections By Class Members

No Class Member objected to the requested fee.

### 9.      The Risks Undertaken by Class Counsel

Given the time and effort required to litigate this case, and the previously discussed difficulty and uncertainty in obtaining a successful result, Class counsel undertook an extraordinary litigation risk of nonpayment.

The Court finds that all of the <u>Camden I</u> factors support the requested attorneys' fee of $13,266,266, which shall be paid out of the Settlement Fund.

### B.      Expenses of Litigation

Under Rule 23(h) of the Federal Rules of Civil procedure, a trial court may award nontaxable costs that are authorized by law or the parties' agreement.  FED. R. CIV. P. 23(h).  Class Counsel have submitted evidence in support of their request for reimbursement of $705,172.30.  Doles Decl. ¶ 25.[3]  The Settlement Agreement provides that expenses would not exceed $750,000.  The Court finds that these expenses are reasonable and necessarily incurred on behalf of the Class, and shall be paid out of the Settlement Fund.

---

[3] Because the Fairness Hearing was conducted remotely due to exigent circumstances based on the COVID-19 pandemic, Class Counsel amended their request for reimbursement to eliminate $1,358.00 in travel expenses that were estimated to attend the hearing in-person.

## C.     Class Representative Awards

The Settlement Agreement provides for the payment in an amount not to exceed $25,000 for each of the five Class Representatives in this case, to be recovered from the Settlement Fund.

Prior to September 17, 2020, courts in this circuit routinely approved incentive awards to compensate class representatives for the services they provide and the risks they incur on behalf of the Class.  See, e.g., Ingram, 200 F.R.D. at 695-96.  On that date, the Eleventh Circuit decided Johnson v. NPAS Sols., 975 F.3d 1244 (11th Cir. 2020)[4], in which the court held that "[a] plaintiff suing on behalf of a class . . . cannot be paid a salary or be reimbursed for his personal expenses."  Id. at 1257.  In Johnson, the Eleventh Circuit was presented with a class action settlement arising out of alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, that included an incentive payment to the class representative.  After reviewing the Nineteenth Century precedents of Trustees v. Greenough, 105 U.S. 527 (1882) and Cent. R.R. & Banking Co. v.

_____

[4] A petition for *en banc* review is pending in Johnson, and a judge of the Eleventh Circuit has withheld issuance of the mandate.  Order, Johnson v. NPAS Sols., No. 18-12344 (entered for the court Nov. 9, 2020) (withholding issuance of the mandate in the appeal); Pet. for Reh'g or for Reh'g En Banc, Johnson v. NPAS Sols., No. 18-12344 (filed Oct. 22, 2020).

24

Pettus, 113 U.S. 116 (1885), the court found that these two cases "prohibit the type of incentive award that the district court approved here—one that compensates a class representative for his time and rewards him for bringing a lawsuit." Johnson, 975 F.3d at 1260.

This Court has reviewed both Greenough and Pettus and finds that those factual settings are distinguishable from this case. The Eleventh Circuit characterized the incentive award in the TCPA case as "part salary and part bounty" which creates a conflict between the plaintiff and other class members. Id. at 1258. However, unlike Greenough and Pettus, the Class Representatives in this case were not promised a "bonus" or "salary," but undertook a considerable risk of alienation and harm to their reputations for seeking to enforce their rights under ERISA. But for their service and willingness to accept this risk, the Class would have received nothing. Another judge of this district also has approved incentive fee awards in an ERISA case for the same reasons:

> The court finds that this award is not of the type prohibited in [Greenough and Pettus]. The Class Representatives, employees of the Defendants, faced considerable risk in pursuing this lawsuit. The award does not constitute either a salary or a bounty. Furthermore, the settlement agreement in this action is not contingent on the Class Representatives receiving an award. The Class Representatives were integral to achieving the settlement which in turn benefits the entire class. Without them, the class members would receive nothing and their retirement plans would not have been adjusted.

25

Henderson [ECF 236] at 12.

Therefore, the Court approves the payment of $25,000 to each of the five named Class Representatives from the Settlement Fund.

### D.    Late Filed Objection

On March 3, 2021, Kenneth L. Hatfield, Jr., a former participant in the Insperity 401(k) Plan and Class Member, e-mailed counsel for Reliance and the Insperity Defendants and copied the e-mail address dedicated for the settlement, stating, "I have not been provided written notice of any details to this case.  I therefore object to any settlement at this time."  Email from Class Member [Doc. 291-1].  The e-mailed objection is both deficient and untimely under the terms of the Preliminary Approval Order, because the objection was not filed with the Court and not served on the Court or the attorneys for the parties "no later than thirty (30) calendar days before the date of the Fairness Hearing."  Oct. 14, 2020, Order at 14-15.  "Any Class member . . . who does not timely file and serve a written objection complying with the terms of this Order shall be deemed to have waived, and shall be foreclosed from raising, any objection to the Settlement, and any untimely objection shall be barred."  Id. at 15-16.

The Court also notes that, following Mr. Hatfield's e-mail, Analytics, the Settlement Administrator, confirmed that he was delivered the notice of the

settlement by e-mail on January 4, 2021, to the same e-mail address listed on his out-of-time objection, and it was not returned as undeliverable.  Decl. of Analytics Consulting, LLC [Doc. 291-2] ¶ 2.

Consequently, Mr. Hatfield's objection is **DENIED**.

**E.   Releases**

Pursuant to, and as more fully described in Article 8 of the Settlement Agreement, the Plan, the Class Representatives, and the Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, predecessors, successors, assigns, agents, and attorneys) fully, finally, and forever settle, release, relinquish, waive, and discharge all Released Parties (including Defendants) from the Released Claims, regardless of whether or not such Class Member receives a monetary benefit from the Settlement, executed and delivered a Former Participant Claim Form, filed an objection to the Settlement or to any application by Class Counsel for an award of Attorneys' Fees and Costs, and whether or not the objections or claims for distribution of such Class Member have been approved or allowed.

The Class Representatives, the Class Members, and the Plan acting individually or together, or in combination with others, are barred from suing or seeking to institute, maintain, prosecute, argue, or assert in any action or

proceeding (including but not limited to an IRS determination letter proceeding, a Department of Labor proceeding, an arbitration, or a proceeding before any state insurance or other department or commission), any cause of action, demand, or claim on the basis of, connected with, or arising out of any of the Released Claims. Nothing herein shall preclude any action to enforce the terms of the Settlement Agreement in accordance with the procedures set forth in the Settlement Agreement.

Class Counsel, the Class Representatives, the Class Members, or the Plan may hereafter discover facts in addition to or different from those that they know or believe to be true with respect to the Released Claims. Such facts, if known by them, might have affected the decision to settle with Reliance and the other Released Parties, or the decision to release, relinquish, waive, and discharge the Released Claims, or the decision of a Class Member not to object to the Settlement. Notwithstanding the foregoing, each Class Representative, each Class Member, and the Plan has and have fully, finally, and forever settled, released, relinquished, waived, and discharged any and all Released Claims. The Class Representatives, Class Members, and the Plan have acknowledged that the foregoing waiver was bargained for separately and is a key element of the Settlement embodied in the Settlement Agreement of which this release is a part.

28

The Class Representatives, Class Members, and the Plan settle, release, relinquish, waive, and discharge any and all rights or benefits they may now have, or in the future may have, under any law relating to the releases of unknown claims, including without limitation, Section 1542 of the California Civil Code, which provides: "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that if known by him or her would have materially affected his or her settlement with the debtor or released party." The Class Representatives, Class Members, and the Plan with respect to the Released Claims also waive any and all provisions, rights and benefits conferred by any law or of any State or territory within the United States or any foreign country, or any principle of common law, which is similar, comparable or equivalent in substance to Section 1542 of the California Civil Code.

## V.   DISMISSAL AND FINAL JUDGMENT

The Motion for Final Approval of the Settlement Agreement is hereby **GRANTED**, the Settlement of the Litigation is **APPROVED** as fair, reasonable, and adequate as to the Insperity 401(k) Plan and the Class, and the Settling Parties are hereby directed to take the necessary steps to effectuate the terms of the Settlement Agreement.  The operative complaint and all claims asserted therein in

the Litigation are hereby **DISMISSED WITH PREJUDICE** and without costs to any of the Settling Parties and Released Parties other than as provided for in the Settlement Agreement.

The Court finds that it has subject matter jurisdiction over the claims herein and personal jurisdiction over the Class Members herein pursuant to the provisions of ERISA, and expressly retains that jurisdiction for purposes of enforcing this Order and the Settlement Agreement.  Any motion to enforce this Order or the Settlement Agreement, including by way of injunction, may be filed in this Court, and the provisions of the Settlement Agreement and/or this Order may also be asserted by way of an affirmative defense or counterclaim in response to any action that is asserted to violate the Settlement Agreement.

Each Class Member shall hold harmless Defendants, Defense Counsel, and the Released Parties for any claims, liabilities, attorneys' fees and expenses arising from the allocation of the Gross Settlement Amount or Net Settlement Amount and for all tax liability and associated penalties and interest as well as related attorneys' fees and expenses.

The Settlement Administrator shall have final authority to determine the share of the Net Settlement Amount to be allocated to each Current Participant and each Authorized Former Participant.  With respect to payments or distributions to

Authorized Former Participants, all questions not resolved by the Settlement
Agreement shall be resolved by the Settlement Administrator in its sole and
exclusive discretion.  With respect to any matters that arise concerning the
implementation of distributions to Current Participants (after allocation decisions
have been made by the Settlement Administrator in its sole discretion), all
questions not resolved by the Settlement Agreement shall be resolved by the Plan
administrator in accordance with applicable law and the governing terms of the
Plan.

Within twenty-one (21) calendar days following the issuance of all
settlement payments to Class Members, the Settlement Administrator shall prepare
and provide to Class Counsel and Defendants' Counsel a list of each person who
was issued a settlement payment and the amount of such payment.  Upon entry of
this Order, all Class Members shall be bound by the Settlement Agreement
(including any amendments) and by this Order.

## VI.   CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that:

(1)    The Motion for Final Approval of Class Settlement [Doc. 290] is
       **GRANTED**.

31

(2)    Plaintiffs' Motion for Award of Attorneys' Fees, Class Representative

Awards, and Expenses [Doc. 289] is **GRANTED**.  The Court

**APPROVES** the request of Class Counsel for a fee of

$13,266,266.00, expenses of $705,172.30, and a Class representative

award of $25,000.00 to each of the Class Representatives, all to be

paid from the Settlement Fund.

(3)    This action is **DISMISSED WITH PREJUDICE** as to all parties and

the members of the Settlement Class and the Court **ENTERS FINAL**

**JUDGMENT**.  The parties and Settlement Administrator are

**DIRECTED** to carry out the Settlement Agreement according to its

terms.

**IT IS SO ORDERED** this 8th day of March, 2021.


_____
MARK H. COHEN
United States District Judge